United States Bankruptcy Court
Southern District of Texas

**ENTERED**

October 28, 2025

Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO: 25-90160** |
| **SUNNOVA ENERGY** | § | |
| **INTERNATIONAL INC.,** *et al.*, | § | **CHAPTER 11** |
| | § | |
| Debtors. | § | |
| | § | |
| **ERIK WEATHERWAX,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | **ADVERSARY NO. 25-3423** |
| | § | |
| **SUNNOVA ENERGY** | § | |
| **INTERNATIONAL INC.,** et al., | § | |
| | § | |
| Defendants. | § | |

## ORDER DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION (RELATES TO ECF NO. 17).

### BACKGROUND

Beginning on May 30, 2025, Sunnova Energy International Inc., and its related affiliates (collectively the "Defendants") laid off approximately 741 employees who worked at, reported to, or received assignments from Defendants' facility located at 20 Greenway Plaza #540 Houston, Texas.[1]

---

[1] ECF No. 29 at 5. Plaintiff sought to certify a class of 720 affected employees. ECF No. 17 at 10; ECF No. 1 at 2. Defendants have confirmed that approximately 747 employees were laid off on or around May 30, 2025, and that six were subsequently rehired, bringing the number of affected employees down to 741. ECF No. 22 at 3; ECF No. 29 at 5; ECF No. 30 at 2. Therefore, the Court considers the prospective class as encapsulating all approximately 741 employees.

On June 8, 2025, the Defendants filed for chapter 11 bankruptcy.[2]

On June 16, 2025, Erik Weatherwax (hereinafter "Weatherwax" or "Plaintiff") filed a Class Action Adversary Proceeding Complaint against Defendants on behalf of himself and other employees who also experienced layoffs on or around May 30.[3] Plaintiff argues Defendants did not give the employees notice as required by the Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 et seq. (hereinafter the "WARN Act").[4] On July 25, 2025, Plaintiff filed a Motion for Class Certification and Related Relief (hereinafter the "Motion").[5] Filed contemporaneously with Plaintiff's Motion was Plaintiff's Memorandum of Law in Support of Motion for Class Certification.[6]

On August 14, 2025, Defendants filed an Answer to Plaintiff's Class Action Adversary Proceeding Complaint.[7] In the Answer, Defendants admitted that Plaintiff and other employees were terminated on or about May 30, 2025.[8] Defendants also admitted that Defendants did not provide notice of termination to Plaintiff on or prior to May 30, 2025.[9] On August 27, 2025, Defendants filed their Memorandum of Law in Opposition to Motion for Class Certification.[10] On September 15, 2025, Plaintiff filed a Reply.[11]

Sometime after the May 30, 2025 layoffs occurred, 728 of the affected employees purportedly signed a Release Agreement (hereinafter the "RA"), thereby relinquishing their rights to bring WARN Act claims against the Defendants in exchange for the higher of (i) severance the employee was entitled to under the Defendants'

---

[2] Case No. 25-90160, ECF No. 1.
[3] ECF No. 1.
[4] *Id.*
[5] ECF No. 12; ECF No. 17.
[6] ECF No. 12-1.
[7] ECF No. 22.
[8] *Id.* at 2–3.
[9] *Id.* at 3.
[10] ECF No. 29.
[11] ECF No. 34.

Severance Pay Plan (hereinafter the "SPP") or (ii) amounts the employee *may be owed* under the WARN Act.[12]

On October 6, 2025, the Court issued an Order Requesting Additional Information on Plaintiff's Motion for Class Certification, seeking clarification as to various factual issues in the Motion and respective briefing.[13]  Upon receiving a joint reply from the Plaintiff and Defendants regarding those issues, the Court finds the factual record sufficient to rule on the Motion.[14]

## JURISDICTION

28 U.S.C. § 1334 and 29 U.S.C. § 2104(a)(5) provide the Court with jurisdiction over this proceeding.  28 U.S.C. § 157(b)(1) states "Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title."  This proceeding has been referred to this Court under General Order 2012-6 (May 24, 2012).  This is a core proceeding which the Court can consider under 28 U.S.C. §§ 157(b)(2)(A), 157(b)(2)(B), and 157(b)(2)(O).  Venue is proper under 28 U.S.C. §§ 1408 and 1409.

## LEGAL STANDARD

Rule 23 of the Federal Rules of Civil Procedure, as made applicable to this proceeding through Federal Rule of Bankruptcy Procedure 7023, governs Class Actions.  Under Rule 23(c)(1)(A), the court must, by order, determine whether to certify the action as a class

---

[12] ECF No. 29 at 5; ECF No. at 6; ECF No. 30-1.  The exact language of the RA states that in exchange for signing the RA, employees will receive "the higher of (a) the applicable severance provided for in the [SPP] or (b) the applicable amount that may be owed to such employee under [the WARN Act]."  ECF No. 30-1.  The RA states that an employee is only entitled to receive severance if the employee signs the RA.  *Id.*  If an employee signs the RA, then the employee would relinquish their right to bring a suit against the Defendants on account of alleged violations of the WARN Act.  *Id.*

[13] ECF No. 37.

[14] ECF No. 39.

action.  A court may only certify a class if the prerequisites of Rule 23(a) are satisfied.  Under Rule 23(a), one or more members of a class can sue as representative parties on behalf of all members only if:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a).  All four requirements under Rule 23(a) must be satisfied in order for the Court to certify the class.  Therefore, the insufficiency of one requirement under Rule 23(a) defeats the possibility of class certification.  If the Court finds Rule 23(a) satisfied in its entirety, a class action may be maintained if it is one of the types of class actions described in Rule 23(b).  Here, Plaintiff argues the proposed class meets the requirements of Rule 23(b)(3).  Rule 23(b)(3) is satisfied if:

> the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  The matters pertinent to these findings include:
>
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

FED. R. CIV. P. 23(B)(3).  If a class is certified, under Rule 23(c)(1)(B), the court must also define the class and under Rule 23(c)(2) must determine proper notice.  Additionally, under Rule 23(g) the court must appoint

class counsel.   While Plaintiff has briefed each of the requirements necessary for class certification under Rule 23, the Court finds the prerequisites of Rule 23(a) not satisfied.   Accordingly, considerations under Rule 23(b), 23(c) and 23(g) will not be analyzed in the Discussion section below.

## DISCUSSION

In his Motion for Class Certification, Plaintiff argues that under Rule 23(a), each of the prerequisites for class certification are satisfied[15], and under Rule 23(b)(3), common questions of law or fact predominate over individual questions (the "predominance" requirement)[16] and a class action is the superior method of adjudicating this dispute (the "superiority" requirement).[17]   It is Plaintiff's position that the RAs prospective class members signed are unenforceable contracts due to their allegedly indefinite nature and the illusory promises contained therein.[18]   Moreover, Plaintiff argues that regardless of the existence of the RAs, all prospective class members are equally at risk of not receiving adequate compensation on account of applicable amounts owed under the SPP or WARN Act, and therefore common issues of fact predominate across the prospective class.[19]   Plaintiff maintains that in the bankruptcy context, class actions are a superior method of adjudicating WARN Act claims compared to the ordinary bankruptcy claims process.[20]

Defendants argue each of the prerequisites of Rule 23(a) are not satisfied, namely because a majority of the prospective class members signed RAs releasing their WARN Act claims.[21]   Defendants further argue that common issues of fact do not predominate across the prospective class because employees who signed the RA (hereinafter "RA

---

[15] ECF No. 17-1 at 19–25.
[16] *Id*. at 26–27.
[17] *Id*. at 27–29.
[18] ECF No. 34 at 12.
[19] *Id*. at 8, 15; ECF No. 17 at 26.
[20] ECF No. 17 at 26; ECF No. 34 at 29–31.
[21] ECF No. 29 at 9–17; ECF No. 39 at 2–3.

employees") and employees who did not (hereinafter "NO RA employees") have differing eligibility both for amounts owed under the SPP as well as the WARN Act.[22]  The RA employees would necessarily need to overcome the hurdle of invalidating the RAs before proceeding on the merits of their WARN Act claims—a factual and legal hurdle that NO RA employees need not address as part of the class action.[23] Moreover, within the remaining group of NO RA employees—some of whom were remote workers—many were determined to be WARN ineligible based on a "single site of employment" analysis that the Defendants maintain requires an highly individualized, fact intensive inquiry.[24]  Defendants argue that the bankruptcy claims process is the superior means of adjudicating those remaining NO RA employees' claims.[25]  Plaintiff disputes the applicability of Defendants' proffered analysis for remote workers' "single site of employment," arguing the issue requires a different standard that relies on common proof, fitting squarely within the predominance requirement.[26]

"Rule 23 does not set forth a mere pleading standard but rather demands a rigorous analysis." *Stringham v. GDC Technics, LLC*, Case No. 21-05035-CAG, at 11 (Bankr. W.D. Tex. 2021) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–351 (2011)).  Courts in the Fifth Circuit have held that while a preponderance of the evidence need not be proved, a party seeking class certification must "affirmatively demonstrate his compliance with [Rule 23]."  *Id.* (citing *Flecha v. Medicredit, Inc.*, 946 F.3d 762, 766–767 (5th Cir. 2020); *Dukes*, 564 U.S. at 350).  This does not mean a plaintiff must "produce sufficient evidence to satisfy the court on the merits of her claims" at the certification stage but rather the court "must be satisfied that plaintiff is 'prepared to prove' the Rule 23 requirements."  *Id.* at 12 (citing *Flecha*, 946 F.3d at 767; *Dukes*, 564 U.S. at 350).  For the purpose of determining whether

---

[22] ECF No. 29 at 17–19.
[23] *Id.* at 14–15.
[24] *Id.* at 13–15.
[25] *Id.* at 15–16.
[26] ECF No. 34 at 18–28.

the plaintiff is prepared to prove each requirement of Rule 23, however, the court is required to "consider how a trial on the merits would be conducted if a class were certified." *Id.* at 11 (citing *Prantil v. Arkema Inc.*, 986 F.3d 570, 574 (5th Cir. 2021)).

Plaintiff argues the three purportedly central issues to certifying the class (whether the RAs are enforceable; whether both RA and NO RA employees are equally at risk of not receiving either severance or WARN Act damages; and whether WARN eligibility for both remote and non-remote employees turns on common proof) are arguments that need to be developed at trial—issues that highlight the importance of certifying their class for further arguments on the merits.[27]  Plaintiff argues that he is prepared to prove that each of the requirements of Rule 23 are met and the class action should therefore proceed to trial.[28]  For the reasons discussed below, the Court disagrees.

## I.    THE PREREQUISITES OF RULE 23(A) ARE NOT SATISFIED BECAUSE THE CLASS IS NOT SO NUMEROUS THAT JOINDER OF ALL MEMBERS IS IMPRACTICABLE.

Rule 23(a)(1) requires that the proposed class must be so numerous that "joinder of all members is impracticable" (the "numerosity" requirement). FED. R. CIV. P. 23(a)(1). While the text of the Rule does not specify the number of members required to satisfy numerosity, courts in the Fifth Circuit follow a presumption that joinder is impracticable if the class is comprised of at least 40 members. *See Spegele v. USAA Life Ins. Co.*, 336 F.R.D. 537, 548 (W.D. Tex. 2020) (citing *Twegbe v. Pharmaca Integrative Pharmacy, Inc.*, 2013 WL 3802807, at *2 (N.D. Cal. July 17, 2013)).  Stated another way, if the putative class has 40 or more members, courts presume that numerosity is satisfied.  *Id.*  The facts indicate that of the 741 terminated employees who were not rehired by the Defendant, 728 of them signed the RA, thereby relinquishing their right to bring WARN Act claims against the

---

[27] *Id.* at 15, 26.
[28] ECF No. 17 at 9–10.

Defendants.[29]   Given the existence of the RAs, and for the reasons outline below, the Court finds that the prospective class is not sufficiently numerous that joinder of all members is impracticable.[30]

### A.   The Release Agreements are neither indefinite, nor illusory.

Plaintiff argues that the numerosity requirement is satisfied because the putative class encapsulates approximately 741 employees who were terminated on or around May 30, 2025, and joinder of 741 claims would be impracticable.[31]  In Defendants' view, the RA precludes numerosity because only 13 members (the NO RA employees) of the prospective class are eligible to bring WARN Act claims—not the 741 proposed by Plaintiff.[32]    Moreover, according to Defendants, any potential claims the 13 NO RA employees may bring require individual, fact-based inquiries to determine WARN eligibility and potential claims against the Debtors' Estate.  To defeat this obvious roadblock to class certification, Plaintiff argues the RAs are unenforceable because they are indefinite and are based on illusory promises.[33]

### (1)   The Release Agreement is not indefinite, because the terms are reasonably certain as to what RA employees will be paid and provide the basis for determining the existence of a breach.

According to Plaintiff, the RA contains indefinite terms because employees' applicable WARN amount was left open for later determination—one the Plaintiff characterizes as subjective.[34] Defendants maintain the RA promises amounts definitively calculable

---

[29] *See supra* note 12 and accompanying text.

[30] Courts in this Circuit have previously enforced contracts for the release of claims employees may have held under the WARN Act.  *See Williams v. Phillips Petroleum, Co.*, 23 F.3d 930, 935–936 (5th Cir. 1994) (enforcing contract for the release of WARN Act claims).

[31] ECF No. 17 at 19–21.

[32] ECF No. 1 at 9–12.

[33] ECF No. 34 at 12.

[34] *Id.* at 14–15.

under the express provisions of the SPP and WARN Act, respectively.[35] According to Defendants, in the event an employee is not paid the higher of what they would have been entitled to under either the SPP or the WARN Act, that employee could possess a contract claim based on breach of the RA.[36]  The Court agrees with Defendants' interpretation.

A contract is only enforceable if its terms "are sufficiently definite to enable a court to understand the parties' obligations."  *See Playoff Corp. v. Blackwell*, 300 S.W.3d 451, 455 (Tex. App. 2009) (citing *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 846 (Tex. 2000)).  The terms of a contract are reasonably certain "if they provide a basis for determining the existence of a breach and for giving an appropriate remedy."  RESTATEMENT (SECOND) OF CONTRACTS § 33(2) (1981).  A contract cannot be enforceable "if an alleged agreement is so indefinite as to make it impossible for a court to fix the legal obligations and liabilities of the parties."  *Id.*  Whether a contract is unenforceable due to indefiniteness is a question of law to be determined by the court. *See Playoff Corp.*, 300 S.W.3d at 455 (citing *COC Servs., Ltd. v. CompUSA, Inc.*, 150 S.W.3d 654, 664 (Tex. App. 2004); *T.O. Stanley Boots Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992)).

The plain meaning of the RA states that employees who sign the RA will receive the higher of the applicable severance provided under the SPP, or the applicable amount that may be owed under WARN.[37] If an employee disagrees with the determination of WARN eligibility, then the employee's proper remedy would be to bring a breach of contract claim under the RA.[38]  To be clear, the Court does not take a

---

[35] ECF No. 39 at 3.

[36] *Id.*

[37] *See supra* note 12 and accompanying text.

[38] ECF No. 39 at 3.  The basis for such a claim would be an allegation that the employee should have been considered WARN eligible, and because they did not receive such treatment, the employee's consideration was limited to severance under the SPP, causing them to miss out on the benefit of the bargain.  This requires the assumption that the particular employee's amount owed under the SPP was lower than their potential WARN Act damages.  At this time, there are insufficient allegations in the Complaint and Motion for Class Certification for the Court to assume that any

position on whether a breach of the RA occurred.  Instead, the Court merely illustrates that Defendants' determination of WARN eligibility may give rise to a breach of contract claim to the extent an employee was erroneously determined WARN ineligible.  This potential breach, however, would not render the RA wholly unenforceable.  Regardless, the Court finds that the terms of the RA are reasonably certain to determine the existence of this type of breach and Defendants' corresponding liability, and therefore the RA is not indefinite.

> **(2)** *The Release Agreement does not contain an illusory promise, because Defendants are obligated to pay RA employees the higher of applicable amounts under the SPP or applicable amounts under WARN.*

According to Plaintiff, the terms of the RA grant Defendants the ability to unilaterally change the obligations of the parties after-the-fact.[39]  In Plaintiff's view, Defendants' obligations under the RA are optional: Defendants can choose to (i) pay the higher of severance or WARN Act damages, or (ii) pay only severance, because WARN eligibility is left to Defendants' discretion.[40]  Defendants' argument is similar to the definiteness analysis: under the terms of the RA, both parties' obligations and liabilities are definitively calculable under the express provisions of the SPP and WARN Act, and any employee who is not paid the higher of what they are entitled under the SPP or WARN may possess a breach of contract claim.[41]  Defendants maintain that the RA is an enforceable agreement.[42]   Again, the Court agrees with Defendants' interpretation.

If the obligation of a promise is terminable at will, the promise is illusory.  *See Light v. Centel Cellular Co. of Texas*, 883 S.W.2d 642, 645 n. 5 (Tex. 1994).  If the terms of a contract make performance "entirely

---

employees would have received lower amounts under the SPP than under WARN. Thus, the breach of contract issue is not justiciable at this time.

[39] ECF No. 34 at 10–11.

[40] *Id.*

[41] ECF No. 39 at 2–3.

[42] *Id.* at 2.

optional," then no contract is formed.  *See* RESTATEMENT (SECOND) OF CONTRACTS § 2 (1981); *Light*, 883 S.W.2d at 645.  Texas courts "construe a contract to promote mutuality and to avoid a construction that makes promises illusory." *In re KSRP, Ltd.*, 2011 WL 13096691, at *7 (Bankr. S.D. Tex. Aug. 17, 2011).

The Court finds that under the terms of the RA, the Defendants did not retain the unilateral option to perform.  Under the RA, Defendants were obligated to pay RA employees the higher of applicable amounts under the SPP or WARN Act, and RA employees were entitled to receive the higher of applicable amounts under the SPP or WARN Act.  In exchange, Defendants received a release of potential liability for any violations of the WARN Act that may have occurred, and RA employees were obligated to withhold from bringing claims on account of alleged violations of the WARN Act.  Therefore, mutuality of obligation existed on both sides of the RA, and each obligation was supported by consideration.  Moreover, in the event an RA employee is not paid the appropriate "higher amount" based on the allegation they were improperly determined WARN ineligible, then the employee could possess a contract claim under the RA.  Regardless, Defendants' obligation to perform under this agreement was never terminable at will.  Accordingly, because the Court finds Defendants' performance under the RA is not optional, the RA does not contain illusory promises and is wholly enforceable.

## B.    RA WARN and RA NO-WARN employees should be excluded from class certification consideration.

Defendants have indicated that on the date of entry of this Order, approximately 500 of the 728 employees who signed the RAs and were determined WARN eligible (hereinafter "RA WARN employees") received the 60 days' wages and benefits entitled to them under WARN in accordance with the terms of the RA.[43]  Plaintiff has stipulated that to the extent the RA WARN employees have been paid such amounts in

---

[43] *Id.* at 3–4; ECF No. 29 at 8; ECF No. 30 at 2–3.

accordance with the RA, the employees would no longer have WARN Act claims.[44]  Plaintiff conditions removing the RA WARN employees from the class action on confirmation of such payment.  The Court agrees that in the event the RA WARN employees were paid their 60 days' wages and benefits under WARN in accordance with the RAs, any WARN Act claims they may have held—whether released or not—would be mooted. In the event such payments have not been made, however, then the RA WARN employees may have claims for breach of contract under the RA, rather than a WARN Act class action.  Therefore, based on the analysis above, the Court concludes that the RAs are enforceable as to the group of approximately 500 RA WARN employees, and such employees should be excluded from class action certification consideration.

Plaintiff has alternatively focused on the remaining 200 RA employees who signed the release but were determined WARN ineligible (hereinafter "RA NO-WARN employees").[45]  As above, it is Plaintiff's position that the terms of the RA granted Defendants the option to unilaterally alter the terms of the agreement by retroactively determining the 200 RA NO-WARN employees as WARN ineligible, thereby foreclosing their option to recover any "higher amount" that may be owed under WARN, and ensuring RA NO-WARN employees only ever receive applicable amounts under the SPP.[46]  For the reasons outlined above, the Court finds this argument unpersuasive.  To the extent an RA NO-WARN employee disputes their WARN eligibility, that may give rise to a breach of contract claim under the RA.[47]  That dispute,

---

[44] ECF No. 39 at 3–4.

[45] *Id.* at 4.

[46] *Id.*

[47] There is currently insufficient evidence to determine whether the 200 employees who signed the RA but were determined WARN ineligible would have received higher amounts under WARN than under the SPP.  Depending on the basis of any potential breach of contract claims under the RA, such claims may constitute a class.  The omission of this detail in the pleadings, however, is crucial as it would form the basis for any potential breach of contract claim RA NO-WARN employees may possess.  Accordingly, as plead in the Motion for Class Certification, the issue of whether the 200 RA NO-WARN employees have live breach of contract claims under the RA is not before the Court today.

however, is not before the Court today.  Therefore, the approximately 200 RA NO-WARN employees must not be considered in certifying this class action.

That would limit the prospective class to the 13 NO RA employees.  Certainly a 13-member class would not benefit from the presumption that numerosity is satisfied.[48]  "Numbers alone, however, are not determinative and courts should consider additional factors, including (i) the interest of judicial economy, (ii) whether the class involves small individual claims, (iii) the geographical dispersion of the class, and (iv) the ease with which class members may be identified." *Hanlon v. Party City*, 2025 WL 1888172, at *4 (Bankr. S.D. Tex. July 8, 2025) (citing *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038 (5th Cir. 1981)).  Even still, based on the relatively small size of the prospective class, and the potentially[49] individualized nature of such claims, the Court finds that the adjudication of NO RA employees' claims and determinations of applicable amounts owed under WARN are better served through the individual claims process.[50]  In sum, Plaintiff cannot prove that numerosity is satisfied.

The 500 RA WARN employees must be excluded from the prospective class.  Those who do not receive the consideration they were promised under that agreement may possess breach of contract claims under the RA.  Additionally, the 200 RA NO-WARN employees must be excluded from the prospective class.  Those who disagree with their

---

[48] *See Spegele*, 336 F.R.D. at 548.

[49] The Court does not yet take any position on the appropriate standard for determining NO RA employees' WARN eligibility.  *See infra* note 50.

[50] Briefing by the parties indicates the remaining group of 13 NO RA members contain remote workers, and the parties dispute the appropriate standard to be applied in determining remote workers' "single site of employment" under WARN.  ECF No. 34 at 18–28.  Indeed, this issue formed the premise for Plaintiff's arguments on predominance and superiority under Rule 23(b)(3).  To be clear, the Court premises its current finding regarding the numerosity requirement on the enforceability of the RAs and the relatively small class size of employees who did not sign them.  The Court does not yet take any position on remote worker eligibility under WARN, nor the appropriate standard for determining whether remote workers were laid off from a "single site of employment" under WARN.

WARN eligibility determination may possess a breach of contract claim under the RA. The remaining prospective class of 13 NO RA employees is not sufficiently numerous that joinder of such claims is impracticable. FED. R. CIV. P. 23(a)(1). Such employees may proceed through the individual claims process on account of any potential WARN Act claims they did not release. Accordingly, should this action proceed to the merits at trial, the Court is not convinced that Plaintiff would be able to prove each element under Rule 23(a), and therefore the Court must deny Plaintiff's Motion for Class Certification.

## CONCLUSION

Based on the foregoing reasons, the Motion for Class Certification is DENIED.

SIGNED 10/28/2025

Alfredo R Pérez
United States Bankruptcy Judge