IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |
|---|---|
| In re: | Chapter 11 |
| SUNNOVA ENERGY INTERNATIONAL INC., *et al.*,[1] | Case No. 25-90160 (ARP) |
| Debtors. | (Jointly Administered) |
| ERIK WEATHERWAX, PATRICK FRANZ, and ADAM REED, on behalf themselves and all others similarly situated, | |
| Plaintiff, | |
| v. | Adv. Proc. No. 25-03423 |
| SUNNOVA ENERGY INTERNATIONAL INC., *et al.*, | |
| Defendants. | |

**DEFENDANTS' MOTION TO DISMISS
THE FIRST AMENDED CLASS ACTION COMPLAINT**

Thomas A. Pitta, as trustee of the Sunnova Creditor Trust (the "Creditor Trustee"), for and on behalf of the above-captioned Debtors (the Debtors are collectively referred to as the "Defendants"), by and through their undersigned counsel and pursuant to Federal Rule of Civil Procedure 12(b)(6), respectfully submit this Motion to Dismiss the First Amended Complaint with prejudice, and state as follows:

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/Sunnova. The location of Debtor Sunnova Energy International Inc.'s corporate headquarters and the Debtors' service address in these chapter 11 cases is 20 East Greenway Plaza, Suite 540, Houston, Texas 77046.

## I.     PRELIMINARY STATEMENT

The WARN Act imposes advance notice obligations only when an employer orders a plant closing or mass layoff at a single site of employment. The statute was designed to address concentrated economic disruption in a local community, not to federalize every reduction in force or extend WARN protections to remote employees scattered across the country. Consistent with that purpose, WARN applies only when at least fifty qualifying employment losses occur at a specific and identifiable worksite. A plaintiff, therefore, must plead where he actually worked and must allege facts showing that a WARN eligible event occurred at that identified site.

The Amended Complaint does not identify any Plaintiff's worksite. Plaintiffs do not allege that they ever worked at the Houston headquarters or at any other common physical location. They allege only that they reported to and received assignments from Houston. That allegation describes a managerial reporting relationship, not a workplace. Courts uniformly hold that such allegations do not satisfy WARN's single site requirement.

Remote, home-based workers are fundamentally different. The narrow regulatory exception on which Plaintiffs implicitly rely applies only to employees whose primary duties require travel and who lack any fixed, regular place of work, such as railroad crews, bus drivers, or traveling salespersons. *See* 20 C.F.R. § 639.3(i)(6). Courts consistently hold that employees who work from a fixed home office are not mobile workers and therefore have a single site of employment at their residence. Plaintiffs do not allege that their jobs required travel, that they lacked fixed work locations, or that they were truly mobile employees. Their remote reporting structure cannot transform the Houston headquarters into their WARN site of employment.

Unable to allege that they performed work at any identifiable worksite, Plaintiffs instead attempt to treat remote employees dispersed across multiple states as if they all worked at a single WARN site based solely on reporting lines. That approach is inconsistent with the WARN Act's focus on physical worksites and has been rejected by courts considering similar remote-worker theories. Plaintiffs lived and worked in three different states—New York, California, and Texas—and the Amended Complaint does not allege that any of those locations experienced fifty qualifying employment losses. Because WARN liability cannot be based on aggregating employment losses across multiple, unrelated locations, Plaintiffs' theory fails as a matter of law.

Because Plaintiffs do not plausibly allege a WARN eligible event at any single site of employment and do not plead facts that could bring them within the mobile worker regulation, the WARN Sub Class claim fails as a matter of law. The Contract Sub Class claim fails for the same reason. It rests entirely on the premise that those employees should have been treated as WARN eligible under the release agreement they signed. Without a viable WARN claim, there is no predicate breach. Even accepting that the Houston headquarters experienced qualifying employment losses, Plaintiffs still cannot state a WARN claim because they do not allege that they themselves worked at that site.

For these reasons, both claims in the Amended Complaint should be dismissed with prejudice.

## II.   PROCEDURAL HISTORY

On June 16, 2025, Plaintiff Erik Weatherwax commenced this adversary proceeding on behalf of himself and other employees affected by workforce reductions that occurred on or about May 30, 2025. *See* ECF No. 40 at 1–3; ECF No. 1. Plaintiff alleged that Defendants failed to provide notice as required by the WARN Act and, on July 25, 2025, moved for class certification

seeking to represent a putative class of approximately 720 to 741 former employees. *See* ECF No. 40 at 2–3.

Defendants opposed class certification, arguing that approximately 728 employees had signed a Release Agreement ("RA") relinquishing WARN Act claims in exchange for severance or WARN-equivalent compensation, leaving only thirteen employees ("NO RA employees") with potential WARN claims. *See id.* at 5–7. Defendants further explained that determining WARN eligibility for the remaining individuals would require examining each employee's own single site of employment, because WARN's requirements turn on the physical location where each person actually performed work. *Id.* Plaintiffs disputed that analysis and maintained that WARN eligibility could be resolved on common proof. *Id.*

On October 28, 2025, the Court denied class certification. *See* ECF No. 40. The Court held that the RA is enforceable and is neither indefinite nor illusory. *Id.* at 8–11. The Court further concluded that employees who signed the RA and were determined to be WARN-eligible (approximately 500 individuals) would not have WARN Act claims if they received the WARN-equivalent payments required by the RA. *Id.* at 11–12. As for the approximately 200 RA-signatories who were determined to be WARN-ineligible ("RA NO-WARN employees"), the Court noted that such individuals might possess individual breach-of-contract claims under the RA if they believed they had been improperly classified, but that issue was not before the Court. *Id.* at 12–13 & n.47.

After excluding the RA-signatories for these reasons, the Court determined that only thirteen employees—the NO RA employees—retained potential WARN Act claims, a group insufficient to satisfy Rule 23(a)'s numerosity requirement. *Id.* at 13–14. Although the parties' briefing addressed how WARN's single site of employment requirement operates where

employees work remotely, the Court expressly stated that it "does not yet take any position on remote worker eligibility under WARN" or on the appropriate standard for determining whether remote workers were laid off from a single site. *Id.* at 14 n.50. The denial of class certification rested solely on the enforceability of the RA and the lack of numerosity.

On October 31, 2025, Plaintiffs filed a First Amended Complaint. *See* ECF No. 42-1. The Amended Complaint abandons the original 741-employee WARN class and instead proposes two subclasses: (1) a WARN Sub-Class consisting of the same thirteen NO RA employees, and (2) a Contract Sub-Class consisting of approximately 185 RA-signatories who were determined to be WARN-ineligible and who now allege they should have been treated as WARN-eligible under the RA. According to the Amended Complaint, these RA-signatories received severance payments lower than what they contend they should have received had they been classified as WARN-eligible, and they seek to recover the alleged difference.

The Amended Complaint repeats the allegation that Plaintiffs "reported to and received assignments from" Defendants' Houston headquarters, but—like the original complaint—does not identify any Plaintiff's actual work location or allege facts establishing a "single site of employment" for WARN purposes. *See id.* ¶¶ 11, 18, 24, 33.

### III.   BACKGROUND

The Amended Complaint alleges that Defendants' principal place of business was located in Houston, Texas. *See id.* ¶ 33. Plaintiffs do not allege how many employees worked at that location or describe the functions performed there.

The Amended Complaint does not allege where any Plaintiff physically worked. Plaintiff Weatherwax, a New York resident, was employed as a Senior Full-Stack Engineer II; Plaintiff Franz, a California resident, served as Vice President of Software Engineering; and Plaintiff Reed,

a Texas resident, worked as Director of DevOps. *Id.* ¶¶ 11–12, 18–19, 24–25. Although these individuals resided in three different states, the Amended Complaint does not allege that any Plaintiff physically worked at Defendants' Houston headquarters, maintained an office or workspace there, traveled there for business purposes, or performed job duties at any common physical location.

Instead, each Plaintiff alleges only that he "reported to and received assignments from" the Houston facility. *Id.* ¶¶ 11, 18, 24. The Amended Complaint does not describe the nature of this reporting relationship, identify any supervisor or department located in Houston, or allege that Plaintiffs' responsibilities required travel or involved a mobile worksite.

Each Plaintiff alleges that he was terminated on or about May 30, 2025, without written notice. *Id.* ¶¶ 13–14, 20–21, 26–27. Beyond these individual allegations, the Amended Complaint asserts that approximately 861 employees were terminated as part of an alleged mass layoff or plant closing. *Id.* ¶ 2. The pleading does not allege where these employees worked, whether they were located at a single physical site, or whether any specific facility experienced the requisite number of employment losses necessary to trigger WARN's notice requirements.

The Amended Complaint further alleges the existence of two putative subclasses: (1) approximately thirteen employees who did not sign Release Agreements, and (2) approximately 185 employees who signed Release Agreements but whom Plaintiffs contend should have been treated as WARN-eligible. *Id.* ¶¶ 3–7, 30–32, 39–40. For both groups, Plaintiffs allege only that class members worked at, reported to, or received assignments from the Houston facility. *Id.* ¶¶ 39–40. The Amended Complaint does not allege that members of either group physically worked at that facility or at any other shared site of employment.

## IV. STANDARDS

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). Although the court must accept well-pleaded facts as true, the "[f]actual allegations must be enough to raise a right to relief above the speculative level ...." *Twombly*, 550 U.S. at 558. Such factual allegations must be specific and not mere conclusory allegations, as a court will not accept as true conclusory allegations or unwarranted deductions of fact. *Id*. at 555; *Iqbal*, 556 U.S. at 678. Conclusory allegations or a formulaic recitation of the elements of a cause of action will not suffice. *Twombly*, 550 U.S. at 555. Accordingly, where the Complaint alleges facts that are "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal* (quoting *Twombly*, 550 U.S. at 557).

## V. ARGUMENT

The Amended Complaint does not plausibly allege that Plaintiffs or any putative class member experienced an employment loss at a single site of employment as the WARN Act requires. Congress enacted WARN to mitigate the concentrated economic harm that sudden job losses inflict on *local* communities, and therefore requires notice only when at least fifty qualifying employment losses occur at one specific, identifiable worksite.[2] Consistent with that purpose,

---

[2] *See* 20 C.F.R. § 639.1(a); *Meson v. GATX Tech. Servs. Corp.*, 507 F.3d 803, 808 (4th Cir. 2007) (the WARN Act's purpose is to require advance notice of a "sudden, significant employment loss" so that "communities could prepare for the economic disruption of a mass layoff"); *Bader v. Northern Line Layers*, 503 F.3d 813, 817 (9th Cir. 2007) ("The purpose of the [WARN] Act is to give advance notice to workers and the **community** so that workers can

-7-

courts require plaintiffs to allege where they physically worked and to identify the exact site at which the alleged plant closing or mass layoff occurred. Plaintiffs do not do so. They do not allege that they ever worked at the Houston headquarters or at any other shared physical location. Their allegation that they merely reported to and received assignments from Houston describes a managerial relationship, not a worksite, and does not satisfy WARN's statutory requirements.

Plaintiffs also do not plead facts that could bring them within WARN's narrow regulatory exception for mobile or outstationed employees under 20 C.F.R. § 639.3(i)(6). That exception exists because certain workers, such as railroad crews or field sales personnel, have no fixed worksite, and WARN's community-protection purpose requires assigning them an employment site for analytical purposes. Courts therefore hold that Subpart Six applies only to employees whose primary duties require travel and who lack any regular, fixed place where they perform work. Remote, home-based employees are fundamentally different. They have a fixed workplace, and courts consistently hold that their residence is their single site of employment. Plaintiffs do not allege that their jobs required travel, that they lacked fixed work locations, or that they were truly mobile workers. Their remote reporting structure cannot convert the Houston headquarters into their WARN site of employment.

Because Plaintiffs do not plausibly allege a WARN-eligible event at a single site of employment and do not allege facts that could invoke Subpart Six, the WARN Sub-Class claim fails as a matter of law. The Contract Sub-Class claim fails for the same reason. It rests entirely on

---

prepare to seek alternative employment and communities can prepare for the economic disruption of a mass layoff") (emphasis added); *Teamsters Local Union 413 v. Driver's, Inc.*, 101 F.3d 1107, 1109 (6th Cir. 1996) (purpose of WARN is to "provide **local communities**, as well as workers, some warning when a group of workers suddenly becomes unemployed") (emphasis added); *In re Jamesway Corp.*, No. 96-8389, 1997 WL 327105, at *16 (Bankr. S.D.N.Y. June 11, 1997) ("[O]ne of the WARN Act's purposes is to provide **local communities** with some warning when a large group of workers suddenly becomes unemployed") (emphasis added); U.S. Dep't. of Labor, Commentary to WARN Act, 54 Fed. Reg. 16042, 16060 (Apr. 20, 1989) (advance notice provides "needed information about job and general economic prospects in the local community" so that workers and local governments can "gauge the kinds of actions that will be needed").

the premise that members of that subclass were entitled to WARN payments under the Release Agreement. Without a plausible allegation of WARN eligibility, Plaintiffs cannot state a breach-of-contract claim.

Although the two subclasses advance different legal theories, the same pleading defect is dispositive for both. The WARN Sub-Class must allege that a plant closing or mass layoff occurred at their single site of employment. The Contract Sub-Class must plausibly allege the same thing because the Release Agreement provides WARN-equivalent payments only to employees who were, in fact, WARN-eligible. Thus, WARN eligibility is a necessary predicate element of their contract theory. Because the Amended Complaint does not allege that any Plaintiff—or any member of either subclass—worked at a single, identifiable site that experienced the minimum number of employment losses required by the WARN Act, neither subclass can state a claim. The absence of any pleaded single site defeats both the WARN and contract theories as a matter of law.

Both claims in the Amended Complaint must therefore be dismissed.

**A. Plaintiffs Fail to State a WARN Act Claim By Failing to Allege Facts Showing a Plant Closing or Mass Layoff Occurred At Any Single Site of Employment.**

To state a claim for violation of the WARN Act, a plaintiff must allege facts showing that the defendant ordered a "plant closing" or "mass layoff." *Easom v. US Well Servs., Inc.*, 37 F.4th 238, 241 (5th Cir. 2022). Critically, both definitions turn on whether the requisite number of employment losses occurred at a "single site of employment." A "plant closing" is:

> the permanent or temporary shutdown *of a single site of employment*, or one or more facilities or operating units within *a single site of employment*, if the shutdown results in an employment loss *at the single site of employment* during any 30-day period for 50 or more employees excluding any part-time employees

29 U.S.C. § 2101(a)(2) (emphasis added).

The same 50-employee minimum, at the relevant single site of employment, is also required to establish a "mass layoff." 29 U.S.C. § 2101(a)(3). Thus, WARN notice is not triggered

unless at least fifty qualifying employment losses occurred at a single, identifiable site within the applicable 30- or 90-day period. 29 U.S.C. §§ 2101(a)(2)–(3); 2102(a).

Although the WARN Act does not define what constitutes a single site of employment, the Department of Labor's regulations define the term based on an employee's physical presence at a specific place—a "single location or a group of contiguous locations." 20 C.F.R. § 639.3(i)(1). Generally, each physically separate location is presumptively a separate single site of employment. *Meadows v. Latshaw Drilling Co., L.L.C.*, 866 F.3d 307, 311 (5th Cir. 2017). Consistent with the plain language of the WARN Act and its regulations, employees typically have just one single site of employment—the site where they perform their work. *See Williams v. Phillips Petroleum Co.*, 23 F.3d 930, 934 (5th Cir. 1994) (analyzing the single site of employment issue by determining where the plaintiffs physically worked).

Because the WARN Act ties a "plant closing" and "mass layoff" to a single site of employment, a complaint that does not contain factual allegations regarding the single site of employment at which the Plaintiffs worked and a single site where Defendants terminated at least the minimum statutory number of employees fails to state a WARN claim. *See Piron v. Gen. Dynamics Info. Tech.*, Inc., No. 3:19-cv-709, 2020 WL 1159383, at *4 (E.D. Va. Mar. 10, 2020) (granting motion to dismiss when WARN Act complaint failed to allege the single site of employment element); *Parks v. Zayo Bandwidth, LLC*, No. 13-4425, 2016 WL 538328, at *4 (E.D. Pa. Feb. 10, 2016) (dismissing WARN Act claim because plaintiff failed "to allege that any single site of employment experienced employment losses" above WARN's thresholds); *In re AFA Inv., Inc.*, No. 12-11127 MFW, 2012 WL 6544945, at *5 (Bankr. D. Del. Dec. 14, 2012) (dismissing WARN complaint when the complaint did not clearly allege facts to show that any one of the several employment sites met the fifty-employee statutory minimum for WARN coverage).

The Amended Complaint does not allege where any Plaintiff actually performed work. Plaintiffs identify only their states of residence—New York, California, and Texas—and do not allege that they ever worked at the Houston headquarters, maintained an office there, visited the facility, or performed duties at any common physical location. Their sole allegation is that they "reported to and received assignments from" individuals in Houston. ECF No. 42-1, ¶¶ 11, 18, 24. That describes a reporting hierarchy, not a workplace, and does not establish a single site of employment for WARN purposes. The pleading contains no factual allegation identifying any physical site where any Plaintiff performed his job.

Equally fatal, the Amended Complaint does not allege that the named Plaintiffs—or any putative class member—worked at the same physical location. WARN liability cannot be based on aggregating employment losses across multiple sites; Plaintiffs must identify a single, specific location that experienced at least fifty qualifying employment losses. *See, e.g., Williams,* F.3d at 934 (holding that the Texas and Oklahoma facilities did not constitute a single site of employment and could not be aggregated to meet the WARN minimum required for a mass layoff). The pleading contains no allegation that Plaintiffs worked collectively at any physical site, nor that the approximately 198 putative class members worked at a shared location that experienced the statutory minimum number of terminations. Plaintiffs' assertion that the putative class members "worked at, reported to, or received assignments from" the Houston facility does not allege a collective physical presence at that site and therefore does not establish a single site of employment. *See Guippone v. BH S&B Holdings LLC*, 681 F. Supp. 2d 442, 446 (S.D.N.Y. 2010) (dismissing a WARN complaint that was "a model of a deficient pleading" when it failed to provide information about how many employees worked at the facilities alleged to have undergone a WARN event).

Although Plaintiffs allege that 861 employees were terminated, the Amended Complaint does not allege where those employees worked, whether they worked at a common physical location, or whether any single site experienced fifty qualifying employment losses during the relevant period. The only allegation that these terminations constituted a plant closing or mass layoff appears in paragraph 48 and is entirely conclusory. Such threadbare recitations of statutory elements are insufficient. *Iqbal*, 556 U.S. at 678; *Karroll v. Car Toys, Inc.*, 765 F. Supp. 3d 506, 516 (D.S.C. 2025) ("The Court, in dismissing Plaintiffs First Amended Complaint [alleging a WARN Act violation], explained that Plaintiff's previously alleged facts were nothing more than recitations of the elements and conclusory."). To state a WARN claim, Plaintiffs were required to allege facts showing that they worked at a specific site and that at least fifty qualifying employment losses occurred at that site. They allege neither. Even if the Houston headquarters had experienced qualifying employment losses, which the Amended Complaint does not plead, Plaintiffs still could not state a WARN claim because they do not allege that they themselves worked at that location.

For these reasons, Plaintiffs fail to state a claim, and their WARN Act claim must be dismissed as a matter of law.

**B. If Plaintiffs Are Alleging That They Were Remote Employees, Plaintiffs Are Outside WARN Act Coverage.**

Although Plaintiffs do not allege that they physically worked at the Houston headquarters, they appear to suggest that their WARN site can nevertheless be located there based solely on their allegation that they "reported to and received assignments from" that location. ECF No. 42-1, ¶¶ 11, 18, 24. That allegation describes only a reporting relationship and does not identify any physical place where Plaintiffs performed work. Under the WARN Act, a reporting location has legal significance only if Plaintiffs plausibly allege facts that bring them within the narrow regulatory exception for mobile or outstationed employees. Plaintiffs do not allege such facts.

Plaintiffs allege only their states of residence—New York, California, and Texas—not that they worked at the Houston headquarters or at any other shared physical location. *Id.* ¶¶ 12, 19, 25. They do not allege that they ever visited the Houston facility, maintained offices there, or performed duties at any identifiable work site. In the absence of factual allegations showing that Plaintiffs performed work at the Houston headquarters or that the single-site analysis should be governed by the "reporting" rule applicable only to mobile employees, their WARN claims cannot proceed.

The WARN Act is concerned with employment losses at a "single site of employment." 29 U.S.C. § 2102(a). As Section V. A explained, employees generally have only one such site: the physical location where they perform their work. *See Williams*, 23 F.3d at 934. A narrow exception exists for "mobile" employees "whose primary duties require travel from point to point, who are outstationed, or whose primary duties involve work outside any of the employer's regular employment sites (e.g., railroad workers, bus drivers, salespersons)[.]" 20 C.F.R. § 639.3(i)(6). Under this provision—commonly referred to as Subpart Six—the single site of employment for such workers may be their home base, the place from which their work is assigned, or the location to which they report. *Id*.

In drafting Subpart Six, the DOL included "railroad workers, bus drivers, [and] salespersons" as examples of employees covered by the exception because all three positions require travel from place to place (i.e., they are truly mobile). *Cf.* U.S. Dep't. of Labor, Commentary to WARN Act, 54 Fed. Reg. 16042, 16051 (Apr. 20, 1989). Unsurprisingly, courts have repeatedly concluded that Subpart Six applies only to "**truly mobile workers without a regular, fixed place of work**." *Meson*, 507 F.3d at 809 (emphasis added); *see also Harbert v. Healthcare Servs. Group*, 391 F.3d 1140, 1152 (10th Cir. 2004) (finding that Subpart Six "governs

only employees without a fixed place of work" after considering that "[a]ll three examples listed in the parenthetical in the WARN Act regulation are" mobile employees without a fixed place of work and that the DOL referred to Subpart Six as "'that part of the regulation relating to mobile workers[.]'") (second alteration in original); *Voisin v. Axxis Drilling, Inc.*, 141 F. Supp. 3d 670, 674 (E.D. La. 2015) (stating subpart six "**applies to employees whose primary duties require travel**[]" and declining to find subpart six applied to employees who worked on drilling rigs because "[u]nlike planes, buses, trains, and towboats, the purpose of a drilling rig is not to move people or cargo from point to point."); *Car Toys,* 765 F. Supp. 3d at 521-22 (dismissing the complaint because the plaintiff, while a remote employee, failed to establish that his primary duties required travel that rendered him a mobile worker without a regular, fixed place of work); *Piron*, 2020 WL 1159383, at *4 ("[W]hether Subpart Six includes the Plaintiffs depends on whether the Plaintiffs can be considered 'mobile[.]'"). Moreover, Subpart Six does not apply to remote or work-from-home workers because their residence or office location is a fixed workspace and thus their single site of employment. *See In re Storehouse, Inc.*, No. 06-11144, 2010 WL 4453849, at *4 (Bankr. E.D. Va. Nov. 2, 2010) (noting that even if the plaintiff had chosen to work from home, Subpart Six would not apply because "his residence . . . would have been his single site of employment").[3]

---

[3] Defendants recognize that this Court, along with a Western District of Texas Court (and a small number of district courts outside the Fifth Circuit), has indicated that Subpart Six may cover remote employees who are not entirely mobile. Those cases are unpersuasive because they (1) either lack any reasoning on this issue, including reasoning on whether remote, immobile employees are covered, (2) because the named plaintiffs physically worked at the "single site of employment," or (3) because the applicability of Subpart Six to remote, immobile employees was not disputed by the parties. *See In re Party City Holdco Inc. Hanlon v. Party City Holdco, Inc*., No. 24-90621, 2025 WL 1888172, at *6 (Bankr. S.D. Tex. July 8, 2025) (case where named plaintiff physically worked at the single site of employment and citing *Hoover v. Drivetrain LLC* to support its assertion that "[r]emote employees are 'undoubtedly' covered in the text of the regulation" without further analysis); *Rodriguez v. Kaseya Holdings, Inc*., No. A-24-CV-752-DAE, 2025 WL 1356397, at *4 (W.D. Tex. Mar. 31, 2025) (the parties did not dispute application of Subpart Six to remote workers who are not truly mobile), report and recommendation adopted, No. 1:24-CV-0752-DAE, 2025 WL 1154528 (W.D. Tex. Apr. 21, 2025); *Hoover v. Cyber Litigation*, No. 20-50966, 2022 WL 3581103, at *4 (Bankr. Del. Aug. 19, 2022) (stating that the "text of [20 C.F.R. 639.3(i)(6) undoubtedly covers remote employees" despite the fact the

The court in *Piron* addressed this exact issue and concluded that remote employees who worked from home but reported to and received assignments from managers at the defendant's corporate headquarters did not state a plausible WARN Act claim because the plaintiffs did not work at the corporate headquarters and were not mobile workers. *Piron*, 2020 WL 1159383, at *2-4. In *Piron*, the putative class of plaintiffs alleged they worked "remotely from their homes," but reported to and received assignments from their managers located at the defendant's headquarters in Virginia. *Id*. at *1. When the defendant moved to dismiss the WARN complaint because the plaintiffs failed to allege a single site of employment at which they worked, the plaintiffs argued that Subpart Six applied and caused their single site to be the defendant's headquarters in Virginia, to which they reported. *See id*. at *2-3. The court dismissed the plaintiffs' complaint because it failed to include factual allegations that would trigger the application of Subpart Six. *Id*. at *4. In so ruling, the court concluded the complaint "simply does not contain factual allegations" that the plaintiffs were "truly mobile workers without a regular fixed place of work." *Id*. The "mere conclusory allegations that Plaintiffs worked remotely **or worked at a particular location do not meet that standard**." *Id*. (emphasis added).[4]

The court in *In re Storehouse, Inc.*, came to a similar conclusion, observing that if the employee worked remotely from home, "his residence in Richmond would have been his single

---

case only cites to *Ciarlante v. Brown & Williamson Tobacco Corp.*, 143 F.3d 139 (3d Cir. 1998), which dealt with "**travelling** salespeople[.]") (emphasis added).

[4] The court in *Piron* granted the plaintiffs leave to amend the complaint because they "disclose[d] the possibility that there are facts that have not been pleaded that would permit the crafting of a complaint that would meet the requirements" of the "mobile worker" exception. *Piron*, 2020 WL 1159383, at *4. The *Piron* plaintiffs subsequently amended their complaint to include numerous allegations regarding the "mobile worker" exception. Based on those amendments, the court permitted the case to advance beyond the motion to dismiss stage. *Piron*, Am. Compl., ECF No. 39 ¶¶ 24, 99 (Apr. 27, 2020) (alleging "[t]he job required [them] to travel," and they spent "roughly 70%-80% of their time traveling"); *Piron*, Order, ECF No. 50 at 1 (June 2, 2021) (denying second motion to dismiss because the amended complaint "alleges facts from which it plausibly could be held that the plaintiffs . . . fit within the so-called 'mobile worker' category"). In this case, Plaintiffs have not "disclosed the possibility" that they were mobile workers. *See Piron*, 2020 WL 1159383, at *4. Therefore, they should not be allowed to further amend their complaint to do so.

site of employment, since it would have been his fixed workspace when he was not traveling for work." 2010 WL 4453849, at *4. Therefore, the remote employee's single site of employment was not the employer's headquarters in Atlanta, but the employee's residence. The court observed that the "alternative to finding that a telecommuter's single site of employment is his or her home would be to find that the single site of employment is determined by where he or she receives work from and reports to[,]" but "[s]uch an interpretation would not make sense within the broader outlines of the WARN Act." *Id.*; *see also Teamsters Local Union 413*, 101 F.3d at 1109 ("The statute and regulations plainly focus on whether the resulting job loss will be concentrated in one geographic area."); *Coleman v. Optum, Inc.*, No. 1:22-cv-5664, 2023 WL 6390665, at *9 (S.D.N.Y. Oct. 1, 2023) (holding that remote employees did not state a claim for violation of the New York mini-WARN Act and observing that remote employees "do not meet any of the 'single site of employment' definitions outlined in the statute").

The same result in *Piron* and *In re Storehouse* is required here. Plaintiffs do not (and cannot) allege they were "truly mobile workers," lacked a fixed place of work, **or that they ever traveled in their roles**. *See* ECF No. 42-1, ¶¶ 11–32. The Amended Complaint is devoid of facts— much less well-pleaded facts—from which the Court could reasonably infer Plaintiffs were "truly mobile workers" or that their single site of employment for WARN Act purposes should be anything other than their residences from where they physically performed their jobs. This case does not present the situation of a traveling worker who would occasionally visit their site of employment. As a result, Plaintiffs' conclusory allegations that they were "assigned" or "reported to" Defendants' Houston, Texas headquarters are immaterial to whether Subpart Six applies to them in the first place. That rule only applies where the employee is truly mobile, which Plaintiffs were not. 20 C.F.R. § 639.3(i)(6); *Meson*, 507 F.3d at 809.

To argue otherwise advocates for a ruling that almost *every* remote employee of a company, regardless of where that employee is based, would qualify as an employee of the company's headquarters for purposes of the "single site of employment" requirement under the WARN Act. Indeed, under Plaintiffs' line of reasoning, an employee who worked remotely from his home in Bangor, Maine, should be counted as an employee at an employment site in Honolulu, Hawaii, roughly 5,000 miles away, for WARN purposes merely because the Maine-based remote employee received assignments from the headquarters in Hawaii. The WARN Act does not intend that result. *See Meson*, 507 F.3d at 810 (finding that to permit a remote employee with a fixed workplace to claim company headquarters as her single site of employment would be to imbue the DOL's definition of "single site of employment" with a "potentially limitless" scope that neither "Congress [n]or the Department of Labor intended").

Accordingly, because Plaintiffs worked remotely for Defendants from a fixed location at their residences, their residences were their respective single sites of employment. Plaintiffs do not allege that any other terminated employee worked at their remote work locations. Because Plaintiffs worked at a single site of employment with fewer than fifty terminated employees, they are outside the protections of the WARN Act and cannot state a claim for violation of its requirements. Plaintiffs' failure and inability to allege that a mass layoff or plant closing occurred at their respective single sites of employment is an incurable defect in the Amended Complaint. The Court should dismiss Plaintiffs' WARN Act claims with prejudice.

## VI.     CONCLUSION

The Defendants respectfully request that this Court dismiss the First Amended Complaint with prejudice.

Dated: December 15, 2025

                                              Respectfully submitted,

                                              **BRACEWELL LLP**

                                              /s/ *Jason G. Cohen*
                                              Jason G. Cohen
                                              TX Bar No. 24050435
                                              jason.cohen@bracewell.com
                                              Brian G. Patterson
                                              TX Bar No. 24042974
                                              brian.patterson@bracewell.com
                                              711 Louisiana St., Suite 2300
                                              Houston, TX 77002
                                              Telephone: (713) 223-2300
                                              Facsimile: 800-404-3970

                                              **SPECIAL COUNSEL TO THE CREDITOR TRUSTEE**

## CERTIFICATE OF SERVICE

     I hereby certify that on the 15th day of December, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all registered counsel of record.

                                              /s/ *Jason G. Cohen*
                                              Jason G. Cohen