IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
(HOUSTON DIVISION)

| | |
|---|---|
| In re:<br><br>SUNNOVA ENERGY INTERNATIONAL INC., et al.,[1]<br>Debtors,<br><br>———————————————————<br><br>ERIK WEATHERWAX, PATRICK FRANZ, and ADAM REED, on behalf of themselves and all others similarly situated,<br>Plaintiffs,<br>v.<br>SUNNOVA ENERGY INTERNATIONAL INC, et al.,[2]<br>Defendants. | **Chapter 11**<br>**Bankruptcy Case No. 25-90160 (ARP)**<br>**Jointly Administered**<br><br><br><br>**Adv. Pro. No. 25-03423 (ARP)** |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
MOTION TO DISMISS AMENDED COMPLAINT**

Plaintiffs Erik Weatherwax, Patrick Franz and Adam Reed ("Plaintiffs"), by and through their counsel, respectfully submit their response in opposition to the *Motion to Dismiss the First Amended Complaint* (ECF No. 50) ("Motion") filed by Thomas A. Pitta, the trustee of the Sunnova Creditor Trust on behalf of the Debtor-Defendants ("Defendants").

---

[1,2] A complete list of each of the Debtors in these chapter 11 cases (the defendants in this adversary proceeding) may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/Sunnova. The location of Debtor Sunnova Energy International Inc.'s corporate headquarters and the Debtors' service address in these chapter 11 cases is 20 East Greenway Plaza, Suite 540, Houston, Texas 77046.

**PRELIMINARY STATEMENT**

Defendants base their dismissal motion on the claim that there is no "WARN protection [for] remote employees[.]" (Motion at 2). This is surprising given Defendants have recognized hundreds of mostly remote employees as WARN eligible and paid them WARN amounts in this bankruptcy. (*See* Defs.' Opp. to Motion for Class Certification, ECF No. 14 at n.6 (Debtors "characterized remote employees who report to the Defendant's headquarters in Houston as WARN eligible.")). That alone renders this Motion dubious.

The Motion's critique of the Amended Complaint's theory of liability and sufficiency of the facts further falls flat because Defendants answered the original Complaint; they did not move to dismiss it. (ECF No. 22).[3] The Amended Complaint only enhances the original Complaint's facts, supporting the same theory and claims, making Defendants' Motion utterly inexplicable.

Defendants claim that the Amended Complaint does not allege a WARN-covered site and layoffs. Plaintiffs have clearly alleged a covered site and layoff. Plaintiffs allege a WARN-covered layoff at Defendants' only sizable facility, the Houston headquarters (the "Facility"). The affected employees who reported into the Facility worked remotely, as did Plaintiffs. They were sufficient in number to trigger WARN (more than 50, representing more than 33% of the headquarters' population).

Defendants' second argument is that Subpart 6 of the regulations does not apply to a remote workforce. They contend that only *traveling* employees can have their WARN site determined Subpart 6. The plain language of the regulation, however, covers employees who

---

[3] The Amended Complaint merely re-casts the legal framing of some of the Plaintiffs' claims, in light of the Court's ruling that certain employees' claims would be contract claims, rather than WARN claims. (*See* Motion to Amend, ECF No. 42, at 3 ¶12 (discussing amendments).

2

work outside of the employer's regular sites—i.e., remote employees—regardless whether they travel. Defendants' argument was rejected by the same *Piron* court that Defendants cite repeatedly. Defendants do not challenge that court's holding that Subpart 6 can apply to non-travelling employees. This Court, among others, reads the regulation as written in consonance with the *Piron* court. Defendants offer no reason to hold otherwise.

## FACTS ALLEGED

Defendants have their headquarters in Houston, Texas (the "Facility"). (First Amended Complaint (ECF No. 42-1) ("FAC"), at n.1 and ¶74).[4]

Plaintiffs reported to and received assignments from the Facility. (FAC, ¶¶ 11 (Weatherwax), 18 (Franz), 24 (Reed)). They were remote employees. They have all submitted sworn testimony describing Defendants' largely remote workforce (with Plaintiffs Franz and Reed detailing their reporting relationship to the Facility). (ECF Nos. 12-2 at 2, ¶11 (Weatherwax), 34-1 (Franz) and 34-2 (Reed)).[5] The putative class members were, similarly, employees of the Facility in that they either worked there or reported into it like Plaintiffs. (FAC, ¶¶ 46 (the WARN Sub-Class members), 47 (the Contract Sub-Class).

The layoffs giving rise to this action affected more than 50 employees at the Facility representing at least 33% of the Facility's workforce. (FAC, ¶¶ 2, 58). Of the approximately 861 employees terminated, Defendants have made WARN payments to approximately 650 of

---

[4] As noted in Plaintiff Weatherwax's earlier briefing on class certification, Defendants may have had a small, secondary space near the Houston headquarters where billing staff worked. (ECF No. 34 at 17 n.11). Beyond this secondary space, the Houston headquarters was Defendants' only physical facility.

[5] The Court may take judicial notice of these factual allegations in assessing the sufficiency of the Amended Complaint. *See Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) ("[A] court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.").

them.  (FAC, ¶3).

## LEGAL STANDARD

On a Rule 12(b)(6) motion for failure to state a claim, "[t]he [C]ourt accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).  The motion is denied where the alleged facts "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  "[D]etailed factual allegations are not required at the pleadings stage." *Kelson v. Clark*, 1 F.4th 411, 418 (5th Cir. 2021) (quotations omitted).  Rather, "plaintiffs only need to plead 'factual content that allows the court to *draw the reasonable inference* that the defendant is liable for the misconduct alleged.' *LBT IP II, LLC v. Uber Techs., Inc.*, No. 6:21-CV-01210-ADA, 2022 U.S. Dist. LEXIS 113764, at *6 (W.D. Tex. June 28, 2022) (emphasis in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009)).

## ARGUMENT

**I.  THE COMPLAINT PLEADS A WARN-COVERED LAYOFF AT DEFENDANTS' HEADQUARTERS FACILITY**

The Amended Complaint alleges straightforward WARN claim.

WARN claims have three elements: "(1) a mass layoff [or plant closing as defined by the statute] conducted by (2) an employer who fired employees (3) who, pursuant to WARN, are entitled [sic] notice." *Rodriguez v. Kaseya Holdings, Inc.*, No. 1:24-cv-0752-DAE, 2025 U.S. Dist. LEXIS 75118, at *5-6 (W.D. Tex. Apr. 21, 2025) (quoting *Sides v. Macon Cnty. Greyhound Park, Inc.*, 725 F.3d 1276, 1281 (11th Cir. 2013) and 29 U.S.C. § 2102(a)).

In pleading these elements, the Amended Complaint alleges that:

4

(1) There was a "mass layoff" at the Houston Facility—that is, terminations 50 or more Facility employees representing at least 33% of that site's workforces (FAC, ¶¶ 2, 58). *See* 29 U.S.C. § 2101(a)(3)(B) (definition of mass layoff);

(2) Plaintiffs and the putative class members were terminated by Defendants. ((FAC, ¶¶ 11 (Weatherwax), 18 (Franz), 24 (Reed), 46 (the WARN Sub-Class members), 47 (the Contract Sub-Class)).

(3) Plaintiffs and the putative class members were entitled to WARN notice because they were Facility employees (in that they received assignments from and reported to the Facility, or worked there) who were terminated as a result of the mass layoff at the Facility. ((FAC, ¶¶ 11 (Weatherwax), 18 (Franz), 24 (Reed), 46 (the WARN Sub-Class members), 47 (the Contract Sub-Class)). *See* 29 U.S.C. § 2101(a)(5) (definition of "affected employee").

The reason why the mass layoff occurred "at" the Facility is because nearly all the 800+ terminated employee were, like the Plaintiffs and the putative class members, remote. Plaintiffs contend the Facility was the WARN "site" for all the employees under Subpart 6, because they reported to and received assignments from that site. 20 C.F.R. § 639.3(i)(6). A dispute over the actual employment losses attributed to the Facility would not be grounds to dismiss the Complaint. "[T]o the extent there is any factual dispute as to the 'true mass layoff numbers,' the evidentiary support necessary to negate [the plaintiff's] allegations would be best reviewed at the summary judgement stage." *Rodriguez v. Kaseya Holdings, Inc.*, No. 1:24-cv-0752-DAE, 2025 U.S. Dist. LEXIS 75118, at *6 (W.D. Tex. Apr. 21, 2025).

This issue is not new to the litigation. It is no secret that the WARN dispute here arises from the parties' differing applications of Subpart 6 to Defendants' remote workforce. (*See*

5

Order Denying Motion for Class Certification, ECF No. 40 at 13 n.50 ("[T]he parties dispute the appropriate standard to be applied in determining remote workers' "single site of employment" under WARN.")  When Defendants made WARN payments to most of their remote employees earlier this year, they did so under an interpretation of the regulations that protected some, but not all, the remote employees.  Plaintiffs, on the other hand, submit that the regulations apply to all of them.  (*See* Defs.' Opp. to Motion for Class Certification, ECF No. 14 at n.6 ("[T]he Debtors have already characterized remote employees who report to the Defendant's headquarters in Houston as WARN eligible, so the only potential dispute relates to the remaining remote employees who report in to other remote workers dispersed around the United States."; Defs.' Statement in Resp. to Court's Request for Additional Information, ECF No. 39 at 5 (noting that Plaintiff Weatherwax was deemed WARN-eligible while Plaintiffs Reed and Franz were not, because of Defendants' position that they "did not report to the Debtors' Texas headquarters.").

Defendants, in the first part of their Motion, try to confuse the straightforward Subpart 6 inquiry with rhetorical devices.  (Motion at 10 (an employees' site is typically "where they perform their work")).  They claim, for instance, that Plaintiffs have not alleged *where* they worked, or that they worked "at the same physical location." (Motion at 11.  *See also id.* (asserting that Plaintiffs allege "a reporting hierarchy, not a workplace")).

If the Plaintiffs claimed to work *at* their claimed WARN site, such facts might be relevant.  But for remote employees, it is not.  As Defendants know, the reporting hierarchy *is* the worksite under Subpart 6.

Defendants are also off-base pretending this is a multi-site layoff case, when Plaintiffs have alleged 50 or more layoffs (representing 33% or more of employees) at one site – the

6


Houston Facility.  Indeed, aside from a small space nearby[6], that was Defendants' *only* facility. Accordingly, Defendants are misguided when they rely solely on multi-site case decisions, in which a plaintiff alleged layoffs at numerous employments sites but did not allege that any of them saw layoffs of 50 or more employees.  *Parks v. Zayo Bandwidth, LLC*, No. 13-4425, 2016 U.S. Dist. LEXIS 16739, at *5 (E.D. Pa. Feb. 10, 2016) (layoffs at 14 sites but no allegation of "employment loss of fifty or more persons at any single site"); *Sanchez v. AFA Foods, Inc. (In re AFA Inv., Inc.)*, Nos. 12-11127 (MFW), 12-50710 (MFW), 2012 Bankr. LEXIS 5764, at *17 (Bankr. D. Del. Dec. 14, 2012) (layoffs spread across five separate facilities, no allegations of 50 employees for a particular site); *Guippone v. BH S&B Holdings LLC*, 681 F. Supp. 2d 442, 446 (S.D.N.Y. 2010) (layoffs across two, possibly more sites).

Lastly, Defendants discuss a WARN policy that they say bears on the supposed deficiencies in the complaint, but which is irrelevant.  Their argument is that because WARN notice protects communities from sudden layoffs, WARN cannot protect dispersed remote individuals because when they are laid off, concentrated communities are not impacted.  *See* 20 C.F.R. § 639.1(a) (WARN "provides protection to workers, their families and communities). The argument is spurious because, as the Sixth Circuit Court of Appeals found, Subpart 6 was the Department of Labor's recognition that WARN's individual employee protections are *not* diminished by lack of community impact: "As a practical matter, there is probably little geographic impact under the scenarios described in subpart (6)."  Yet, the regulations reflect that these "workers need[] some protection, and we must accommodate that concern in our interpretation of the Act and regulations."  *Wiltz v. M/G Transp. Servs.*, Inc., 128 F.3d 957, 963 n.10 (6th Cir. 1997) (WARN site for tugboat employees was company's headquarters).

---

[6] See n.4 *supra*.

7

## II. SUBPART SIX'S PLAIN LANGUAGE APPLIES TO REMOTE EMPLOYEES, REGARDLESS WHETHER THEY TRAVEL

To legitimize their argument that only *traveling* employees are eligible to have their WARN site determined by Subpart 6, Defendants must rely on absurd logic: (a) wherever a remote employee chooses to open his laptop, that becomes his WARN "site;" (b) that "site" will never have more than 50 employees working there; (c) therefore, Congress' remedial protection does not reach him.

As the courts recognize, this argument fails because it ignores the plain language of the regulation, which applies equally to non-traveling remote employees.

### A. Courts Acknowledge the Regulation's Plain Language

Subpart 6 sets forth the non-traditional employee "sites" that WARN covers. The regulation identifies several categories of workers (designated by the numbers supplied by Plaintiffs below) and how WARN assigns them a site (designated by the letters):

> For workers [**1**] whose primary duties require travel from point to point, [**2**] who are outstationed, or [**3**] whose primary duties involve work outside any of the employer's regular employment sites (e.g., railroad workers, bus drivers, salespersons), the single site of employment [**A**] to which they are assigned as their home base, [**B**] from which their work is assigned, or [**C**] to which they report will be the single site in which they are covered for WARN purposes.

20 C.F.R. § 639.3(i)(6). The Subpart 6 analysis, therefore, has two steps. First, does the employee's work (specifically vis-à-vis the company's employment sites) meet the definition of inter-part clauses [1], [2], or [3]? If so, their means of connection to a site may be via the ones described in [A], [B] or [C].

While traveling workers are aptly described by inter-part [1] of the regulation, fully remote employees fit squarely in inter-part [3]: their "primary duties involve work outside any of

8

the employer's regular employment sites."[7]  The typical remote employee can work from wherever they please: their home, a coffee shop, or even a public co-working space.  Wherever they choose to open their laptop, what is certain is that this place (the home, coffee shop, etc.) is <u>not</u> one of their "employer's regular employment sites.".  20 C.F.R. § 639.3(i)(6).  It is axiomatic that "remote" means outside the employer's facilities, and there they are covered by Subpart 6 – and the only question is which of the employer's conventional sites do they belong to.

Undoubtedly, in 1989, when Subpart 6 was penned, most of the workers it covered traveled.  But even before the internet, the Department of Labor was aware of employees working offsite and so recognized the non-traveling remote employee who simply works "outside any of the employer's regular employment sites."

This Court applies Subpart 6 to non-traveling employees.  *Hanlon v. Party City Holdco, Inc. (In re Party City Holdco Inc.)*, Nos. 24-90621, 24-3273, 2025 Bankr. LEXIS 1632, at *16 (Bankr. S.D. Tex. July 8, 2025) ("Remote employees are 'undoubtedly' covered in the text of the regulation), quoting *Hoover v. Drivetrain LLC*, 2022 Bankr. LEXIS 2312, 2022 WL 3581103, at *4 (Bankr. D. Del. Aug. 19, 2022).  *See also Rodriguez v. Kaseya Holdings, Inc.*, No. A-24-CV-752-DAE, 2025 U.S. Dist. LEXIS 60688, at *11 (W.D. Tex. Mar. 31, 2025) (finding remote employees "outstationed").  Defendants ask the Court to ignore these decisions because, Defendants claim, the Subpart 6 question was not disputed by the parties there.  While that is partially true[8], Defendants do not stop to consider *why* the argument for a Subpart 6 "travel

---

[7] Some opinions even consider remote employees "outstationed."  *E.g.*, *Rodriguez v. Kaseya Holdings, Inc.*, No. A-24-CV-752-DAE, 2025 U.S. Dist. LEXIS 60688, at *11 (W.D. Tex. Mar. 31, 2025)

[8] The *Rodriguez* defendant did, in fact, dispute the issue.  Like Defendants here, the *Rodriguez* defendant argued that the Texas-based remote employee could not claim the Miami office as his site because it would "go[] against the WARN Act's 'general rule' that 'separate facilities are separate sites[.]'"  2025 U.S. Dist. LEXIS 60688, at *11.  (*Compare with* Defs.' Motion at 10

requirement" has been abandoned. It is because the leading relevant decision—a case where this question was the only, hotly-disputed issue—rejected the argument. *Piron v. Gen. Dynamics Info. Tech.*, Inc., Civil Action No. 3:19cv709, 2022 U.S. Dist. LEXIS 21926, at *15 (E.D. Va. Feb. 7, 2022).

Defendants are not the first to try replacing Subpart 6's plain language with a mantra, inspired by the Fourth Circuit's *Meson* decision, that employees must be "truly mobile"—which Defendants interpret as traveling—to be included in Subpart 6. That was the *Piron* defendant's argument in the Eastern District of Virginia, where the court was bound by *Meson*—and nonetheless rejected the argument. Although Defendants cite *Piron*, they limit their discussion to earlier stages of the litigation, studiously avoiding the *outcome* of the case: a lengthy, comprehensive class certification opinion in which the court explained why "mobility" does not equate to travel under Subpart 6. For WARN purposes, the court explained, remote employees *are* "mobile" and do *not* have a "fixed" workplace, as those terms were coined in *Meson*. Defendants simply regurgitate the *Piron* defendant's failed call for blind adherence to *Meson*'s buzzwords (which do not appear in the regulation itself). The argument carries no more weight now than it did then.

The difference between the *Meson* plaintiff, on the one hand, and remote employees like Plaintiffs here, on the other hand, is apparent on its face. The *Meson* plaintiff was <u>the manager of a regional office</u> of the defendant company. As one would expect, she regularly managed her employees at the office. *Meson v. GATX Tech. Servs. Corp.*, 507 F.3d 803, 804 (4th Cir. 2007). But the layoffs at her office were too small to trigger WARN, so she tried to disguise herself as a

---

("Generally, each physically separate location is presumptively a separate single site of employment.").

Subpart 6 employee based on the business trips that took her away from the office she managed (she argued that, under Subpart 6, she reported to the larger, WARN-qualifying headquarters). But of course, even her work-related travel did not make her a "truly mobile" employee, or an employee without a "fixed place of work," which the court found to be the target demographic of Subpart 6. *Id.* at 805. Her job was *fixed* at the company "office she managed." *Id.* at 810. *Meson* stands for the unremarkable proposition that when an employee has a physical office at a company location which she manages, she cannot claim another site as her WARN single site by virtue of the traveling she may do. In terms of the Subpart 6 framework, the *Meson* plaintiff was excluded from the regulation because her primary duties involved work *at* one her employer's regular sites—the regional office. She was, in essence, the opposite of a remote worker.[9]

Despite the fact that *Meson* did not turn on how much the plaintiff traveled (the court made no effort to quantify it), the *Piron* defendant seized upon the Fourth Circuit's use of "mobility" and "fixed office" language to argue that an employee's WARN rights turn on the quantum of an employee's movement throughout the workday. Like Defendants here, the *Piron* defendant argued that only traveling employees qualify for Subpart 6, while the remote employee does not because her WARN site becomes "fixed" wherever she sits with her laptop. The court squarely rejected that jaundiced view of the regulation.

*Piron* involved remote, work-from-home employees, none of whom worked out of a company office, and many of whom did not travel at all. The subclass of Case Reviewers, for

---

[9] If *Meson* says anything about work-from-home employees, it is that they are covered by Subpart 6. *Meson* noted that Subpart 6's parenthetical provides three examples of workers within its scope: "(e.g., railroad workers, bus drivers, salespersons)[.]" 507 F.3d at 809 (citing 20 C.F.R. § 639.3(i)(6)). The court explained that the salespeople mentioned presumably "work primarily *out of their homes* or cars." 507 F.3d at 809 (emphasis added). If anything, then, *Meson* supports the inference that work-from-home teleworkers, just like transportation workers, have their single site assigned under Subpart 6.

11

example, "typically worked from their homes." *Piron*, 2022 U.S. Dist. LEXIS 21926, at *10. The court nevertheless certified the entire class. What they all had in common, and what put them squarely within Subpart 6, was that they were "not required to work at, or to supervise others at, a particular GDIT site." *Id.* at *34. Indeed, they were not required to work *anywhere* in particular. As with most remote work arrangements, the company policies "provide[d] flexibility as to where the employees worked." *Id.* Even if employees chose to work at home, the court explained, it still could not be said that their jobs were fixed there. They were not "anchored" there "by [their] position's responsibilities"—unlike the *Meson* plaintiff, who was anchored to the regional office by her responsibility of managing employees there. *Id.* The court found that *Meson* was simply inapplicable to remote employees. *See id.* at 26 ("[T]he dispositive fact [in *Meson*] was that [the plaintiff] was assigned to a specific office in Virginia where she managed two employees.").[10]

Since *Piron*'s comprehensive analysis of the "remote employee" issue, it is widely recognized that there is no hidden, gating requirement of travel surrounding Subpart 6. *See Hoover*, *Hanlon*, and *Rodriguez*, *cited supra*. The regulation means what it says: where an employee's primary job duties are not fixed at a company site but are instead performed "outside any of the employer's regular employment sites"—that is, where the employee is *remote*—their WARN site must be determined under Subpart 6.

---

[10] Defendants' discussion of *Piron* is limited entirely to the litigation preceding the court's class certification decision. It is therefore of little weight. Yet, the point Defendants try to make from that discussion remains untrue. The complaint was amended and provided additional descriptions of the class members' various roles, including some who traveled. But even in the Second Amended Complaint, Case Reviewers like named Plaintiff Mollie Piron were not alleged to travel (because they didn't). They simply "worked remotely." (*Piron* Second Amended Complaint, attached hereto as **Exhibit A**, ¶10). The court held nothing more is necessary to plead the "so-called 'mobile worker' category[.]" (Order Denying Motion to Dismiss Second Amended Complaint, attached hereto as **Exhibit B**).

12

Though it was the most in-depth treatment of this question, *Piron* was not groundbreaking. Earlier cases recognized Subpart 6's primary distinction between on-site and off-site employees, the latter being within the ambit of the regulation. *See Gray v. Oracle Corp.*, No. 2:05-CV-534 TS, 2005 U.S. Dist. LEXIS 31427, at *4 (D. Utah Nov. 22, 2005) (denying motion to dismiss and rejecting argument that "where an employee works from a home office, he or she has a fixed place of work."). Even where employees in these cases did travel, the application of Subpart 6 was not driven by that fact, but by the off-site nature of the work. *See Schmidt v. FCI Enterprises*, No. 118-CV-01472-RDAJFA, 2019 WL 5748952, at *4 (E.D. Va. Nov. 5, 2019), rev'd on other grounds, 3 F.4d 95, 104 n.7 (4th Cir. 2021) ("Chantilly … is FCI's only 'single site of employment.' …. Although FCI employees travelled across the United States and serviced contracts at various clients' facilities, *those clients' facilities did not belong to FCI*. Thus, Plaintiffs were entitled to WARN Act protection.") (emphasis added); *Kephart v. Data Sys. Int'l*, 243 F. Supp. 2d 1205, 1223 (D.Kan. 2003) (denying defendant's motion for summary judgment in favor of employees who worked from home offices or leased space and reported to management at a central company office, describing the regulation as applying to employees with "altered work locations").

### B. No Persuasive Decision has Imposed a Travel Requirement

Defendants' cases are unpersuasive. They cite, primarily, *Meson*-type cases where the plaintiffs had their employment fixed at one company site, but sought to claim a different one for WARN purposes. For the plaintiff in *Karroll v. Car Toys, Inc.*, 765 F. Supp. 3d 506 (D.S.C. 2025), his duties were fixed at the company's kiosks (operated out of stores like Costco) where

13

he sold cellphones. *Id.* at 511.[11] For the plaintiffs in *Voisin v. Axxis Drilling, Inc.*, 141 F. Supp. 3d 670, 675 (E.D. La. 2015), it was the company's oil rigs. As the *Piron* court explained, cases like these are inapposite to the remote employee.[12]

Defendants' only cases regarding remote employees are *Coleman* and *Storehouse*, and they are not persuasive. *Coleman* dealt with claims under the New York WARN Act. *Coleman v. Optum Inc.*, No. 1:22-cv-05664 (ALC), 2023 U.S. Dist. LEXIS 176666, at *24 (S.D.N.Y. Sep. 29, 2023). The defendant's headquarters were in New York and the remote employee plaintiffs worked from outside the state. The court's scant discussion of the issue is both confusing and, seemingly, tied up with the question whether the New York law can apply "extraterritorially" to employees outside the state. *Id.*

---

[11] Here, too, the court acknowledged that the plaintiff sometimes traveled between kiosks, but that was not enough to dislodge him from his company site kiosk, just like the *Meson* plaintiff. While Defendants cite these cases as proof that Plaintiffs must plead travel, the cases themselves summarily dismissed travel as a dispositive factor.

[12] *Harbert v. Healthcare Servs. Group*, 391 F.3d 1140, 1152 (10th Cir. 2004), was decided under the FMLA, not WARN, though the FMLA's use of the "worksite" concept renders it something of an analogue. The *Harbert* defendant, a housekeeping and laundry contractor, had the plaintiff working at third party nursing facility and the Tenth Circuit held that the nursing facility was the employee's "worksite." The case was a challenge to FMLA regulations, under which the employee's "worksite" would have been the employer's regional office (instead of the nursing facility). *Id*. at 1144. The plaintiff invoked WARN's regulations and argued that the FMLA regulations were consistent with WARN's. The court therefore discussed the WARN regulations and, ultimately, found them unhelpful in resolving the question of the nursing facility employee: "the WARN Act regulation provides little, if any, guidance to the agency with respect to the proper definition of 'worksite' for an employee who, although arguably 'outstationed,' does have a fixed place of work." Id. at 1153. As WARN courts have recognized, *Harbert* represents the somewhat unique situation where an off-site employee's job is nevertheless "fixed" somewhere, making it a poor comparison to the work-from-home remote employee. *Gray*, 2005 U.S. Dist. LEXIS 31427, at *5 (*Harbe[r]t* is distinguishable [because] the employee had a fixed place of work at another company's site."). The question of how a *Harbert*-like plaintiff would fare under WARN may be saved for another day. Plaintiffs, like the *Piron* Case Reviewers, did not have their employment "fixed" anywhere.

14

*In re Storehouse, Inc.*, No. 06-11144-SSM, 2010 Bankr. LEXIS 3887, at *4 (Bankr. E.D. Va. Nov. 2, 2010), would no longer be considered good law, as it was superseded by *Piron* (the district court of that jurisdiction).  Regardless, both the facts there and the speculative, dicta-upon-dicta discussion of remote employees deprive the case of persuasive value.[13]

Defendants offer no meaningful argument for ignoring the plain language of Subpart 6.

### III.    THE COURT SHOULD GRANT LEAVE TO AMEND, IF NECESSARY

Should the Court find deficiencies in the Amended Complaint's factual allegations, Plaintiffs seek leave to supplement those allegations via amendment.  Under Federal Rule of Civil Procedure 15, "[t]he court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).

Courts consider five factors in assessing a request by a party to amend its pleading: "1) undue delay, 2) bad faith or dilatory motive, 3) repeated failure to cure deficiencies by previous amendments, 4) undue prejudice to the opposing party, and 5) futility of the amendment." *Hanlon v. Party City Holdco, Inc. (In re Party City Holdco, Inc.)*, Nos. 24-90621, 24-3273, 2025 Bankr. LEXIS 1633, at *13 (Bankr. S.D. Tex. July 8, 2025) (quoting *SGIC Strategic Glob. Inv. Capital, Inc. v. Burger King Eur. GmbH*, 839 F.3d 422, 428 (5th Cir. 2016)).

---

[13] The *Storehouse* plaintiff physically worked at a small office in a company store with other company employees.  2010 Bankr. LEXIS 3887, at *4.  The site did not meet WARN's headcount threshold. He argued that he was a remote employee of a larger corporate office because he spent significant time traveling and claimed that he could have worked from home if he had wanted to. The Court rejected his argument, holding "[w]hen he was not traveling for work, [plaintiff] consistently reported to his small office in the back of the retail store in Richmond. This was his single site of employment, as it was where he went to work when not on the road." *Id.*, at *11. The *Storehouse* court then opined that if plaintiff had worked from home, it would have been his single site of employment, because "it would have been his fixed workspace when he was not traveling for work." *Id*.  Here, however, the court was appropriately cautious.  The court specifically disclaimed any notion that it was deciding how all telecommuters should be treated under the WARN Act, stating that its decision should not "be considered an opinion on all situations involving telecommuters." *Id.* at *12, n.3.

15

Here, there has been no undue delay nor repeated failure to cure deficiencies. Defendants did not claim deficiencies in the factual allegations of the original Complaint. They answered it. This is the first time Defendants have claimed pleading deficiencies in the Complaint. Defendants do not allege bad faith or dilatory motive on the part of Plaintiffs, and there is none. Lastly, amendment would not prejudice Defendants as no discovery has taken plan, discovery is set to continue through April 2026, and a pre-trial conference is scheduled for August 2026. (ECF No. 35, ¶¶ 2, 10).

While Plaintiffs maintain that the Amended Complaint is adequately pled, should the Court find that additional factual allegations are necessary, Plaintiffs respectfully seek leave to amend.

## CONCLUSION

For the foregoing reasons, the Motion should be denied.

Dated: January 5, 2026

/s/ *Jack A. Raisner*
Jack A. Raisner (*pro hac vice*)
René S. Roupinian (*pro hac vice*)
**RAISNER ROUPINIAN LLP**
270 Madison Avenue, Suite 1801
New York, New York 10016
Telephone: (212) 221-1747
Facsimile: (212) 221-1747
Email: rsr@raisnerroupinian.com
Email: jar@raisnerroupinian.com

Walter J. Cicack
**HAWASH CICACK & GASTON LLP**
2118 Smith Street
Houston, Texas 77002
Tel: (713) 658-9003
Email: wcicack@hcgllp.com

*Attorneys for Plaintiffs and the putative class*

**CERTIFICATE OF SERVICE**

I hereby certify that on this the 5th day of January 2026, I electronically filed this Motion with the Clerk of Court using the CM/ECF system which will send notification of such filing to all those receiving electronic service this matter.

/s/ *Jack A. Raisner*
Jack A. Raisner