**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SUNNOVA ENERGY INTERNATIONAL INC., *et al.*,[1] | ) | Case No. 25-90160 (ARP) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| ERIK WEATHERWAX, PATRICK FRANZ, and ADAM REED, on behalf themselves and all others similarly situated, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adv. Proc. No. 25-03423 |
| v. | ) | |
| | ) | |
| SUNNOVA ENERGY INTERNATIONAL INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
THE FIRST AMENDED CLASS ACTION COMPLAINT**

Thomas A. Pitta, as trustee of the Sunnova Creditor Trust (the "Creditor Trustee"), for and on behalf of the above-captioned Debtors (the Debtors are collectively referred to as the "Defendants"), by and through their undersigned counsel, respectfully submit this Reply in Support of Defendants' Motion to Dismiss the First Amended Complaint with prejudice, and state as follows:

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/Sunnova. The location of Debtor Sunnova Energy International Inc.'s corporate headquarters and the Debtors' service address in these chapter 11 cases is 20 East Greenway Plaza, Suite 540, Houston, Texas 77046.

## I.      INTRODUCTION & SUMMARY OF ARGUMENT

The Motion to Dismiss demonstrated that Plaintiffs do not plead *facts* showing they were entitled to WARN's 60 days' advance notice of their terminations under the WARN Act.  The WARN Act's advance notice obligations are triggered only when 50 or more employment losses occur at a single site of employment.  The WARN Act is a site-based statute, and Plaintiffs do not plead a WARN-covered event at any "single site of employment."  The Amended Complaint does not provide factual allegations regarding where any Plaintiff actually performed work, that any Plaintiff worked at the same physical location, or whether any single site experienced fifty qualifying employment losses during the relevant period.  Nor could it, as Plaintiffs admit that they were remote employees who worked from fixed home locations.

The Motion to Dismiss further showed that Plaintiffs cannot rely on Subpart Six because they were remote employees with fixed home worksites, not the "truly mobile" or outstationed workers to whom the regulation applies.  As a result, their residences—not the Houston headquarters—were their single sites of employment, leaving them outside WARN's coverage and defeating both their WARN claim and the RA-based contract claim that depends on WARN eligibility.

Plaintiffs' Response in Opposition ("Opposition"), ECF No. 51, does not identify any allegations in the Amended Complaint that satisfy WARN's pleading requirements.  Plaintiffs do not point to allegations showing where any Plaintiff actually worked or that fifty employment losses occurred at any specific site.  Instead, Plaintiffs rely on conclusory assertions that a "mass layoff" occurred "at the Facility" (the Houston headquarters), without alleging physical presence or site-specific employment loss counts tied to that location.

Rather than defend the sufficiency of their pleadings, Plaintiffs attempt to substitute argument for missing allegations.  Plaintiffs concede they did not work in the same location and admit they were remote employees working from fixed home locations.  Nevertheless, they argue that Defendants' headquarters in Houston, Texas should be treated as their single site of employment, relying entirely on Subpart Six and asserting that Houston is the location from which their work was assigned or to which they reported.

But Plaintiffs never pleaded facts showing that Subpart Six applies. The Amended Complaint does not allege that Plaintiffs were mobile or outstationed workers, does not allege that their primary duties required travel or work outside Sunnova's regular employment sites, and does not allege that Subpart Six governs their claims.  These threshold allegations are required before Subpart Six can be invoked to identify a single site of employment.  Without them, the Amended Complaint fails to state a claim as a matter of law.

Moreover, even if Plaintiffs had pleaded such facts, their theory would still fail.  Subpart Six applies only to truly mobile workers without a regular, fixed place of work.  Plaintiffs' interpretation reads this limitation entirely out of the regulation and would extend Subpart Six to immobile remote employees who work from fixed home locations.  The cases Plaintiffs cite do not support that result and do not address the threshold question presented here: whether Subpart Six applies at all to non-mobile remote workers.

Finally, the Plaintiffs' passing arguments that Defendants determined some employees should receive WARN-eligible payments and Defendants' decision to answer the original complaint are irrelevant to the Rule 12 analysis.  Those facts do not excuse Plaintiffs' failure to plead a WARN-covered event at a single site of employment or a plausible theory of WARN eligibility.  For these reasons, the Amended Complaint should be dismissed with prejudice.

## II.    ARGUMENT

### A. Plaintiffs Fail to Address Pleading Deficiencies.

Plaintiffs' Opposition does not dispute that the Amended Complaint fails to plead a WARN-covered event at any single site of employment, nor does it identify any allegations that would satisfy that requirement.  The Amended Complaint does not allege where any Plaintiff actually performed work, that any Plaintiff worked at the Houston headquarters, or that any Plaintiff worked at a common physical location with others who experienced employment losses.  Nor does it allege that fifty or more qualifying employment losses occurred at any identifiable single site during the relevant period.

At bottom, the Amended Complaint does not plead a coherent site-of-employment theory.  If Plaintiffs intended to rely on Subpart Six, they were required to plead facts showing that they fell within that regulation and to identify Houston as their single site of employment on that basis.  The Amended Complaint does not allege that Plaintiffs were mobile or outstationed workers, that their primary duties required travel or work outside Sunnova's regular employment sites, or that Subpart Six applies.  Nor does it identify Houston as Plaintiffs' single site of employment or plead site-specific employment losses there.  Plaintiffs' Opposition attempts to supply that missing theory by arguing that Subpart Six applies to Plaintiffs based on remote work and reporting relationships, but WARN requires Plaintiffs to plead a coherent site-of-employment theory in the complaint itself.  Argument in opposition briefing cannot substitute for those missing allegations.

In responding to Defendants' Motion, Plaintiffs likewise do not point to pleaded facts identifying a single site of employment.  Instead, they rely on other allegations in the Amended Complaint that they contend serve as proxies for pleading a single site.  First, Plaintiffs point to allegations that they "reported to and received assignments from" Sunnova's Houston headquarters.  ECF No. 51 at 5.  That allegation describes a managerial reporting relationship, not

a worksite, and it does not plead that Houston was Plaintiffs' single site of employment.  Second, Plaintiffs rely on allegations concerning aggregate, company-wide termination numbers, including that hundreds of employees were terminated.  *Id*.  Those allegations likewise do not plead how many employment losses occurred at any single, identifiable site of employment, as WARN requires.  Plaintiffs' previously filed declarations underscore why these alleged proxies fail, confirming that Plaintiffs were remote employees working from fixed home locations rather than at the Houston headquarters or any other shared worksite. *See id*. at 3, 5.

In short, Plaintiffs' Opposition does not defend the sufficiency of the Amended Complaint's site-based allegations.  It instead attempts to substitute centralized reporting relationships, aggregate headcounts, and post-hoc argument for the pleaded identification of a single site of employment.  WARN does not permit that substitution, and Plaintiffs' failure to plead a qualifying employment loss at any single site is fatal at the pleading stage.

**B.  Subpart Six Does Not Apply to Remote Workers Without a Mobile Concept.**

A simple hypothetical illustrates the flaw in Plaintiffs' theory.  Had Sunnova required Plaintiffs to perform the same work from small branch offices, individual offices in strip malls, or cubicles in rented shared workspaces, each with fewer than 50 employees, WARN undisputedly would not apply.  There is no textual or structural basis to conclude that the analysis changes merely because Plaintiffs performed that same work from home.  Subpart Six was not designed to transform non-covered sites into covered ones or to make work-from-home arrangements more WARN-significant than traditional workplaces.

Subpart Six addresses a narrow problem: how to identify a "single site of employment" for workers whose job duties are inherently mobile and therefore cannot be tied to any fixed worksite. Read in context, its text, structure, and purpose confirm that it applies only where the nature of the

job itself requires work to be performed away from the employer's regular employment sites.  It does not apply to employees whose jobs are performed at a fixed location and do not require such mobility.

i.      *WARN remains a site-based statute, and Subpart Six is a definition provision.*

WARN coverage depends on whether a qualifying employment loss occurs at a "single site of employment."  Subpart Six does not expand WARN's coverage or alter its numerical thresholds. Rather, it supplies a rule for assigning a site of employment to certain categories of workers whose jobs would otherwise make it impossible to identify any site at all.

Subpart Six applies only to three categories of workers: "whose primary duties require travel from point to point, who are outstationed, or whose primary duties involve work outside any of the employer's regular employment sites (e.g., railroad workers, bus drivers, salespersons)[.]" 20 C.F.R. § 639.3(i)(6).  Subpart Six's focus is on assigning a site when the nature of the job is inherently mobile, requires temporary relocation, or requires work to be performed away from the employer's facility, not merely on whether the employee works remotely.

ii.     *Subpart Six was designed to prevent mobile workers from falling outside WARN entirely.*

The Department of Labor's ("DOL") contemporaneous commentary confirms that Subpart Six was adopted to address mobile and outstationed workers whose job duties prevent assignment to any fixed site of employment.  The Department explained that the regulation was revised "[i]n order to cover this situation and the situation of outstationed workers and traveling workers who report to but do not work out of a particular office," by clarifying that such workers should be treated as assigned to a home base or reporting location for WARN purposes.  *See* Worker Adjustment and Retraining Notification, 54 Fed. Reg. 16,042, 16,051 (Apr. 20, 1989).

-6-

This commentary makes clear that Subpart Six is a gap-filling rule for workers whose primary duties require travel or temporary outstationing, such that they would otherwise fall outside WARN's site-based framework altogether.  It was not intended to aggregate employees whose jobs are performed at a fixed location and do not require such job-imposed mobility.

Consider that the Fourth Circuit in *Meson* interpreted Subpart Six and correctly concluded that Subpart Six is limited to workers whose jobs are "characterized by travel and mobility." *Meson v. GATX Tech. Servs. Corp.*, 507 F.3d 803, 809 (4th Cir. 2007).  This interpretation of Subpart Six is consistent with the DOL's commentary and also the doctrine of statutory construction, *ejusdem generis*, "[w]here general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." *Circuit City Stores v. Adams*, 532 U.S. 105, 114-15 (2001).  Under *ejusdem generis*, the third category of workers ("whose primary duties involve work outside any of the employer's regular employment sites") is a general, residual phrase following a more specific list of mobile workers, i.e., those "whose primary duties require travel from point to point," or "who are outstationed."  Accordingly, the third category should be "controlled and defined by reference to the enumerated categories of workers which are recited just before it," *id*. at 115; in this instance, limiting it to mobile workers.

Furthermore, the "doctrine of last antecedent" also supports this reading.  The doctrine of the last antecedent requires that "qualifying words, phrases, and clauses are to be applied to the words or phrases immediately preceding, and are not to be construed as extending to or including others more remote." *United States v. Campbell*, 49 F.3d 1079, 1086 (5th Cir. 1995).  Applied here, the explanatory parenthetical "railroad workers, bus drivers, salespersons" modifies the third

category, confirming that "work outside the employer's regular sites" refers not to remote work by choice, but to job-imposed mobility.

### iii.    Plaintiffs' interpretation misreads Subpart Six and the phrase "primary duties."

Plaintiffs contend that the third category in Subpart Six applies whenever employees work outside an employer's regular employment sites, regardless of whether their jobs require them to do so.  That interpretation ignores the regulation's text and purpose.

Subpart Six does not turn on whether an employee happens to work outside an employer's facilities.  It applies only where the employee's primary duties require travel from point to point, require work outside the employer's regular employment sites, or involve outstationing.  20 C.F.R. § 639.3(i)(6).  The distinction is critical.  A job's primary duties do not change based on where an employee elects to work.

Plaintiffs' own language underscores the flaw in their position.  Plaintiffs state that "[t]he typical remote employee can work from *wherever they please*: their home, a coffee shop, or even a public co-working space."  ECF No. 51 at 9 (emphasis added).  To Plaintiffs, it is because they can work "[w]herever *they choose* to open their laptop" that they satisfy Subpart Six's requirement that their "primary duties involve work outside any of the employer's regular employment sites." *Id*. (emphasis added); 20 C.F.R. § 639.3(i)(6).

But Subpart Six was not designed to address this circumstance.  The regulation addresses a narrow problem: how to identify a single site of employment for workers whose job duties are inherently mobile and therefore cannot be tied to any fixed worksite.  It applies when the nature of the job itself—like driving a bus, operating a train, or traveling to make sales—makes it impossible to assign the worker to any stable location.  It does not apply merely because an employee has the *freedom* to work from different places.

-8-

The difference is between job-imposed mobility and employer-permitted flexibility.  A railroad worker's duties *requir*e being on a moving train.  A bus driver's duties *require* being on a bus traveling a route.  A traveling salesperson's duties *require* traveling to visit customers in different locations.  These workers cannot be tied to any fixed site because their jobs make that impossible.

A remote software engineer, by contrast, has a fixed site: the home.  The fact that the employer permits the engineer to work from a coffee shop or library if they choose to does not eliminate that fixed site or transform the job into one that requires mobility.  The engineer's primary duties, such as writing code, can be performed from any location with internet access.  The location is incidental to the job, not required by it.

Indeed, consider an employee who works at a small branch office.  If the employer permits the employee to occasionally work from home, a coffee shop, or a co-working space, no one would suggest that this flexibility triggers Subpart Six or changes the employee's single site of employment.  The branch office remains the site.  The same logic applies to a home-based remote employee.  The fact that the employee occasionally works elsewhere does not change the single site of employment.  It remains the home, a fixed and identifiable location.

Subpart Six applies only when the employee's job duties are inherently mobile such that no fixed worksite can be identified, not when an employee merely has the freedom to work outside her regular place of employment.

iv.     *Application to Sunnova.*

Applying these principles, Subpart Six does not apply here.  Plaintiffs have not alleged in their Amended Complaint or in their Opposition that their primary duties required travel from point-to-point, that they were outstationed, or that their primary job duties inherently involved

work that needed to be performed away from Sunnova's facilities, such that they had no fixed place of work.  Nor could they, as Plaintiffs' own framing suggests each had a fixed work location: their homes.  They instead argue that remote work, standing alone, triggers Subpart Six.  Neither the text of the regulation, the Department of Labor's commentary, nor judicial decisions support that view.  The threshold inquiry is whether the job's primary duties themselves require travel or work outside the employment sites, such that the employee has no fixed place of work.  Plaintiffs skip that step entirely and rely solely on an alleged reporting relationship with Houston.

Had Sunnova required Plaintiffs to perform the same work from small branch offices, individual offices in strip malls, or cubicles in rented shared workspaces, each with less than 50 employees, WARN undoubtedly would not apply.  The fact that Plaintiffs performed that same work from home does not alter the analysis or implicate the protections Subpart Six was designed to provide.

Because Subpart Six does not apply, Plaintiffs cannot establish a qualifying employment loss at a single site of employment, and their WARN claims fail as a matter of law.  For the same reason, Plaintiffs' Contract Sub-Class claims, which depend on WARN eligibility as a predicate, also fail.  Plaintiffs' theory is that Subpart Six applies to their remote positions and that, under that regulation, the Houston headquarters is their single site of employment because it is the location from which their work was assigned or to which they reported.  Plaintiffs do not cite any decision that thoroughly analyzed whether Subpart Six applies to immobile, home-based remote employees in this manner, or, after such thorough analysis, that it permits treating such employees as working at a single WARN site based solely on centralized reporting or assignment structures.

C.  **Plaintiffs' Case Analyses Are Unavailing.**

Plaintiffs' Opposition cites cases that are either factually inapposite, procedurally irrelevant, did not decide Subpart Six's applicability to immobile remote workers, or lacked any reasoning on this issue.  For example, both *In re Party City Holdco Inc. Hanlon v. Party City Holdco, Inc*., No. 24-90621, 2025 WL 1888172 (Bankr. S.D. Tex. July 8, 2025) and *Hoover v. Drivetrain LLC*, No. AP 20-50966, 2022 WL 3581103 (Bankr. D. Del. Aug. 19, 2022) were class certification decisions handling non-merits issues where the named plaintiffs physically worked at the "single site of employment" at issue.  *See In re Party City Holdco Inc*., 2025 WL 1888172, at *4; *Hoover*, 2022 WL 3581103, at *5-6.  These cases were at a different procedural stage and did not involve named plaintiffs who were immobile remote workers, as is the case here.  Although *Hoover* contains a discussion of Subpart Six, the court expressly stated that it was not making a decision on the merits and, therefore, it would not resolve any issues related to Subpart Six.  2022 WL 3581103, at *5.

Plaintiffs' discussion regarding *Rodriguez v. Kaseya Holdings, Inc*., No. 1-24-CV-752-DAE, 2025 WL 1356397, at *4-5 (W.D. Tex. Mar. 31, 2025) is incorrect and misstates the dispute.  *Rodriguez* did not address—let alone resolve—the dispute presented here: whether Subpart Six applies to immobile remote employees.  This issue was never raised by the parties in *Rodriguez*, nor was it disputed, briefed, or analyzed by the court.  Instead, the defendant challenged only whether the plaintiff's reporting chain and assignment structure were sufficient to link a remote Texas employee to the alleged WARN site in Miami.  *See Rodriguez*, Motion to Dismiss, ECF No. 15 at 6-7 (Sept. 13, 2024), attached hereto as Exhibit A.  Thus, the court proceeded with the application of Subpart Six's three factors (home base, assignment location, reporting location) to

-11-

determine whether the plaintiff sufficiently alleged his work was assigned from Miami or whether he reported to Miami at the pleadings stage. *See Rodriguez*, 2025 WL 1356397, at *4-5.

By contrast, the disputed issue here is one *Rodriguez* never considered: Subpart Six does **not** apply to home-based remote workers who have a fixed place of work and whose jobs do not require mobility. Because the dispute in *Rodriguez* was whether the assignment/reporting factors linked the plaintiff to the Miami headquarters, the case is inapposite to the issue here and does not undermine Defendants' argument that Subpart Six is wholly inapplicable.

Plaintiffs attempt to discredit Defendants' citation to *Piron v. Gen. Dynamics Info. Tech., Inc.*, No. 3:19-cv-709, 2020 WL 1159383 (E.D. Va. Mar. 10, 2020) (hereafter "*Piron I*") by heavily relying on the later class certification opinion in *Piron v. Gen. Dynamics Info. Tech., Inc.*, No. 3:19CV709, 2022 WL 363958 (E.D. Va. Feb. 7, 2022) (hereafter "*Piron II*"). Plaintiffs ignore *Piron II's* procedural path. In *Piron I*, the court dismissed the complaint because it did not allege facts showing plaintiffs were truly mobile, as required under Subpart Six. 2020 WL 1159383, at *4. However, the court allowed the plaintiffs to amend the complaint because their briefs and arguments disclosed the possibility that they were mobile workers under Subpart Six. *Id*. Plaintiffs here neither plead mobility nor suggest such facts exist.

Plaintiffs' Opposition relies on *Piron II*, a class certification case, involving an amended complaint that contained numerous allegations regarding the plaintiffs' job-related travel duties, with three of the four named plaintiffs having jobs that required them to spend "roughly 70%-80% of their time traveling." *See Piron,* Second Am. Compl., ECF No. 39 ¶ 99 (Apr. 27, 2020).[2] Because Ms. Piron's claims were typical of those of a putative class, the *Piron II* court explained that the second amended complaint survived because, unlike the first amended complaint, it

---

[2] The *Piron* Second Amended Complaint is attached as Exhibit A in Plaintiffs' Opposition. *See* ECF No. 51-1.

plausibly "alleges facts from which it plausibly could be held that the plaintiffs and class members fit within the so-called 'mobile worker' category [in *Meson*]." *Piron II*, 2022 WL 363958, at *3. Contrary to the Plaintiffs' assertion, the court did not find that *Meson* was "inapplicable to remote employees." ECF No. 51 at 12. Instead, the court noted that "[g]ranting class certification will still allow the parties to dispute whether Plaintiffs can meet the 'single site of employment' [standard] under Subpart 6 and *Meson*" as to all members of the class, and did not decide that dispute. *Piron II*, 2022 WL 363958, at *13.[3]

Plaintiffs cite *Schmidt v. FCI Enterprises*, No. 1:18-cv-01472 (RDA/JFA), 2019 WL 5748952 (E.D. Va. Nov. 5, 2019), rev'd on other grounds, 3 F.4d 95, 104 n.7 (4th Cir. 2021), *Kephart v. Data Systems Int'l, Inc*., 243 F. Supp. 2d 1205 (D. Kan. 2003), and *Gray v. Oracle Corp*., No. 2:05–CV–534–TS, 2005 WL 3132344 (D. Utah Nov. 22, 2005) to support their position that Subpart Six covers remote, immobile employees. *See* ECF No. 51 at 13. *Schmidt* involved mobile employees who "travelled across the United States" to perform their job duties. 2019 WL 5748952, at *4. *Kephart* involved allegedly "outstationed" employees who "were managed by supervisors who were located at [headquarters],…traveled to [headquarters], had telephone extensions at [headquarters], accessed the DSI computer system at [headquarters] and received staff support from [headquarters]." 243 F. Supp. 2d at 1223. Plaintiffs here never allege that they traveled to, had a telephone extension at, or received staff support from, Defendants' headquarters. Moreover, the court did not provide any discernible reasoning why these employees may be

---

[3] If that is not enough to dispute Plaintiffs' claim that *Piron* found that mobility standard under *Meson* was inapplicable, the parties in *Piron* submitted a joint motion for approval of a class settlement where the plaintiffs admitted they needed to show that they were "truly mobile workers" to trigger Subpart Six. Memorandum in Support of Joint Motion for Final Approval of a Settlement, ECF No. 109 at 8 (Sept. 16, 2022), attached hereto as Exhibit B. The plaintiffs also recognized that they "may well have difficulty proving that class members worked outside their homes," and that the defendant's contention "it told employees that they were expected to work from their homes" further counters the plaintiffs' mobility arguments. *Id*.

covered under Subpart Six.  Instead of analyzing Subpart Six, the court primarily analyzed and applied case law regarding whether non-contiguous sites could be combined into a single site of employment.  *See id*. at 1221-1223.  *Gray* involved a *pro se* plaintiff.  While *Gray* denied a motion to dismiss because the pro se plaintiff worked remotely, it did so (i) based on the ruling in *Kephart*, (ii) the rule that pro se pleadings should be read liberally, and (iii) based on the liberal construction, because "it does not appear that Gray can prove no set of facts in support of…his claim under the WARN Act[.]" *Gray*, 2005 WL 3132344, at *2.  The "no set of facts" standard was abrogated by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

Plaintiffs observe that *Karroll v. Car Toys, Inc*., 765 F. Supp. 3d 506 (D.S.C. 2025) involved employees who serviced regional kiosks.  ECF No. 51 at 13.  In *Karroll*, the plaintiff filed a WARN action in the District Court of South Carolina, Greenville Division and attempted to argue that he was a remote employee of a Seattle, Washington headquarters plant closing because his primary duties involved travelling between a twelve-kiosk region where he and all field employees were "frequently required to rotate" from kiosk to kiosk to cover shifts, sometimes "at least once daily," and he routinely transported equipment and inventory between locations. 765 F. Supp. 3d at 511, 517.  Despite this significant movement between worksites, the court held that he still failed to plead that he was a "truly mobile worker" under Subpart Six because his travel was merely temporary "fill-in" travel, not the type of primary-duties-based mobility the regulation requires.  *Id*. at 522.  *Karroll* reinforces Defendants' position by rejecting the idea that employees can invoke Subpart Six absent job-imposed mobility.  If an employee who routinely rotated among multiple worksites and traveled as part of his job duties could not qualify under Subpart Six, Plaintiffs who allege no job-imposed travel whatsoever fall even further outside the regulation's scope.

-14-

Plaintiffs utilize a footnote to discuss *Harbert v. Healthcare Servs. Group*, 391 F.3d 1140, 1152 (10th Cir. 2004), which was decided under the FMLA, not WARN.  *See* ECF No. 51 at 14 n.12.  Despite this difference, Plaintiffs state that "the FMLA's use of the 'worksite' concept renders it something of an analogue [to WARN]."  *Id.*  In *Harbert*, the Secretary of Labor mentioned that the FMLA patterned the definition of "worksite" after the definition of "single site of employment" in the WARN Act.  *Harbert*, 391 F.3d at 1149.  After *Harbert's* decision, the DOL amended its FMLA regulations to provide that "employees who work at home as under the concept of flexiplace or telecommuting" can satisfy the FMLA's "worksite" requirement.  *See* 29 C.F.R. § 825.111(a)(2).  This demonstrates that, when the DOL wished to write regulations to address immobile, remote employees, it did so.  It has not done so for the WARN Act.

Finally, Plaintiffs dismiss *In re Storehouse, Inc*., No. 06-11144-SSM, 2010 WL 4453849 (Bankr. E.D. Va. Nov. 3, 2010) by merely stating it "would no longer be considered good law, as it was superseded by *Piron*" but cite no case that has reached such a conclusion.  *See* ECF No. 51 at 15.  The court in *Piron I* discussed *In re Storehouse*, and did not suggest *In re Storehouse* is no longer good law.  *See Piron*, 2020 WL 1159383, at *3 n.2.  Despite previously citing to *In re Storehouse*, *Piron II* never stated that it "would no longer be considered good law."

**D.  Plaintiffs Should Not Be Allowed To Amend.**

"The trial court acts within its discretion in denying leave to amend where the proposed amendment would be futile because it could not survive a motion to dismiss."  *Rio Grande Royalty Co. v. Energy Transfer Partners, L.P.*, 620 F.3d 465, 468 (5th Cir. 2010) (citing *Briggs v. Mississippi*, 331 F.3d 499, 508 (5th Cir. 2003)).  "A district court acts within its discretion when dismissing a motion to amend that is frivolous or futile."  *Martin's Herend Imports, Inc. v. Diamond & Gem Trading United States Co*., 195 F.3d 765, 771 (5th Cir. 1999).

-15-

Here, Plaintiffs cannot correct any of the defects of their complaint against Defendants. Plaintiffs' sole theory of imposing WARN liability on Defendants as remote employees is under Subpart Six.  However, Subpart Six only applies to truly mobile employees.  Plaintiffs do not and cannot allege that they were truly mobile employees, nor have they raised any facts suggesting such in their Amended Complaint or Opposition.  Therefore, any amendment would be futile, warranting denial of their request to amend.  *See In re Uplift RX, LLC*, 625 B.R. 364, 375 (Bankr. S.D. Tex. 2021) (Isgur, C.J.) ("Futility alone is a 'substantial reason' to deny leave to amend.") (quoting *Whitt v. Stephens County*, 529 F.3d 278, 282 (5th Cir. 2008)).

Consider, again, the *Piron* case.  The court in *Piron I* granted the plaintiffs leave to amend the complaint because they "disclose[d] the possibility that there are facts that have not been pleaded that would permit the crafting of a complaint that would meet the requirements" of the "mobile worker" exception.  *Piron I*, 2020 WL 1159383, at *4.  The *Piron* plaintiffs subsequently amended their complaint to include numerous allegations regarding the "mobile worker" exception.  *See Piron*, Second Am. Compl., ECF No. 39 ¶¶ 24, 99 (Apr. 27, 2020) (alleging "[t]he job required [them] to travel," and they spent "roughly 70%-80% of their time traveling").  Based on those amendments, the case proceeded beyond the motion to dismiss stage.  *See Piron II*, 2022 WL 363958, at *3 (recognizing the second motion to dismiss was denied because the amended complaint "alleges facts from which it plausibly could be held that the plaintiffs ... fit within the so-called 'mobile worker' category").  In this case, Plaintiffs have not "disclosed the possibility" that they were mobile workers, showcasing the futility of any further amendment.

### III.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant its Motion to Dismiss the Amended Complaint and dismiss all of Plaintiffs' claims with prejudice.

Dated: January 12, 2026

Respectfully submitted,

**BRACEWELL LLP**

/s/ *Jason G. Cohen*
Jason G. Cohen
TX Bar No. 24050435
jason.cohen@bracewell.com
Brian G. Patterson
TX Bar No. 24042974
brian.patterson@bracewell.com
711 Louisiana St., Suite 2300
Houston, TX 77002
Telephone: (713) 223-2300
Facsimile: 800-404-3970

**SPECIAL COUNSEL TO THE
CREDITOR TRUSTEE**

**CERTIFICATE OF SERVICE**

I hereby certify that on the 12th day of January, 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all registered counsel of record.

/s/ *Jason G. Cohen*
Jason G. Cohen