# EXHIBIT B

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**(HOUSTON DIVISION)**

| | |
|---|---|
| In re:<br><br>SUNNOVA ENERGY INTERNATIONAL INC., et al.,[1]<br><br>　　　　　　　　　Debtors,<br><br>_____<br><br><br>ERIK WEATHERWAX, PATRICK FRANZ, and ADAM REED, on behalf of themselves and all others similarly situated,<br><br>　　　　　　　　　Plaintiffs,<br><br>　　　　v.<br><br>SUNNOVA ENERGY INTERNATIONAL INC, et al.,[2]<br><br>　　　　　　　　　Defendants. | **Chapter 11**<br>**Bankruptcy Case No. 25-90160 (ARP)**<br>**Jointly Administered**<br><br><br><br><br>**Adv. Pro. No.  25-03423 (ARP)** |

**PLAINTIFFS' REQUESTS FOR**
**PRODUCTION OF DOCUMENTS TO DEFENDANTS**

　　Pursuant to Fed. R. Bankr. P. 7034 and Fed. R. Civ. P. 34, Plaintiffs Erik Weatherwax,

Patrick Franz and Adam Reed ("Plaintiffs") hereby request that Thomas A. Pitta, as trustee of the

Sunnova Creditor Trust (the "Creditor Trustee"), for and on behalf of the above-captioned

Defendants, Sunnova Energy International, Inc., and its affiliated debtor-defendants (debtor-

defendants collectively "Defendants"), respond to the following requests for production and

---

[1,2] A complete list of each of the Debtors in these chapter 11 cases (the defendants in this adversary proceeding) may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/Sunnova.  The location of Debtor Sunnova Energy International Inc.'s corporate headquarters and the Debtors' service address in these chapter 11 cases is 20 East Greenway Plaza, Suite 540, Houston, Texas 77046.

serve upon the undersigned responses and responsive documents and materials to each of the following requests within thirty (30) days of their service.

**DEFINITIONS**

As used in these requests, the following terms shall have the meaning set forth below:

1. "C-Suite" means the group of managers whose job titles included the word "Chief" anytime between November 1, 2024, and May 31, 2025.

2. "Communication(s)" means any manner of transmitting or receiving information, opinions or thoughts, whether orally, electronically, in writing or otherwise.

3. "Concerning" means relating to, referring to, describing, reflecting, tending to evidence or rebut, regarding or constituting.

4. "Defendants" means Defendant Sunnova Energy International, Inc., and its affiliated debtor-defendants, as described in footnotes 1 and 2 *supra*.

5. "Department" means any specialized functional unit or team within the Company in which employees were grouped together (for organizational, operational, or administrative purposes) based on shared skillsets, common projects or objectives, geographical location, or other similar criteria.  The term includes, without limitation, the following groups (or similarly-named groups) within the Company: Finance, Sales, Software, Engineering, Project Management, Product Management, Energy Services, Human Resources, Quality Assurance, Developer Operations and Public Relations/Policy.

6. "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), including without limitation, electronic or computerized data compilations.  A draft or non-identical copy is a separate document within the meaning of this term.

7.     "Facility" means Defendants' facility located at 20 Greenway Plaza #540, Houston, Texas.

8.     "Person" means any natural individual or any corporation, firm, partnership, proprietorship, association, joint venture, governmental entity or any business organization or any other entity.

9.     "WARN Act" means the Worker Adjustment and Retraining Notification Act, 29 U.S.C. §§ 2101 - 2109.

10.    "Remote Employees" means Defendants' former employees who were not regularly required to work at the Facility, including without limitation those listed as working remotely in Defendant's Human Resources database.

11.    All capitalized terms used but not specifically defined herein shall have the meanings ascribed to them in the Complaint.

12.    "All" and "each" shall be construed as both all and each.

13.    The connective "and" and "or" shall be construed disjunctively and conjunctively, to give the most inclusive meaning to the request.

14.    The singular includes the plural and vice versa.

## INSTRUCTIONS

1.     Please answer each Request separately and fully unless you object to it, in which case please specifically state the reason for your objection.

2.     To the extent you object in part to any Request, please answer that part of the Request in question to which no objection is asserted.

3.     In answering these Requests, please furnish all information, Documents, and material available to you at the time of answering.

3

4. Unless otherwise stated, the relevant time period covering each Request is from November 1, 2024, to June 8, 2025.

5. In each instance where you deny possession, custody or control of Documents or materials responsive to the Request, please state the name and address of each person, if any, known or believed to have possession, custody or control of such Documents or materials.

6. If you were previously in possession, custody or control of any Documents responsive to the Request, but are no longer in possession, custody or control of those Documents, please state when and under what circumstances the Documents were removed from your possession, custody or control.

7. Unless otherwise indicated, Plaintiffs request that Defendants produce responsive documents pursuant to the format described herein:

a. Documents should be provided on DVD, CD, external hard drive or through a web-based file sharing service. The volume of the ESI will determine whether documents are provided on CD, DVD or hard drives.

b. Documents should not be zipped, compressed, encrypted, or otherwise restricted or proprietarily protected for specific use.

c. Defendant may compress and/or encrypt the production archive for delivery purposes, but should provide passwords for any compressed archives under separate cover, along with a description of any software needed to decrypt the archive.

d. A cover letter or fact sheet should be included describing in as much detail as practicable the contents of the collection.

8. Production Format For ESI.

a. General Provisions. Unless the Parties agree to a different format, documents should be produced with TIFF images and named according to the Bates number of the corresponding TIFF image. Each *.tiff file should be assigned a unique name matching the Bates number of the corresponding image. The Bates number should be consistent across the production, contain no special characters, and be numerically sequential within a given document. Attachments to documents should be assigned Bates numbers that directly follow in sequential order the Bates numbers on the documents to which they were attached. If a Bates number or set

4

of Bates numbers is skipped, the skipped number or set of numbers should be noted, for example with a placeholder. All images should be provided in single-page, Group IV TIFF with a resolution of 300 DPI. Bates numbers and confidentiality designations should be electronically branded on each produced *.tiff image. These .TIFF images should be provided in a separate folder and the number of TIFF files per folder should be limited to 1,000 files.

b.  Document Text.  All unredacted documents should be provided with complete document-level extracted text files. In the event a document contains text which is to be redacted, OCR text files should be provided for any un-redacted portions of the documents. Document-level OCR text files should be provided for any unredacted portions of redacted documents and for all hard copy scanned documents. The extracted full text and/or OCR text for all deliverables should be in separate document-level TXT files. These TXT files may either be provided in a separate folder or included in the same folder as their corresponding images. The number of TXT files per folder should be limited to 1,000 files. A UNC file path must be included in the ESI load file.

c.  Parent-Child Relationships.  For email collections, the parent-child relationships (the association between emails and attachments) should be preserved. Email attachments should be consecutively produced with the parent email record.

d.  Dynamic Fields.  Documents with dynamic fields for file names, dates, and times will be processed to show the field code (*e.g.*, "[FILENAME]" or "[AUTODATE]"), rather than the values for such fields existing at the time the file is processed.

e.  Non-redacted Word Processing Files.  All word processing files, including without limitation Microsoft Word files, that do not require redactions, will be produced in native file format showing comments and track changes, and as *.tiff images showing track changes and comments. A UNC file path must be included in the ESI load file.

f.  Non-redacted Spreadsheet Files.  Spreadsheet files, including without limitation Microsoft Excel files, that do not require redactions will be produced as native files showing comments and similar data. A UNC file path must be included in the ESI load file. Additionally, a bates-stamped *.tiff placeholder matching the bates number of the native file, must be included in the production and reflected in the image load file. To the extent Parties prefer native file redaction of Spreadsheet File, the Parties will meet and confer to discuss the form of production.

g.  Presentation Files.  Presentation files, including without limitation Microsoft PowerPoint files, will be produced as native files showing comments, hidden slides, speakers' notes, and similar data. A UNC file path must be included in the ESI load file. Additionally, a bates-stamped *.tiff placeholder matching the bates number of the native file, must be included in the production and reflected in the image load file. The Parties will meet and confer regarding production of presentation files with alternate default settings.

h.  Database Records and Structured Data.  To the extent that the Requests seek information that is stored in a database or database management system, Defendants should

5

identify the database and platform to Plaintiffs, and meet and confer in good faith in an attempt to reach agreement on the data to be produced and the form of the production.  Defendants should provide information about the database to facilitate that discussion, including the fields, data types, and rules contained within the database.  Defendants will also provide upon request, insofar as it is helpful to a discussion of responsive data, information regarding:

    i.        The reporting capabilities and enhanced reporting capabilities of the database;

    ii.        The size of the database and its content;

    iii.        The query language that may be used to search the database;

    iv.        The database's physical schema, including the software and hardware on which it is stored and administered;

    v.        The database's logical schema, including its tables, structures, attributes, fields, relationships, joins, and views, and including any entity relationship model

    vi.        Any available data dictionary describing the content of the data fields;

    vii.        Any available system catalog containing metadata associated with the database.

Information produced from the database as a result of a report or query will be produced in a reasonably usable and exportable electronic file (for example, *.csv and/or *.xls formats) for review by Plaintiffs, containing fields and reference points requested by producing Party.  To the extent this production format is not feasible or causes the producing Party undue burden, the Parties agree to meet and confer to discuss the different form of production.

    i.        <u>Embedded Files</u>.  Embedded files are produced as independent document records.  Embedded files should be assigned Bates numbers that directly follow the Bates numbers on the documents within which they are embedded.

    j.        <u>Time Zone</u>.  Unless otherwise agreed, all dynamic date and time fields, where such fields are processed to contain a value, and all metadata pertaining to dates and times will be standardized to Central Standard Time (CST).  The Parties understand and acknowledge that such standardization affects only dynamic fields and metadata values and does not affect, among other things, dates and times that are hardcoded text within a file.  Dates and times that are hard-coded text within a file (for example, in an email thread, dates and times of earlier messages that were converted to body text when subsequently replied to or forwarded; and in any file type, dates and times that are typed as such by users) will be produced as part of the document text in accordance with Concordance and Summation formats, below.

    k.        <u>Bates Numbering</u>.  Files will be named according to the Bates number of the corresponding *.tiff image.  The Bates number will:

    i.        be consistent across the production;

    ii.        contain no special characters; and

    iii.        be numerically sequential within a given document.

6

Attachments to documents will be assigned Bates numbers that directly follow the Bates numbers on the documents to which they were attached.  If a Bates number or set of Bates numbers is skipped, the skipped number or set of numbers will be noted.  In addition, wherever possible, each *.tiff image will have its assigned Bates number electronically "burned" onto the image.

l.      Load File Formats.  ESI will be produced in standard Concordance load file format and an image file that is in .OPT format.

m.      Metadata to be Produced.   Metadata to be produced: The following metadata fields should be produced for each document to the extent that such information is available at the time of collection and processing, except that if a field contains privileged information, that privileged information may be redacted and noted in a corresponding privilege log.  All requests should be read to include a request for all metadata associated with all documents responsive to the request.

| FIELD NAME | DESCRIPTION | CATEGORY |
|---|---|---|
| BEGDOC | Starting bates | Hardcopy, edoc, email **and** attachment |
| ENDDOC | Ending bates | Hardcopy, edoc, email **and** attachment |
| CUSTODIAN | Custodial **or** non-custodial source(s) from which the **document** was collected | Hardcopy (if coded), edoc, email **and** attachment (populated through processing) |
| ALL CUSTODIANS | Custodial source(s) from which document was collected but subsequently suppressed as a duplicate during processing. | Edoc, email **and** attachment (populated through processing) |
| FAMILYIDOR ATTACHID | Family (Range of bates related **documents** (i.e email & attachment) - this field will be populated for **all** records in the family), and will distinguish parent documents from attachments. | Hard copy, edoc, emails **and** attachments (populated through processing) |
| PRPERTIES OR RCRDTYPE | Record type – will be either "email," "attachment," "edoc," **or** "hardcopy." | |
| FROM | Email Author | Emails (populated through processing) |
| TO | Recipient | Emails (populated through processing) |
| CC | CC field - In the event of emails | Emails (populated through processing) |

7

| FIELD NAME | DESCRIPTION | CATEGORY |
|---|---|---|
| **BCC** | Bcc field - in the event of emails | Emails (populated through processing) |
| **DOCTITLE** | **Document** Title/name/subject of the original native file as it existed at the time of collection. | Hardcopy (if coded), edoc (including email) **or** attachment (populated through processing) |
| **DOCDATE** | **Document** Date/Date Sent, format MM/DD/YYYY, this is the SORT_DATE field, so populate across families | Email **and** Attachments |
| **DATESENT** | Email Sent Date, format MM/DD/YYYY | Emails (populated through processing) |
| **TIMESENT** | Time sent, format 00:00:00 AM/PM | Emails (populated through processing) |
| **DATECREATED** | Date first created, format MM/DD/YYYY | Edoc **or** attachment (populated through processing) |
| **DATESVD** | Date last saved/modified, format MM/DD/YYYY | Edoc **or** attachment (populated through processing) |
| **TIMESVD** | Time saved, format 00:00:00 AM/PM | (populated through processing) |
| **PAGECOUNT** | **Document** page count | Edoc **or** attachment (populated through processing) |
| **APPLICAT** | Application used to open the file (Word, Powerpoint, Adobe, Excel, Explorer, Quicken, etc.) | Electronic files **and/or** emails, attachments (populated through processing) |
| **FOLDERID OR ORIGFOLDERPATH OR FILEPATH** | File path/folder structure of original native file as it existed at the time of collection.<br><br>i.e. path of email in mailbox (populate for email attachments also); filepath of edocs **or** scanned **documents** (if requested) | Electronic files **and/or** emails, attachments (populated through processing) |

8

| FIELD NAME | DESCRIPTION | CATEGORY |
|---|---|---|
| **ALL FILEPATHS** | File path/folder structure of original native file as it existed at the time of collection but subsequently removed as a duplicate. i.e. path of email in mailbox (populate for email attachments also); filepath of edocs **or** scanned **documents** (if requested) when duplicate copies were suppressed during processing. | Electronic files **and/or** emails, attachments (populated through processing) |
| **DOCLINK or NATIVEFILE** | Active link reflecting current filepath back to the native file | Electronic files **and/or** emails, attachments (populated through processing **and only provided if receiving native files**.) |
| **FILEEXTEN** | **Document** type.  Sample contents: *PST*, *MSG*, *PDF*, *DOC*, *PPT*, *HTM*, etc. | Electronic files **and/or** emails, attachments (populated through processing) |
| **FILESIZE** | Numerical file size, in bytes, of any natively-produced documents. | Electronic files and/or edocs (populated through processing) |
| **AUTHOR** | In the event of attachments, this field contains the 'author' of the **document** | For Hard Copy **documents** (if coded) **or** electronic files **and/or** attachments (populated through processing) |
| **HASH** | MD5 Hash value for de-dupe | Electronic files **and/or** attachments (populated through processing) |

6.      Production Format for Hard Copy Documents.  Hard copy documents will be scanned and processed as .tiff images with OCR.  To the extent this production format is not feasible or causes the producing Party undue burden, the Parties agree to meet and confer to discuss the different form of production.

7.      Encryption.  To maximize the security of information in transit, any media on which documents are produced may be encrypted by the producing Party.  In such cases, the producing Party shall transmit the encryption key or password to the requesting Party, under separate cover, contemporaneously with sending the encrypted media.

9

**REQUESTS FOR PRODUCTION**

1.      Please produce (in an Excel file if possible) Documents showing the following information for each employee of Defendants who was employed between November 1, 2024, and December 21, 2025:

a.   name;
b.   job title;
c.   hire date;
d.   date of separation from Defendants;
e.   whether the separation from Defendants was voluntary or involuntary;
f.   the reason for the separation;
g.   salary or hourly indicator;
h.   final salary or hourly rate;
i.   full-time or part-time indicator;
j.   [if part-time] hours worked weekly;
k.   the costs to Defendants and the employee, respectively, of the employee's weekly, biweekly, or monthly fringe benefits in the 90-day period preceding the employee's last day of work;
l.   the physical location where the employee performed work for Defendants;
m.  any site or work location to which the employee was associated in Defendants' HR information system;
n.   the name of the employee's immediate supervisor(s), and the physical location(s) where the supervisor(s) worked; and
o.   the Department(s) of which the employee was a member.

2.      Please produce Documents, including organizational charts, sufficient to show Defendants' complete organizational structure, including any Departments and sub-groups, and the employees within each Department and sub-group.

3.      Please produce Documents sufficient to show the reporting or management structure (i.e., which employee reported to which supervisor/manager) for all employees.

4.      Please produce all Documents Concerning to whom and where employees reported with respect to any aspect of their jobs, Company-wide or within Departments, including those that describe policies, practices, procedures or workflows (i.e., patterns of repeated activity).

10

5.      Please produce all Documents, including policies or procedures or workflows (i.e., articulated patterns of repeated activity), Concerning how work was assigned to employees, Company-wide or within Departments.

6.      Please produce all Documents, including policies, procedures, or workflows, Concerning how tasks or projects were prioritized in Departments.

7.      Please produce job descriptions or other Documents showing the job duties and performance expectations for all employees.

8.      Please produce all Documents Concerning any requirements, goals, KPIs or similar metrics related to performance or productivity, to which any employees were held or which affected their compensation, as applied both Company-wide and within Departments.

9.      Please produce all Documents Concerning how and by whom employee performance was incentivized, evaluated, rated, and rewarded.

10.     Please produce all Documents Concerning the process by which the criteria used to evaluate employees were communicated to the employees.

11.     Please produce Documents sufficient to show all employees involved in the process of evaluating employee performance.

12.     Please produce Documents sufficient to show the employees who had decision making authority to take actions regarding changes in the employment relationship with any employees.

13.     For all employees designated by Defendants as a "supervisor" or "manager" of any other employees, please produce all Documents that describe their supervisory duties, the criteria they were required to meet as supervisors/managers, the incentives set for them as

supervisors/managers, and the manner in which they were monitored or evaluated as supervisors/managers.

14.     Please produce Documents showing all ways in which work tasks, projects, or individual employee productivity was tracked or recorded in Departments.

15.     Please produce all Documents and Communications received by C-Suite employees between November 1, 2024 and May 31, 2025, Concerning the performance, work progress, productivity or output of employees or groups of employees reporting up to those C-Suite employees, including without limitation both (a) regular, periodic reports or presentations of such information and (b) ad-hoc communications of such information.

16.     Please produce all Documents and Communications sent by C-Suite employees between November 1, 2024 and May 31, 2025, reflecting instructions, guidance, directives, goals, priorities, or other forms of oversight for the work of employees or groups of employees reporting directly or indirectly to those C-Suite employees.

17.     For each C-Suite employee, please produce all Communications (including without limitation emails, chat messages and text messages) between that C-Suite employee and the employee reporting directly to that C-Suite employee for the period January 1, 2025, through April 30, 2025.

18.     For each Department, please produce the transcripts of any group chat threads or other Department-wide communication platform used by that Department's employees, for the period January 1, 2025, through April 30, 2025.

19.     Please produce all policies, Documents and Communications Concerning where Remote Employees could perform their work.

20.     Please produce all Documents and Communications reflecting any efforts Defendants undertook to monitor, track or otherwise determine where Remote Employees performed their work.

21.     Please produce all Documents reflecting any equipment Defendants provided to Remote Employees.

22.     Please produce all Documents and Communications during the period October 1, 2024, through June 8, 2025, Concerning Defendants' efforts to secure financing, loans, capital investments, loan guarantees and capital infusions from any source, including without limitation Communications and negotiations with any existing stakeholders or prospective investors.

23.     Please produce all Documents and Communications during the period October 1, 2024, through June 8, 2025, reflecting proposals for financing, loans, capital investments, loan guarantees and capital infusions from any source.

24.     Please produce all Documents and Communications during the period October 1, 2024, through June 8, 2025, Concerning events which Defendants contend were unforeseeable and prevented Defendants from giving employees 60 days' notice of their terminations.

25.     Please produce all Documents and Communications during the period October 1, 2024, through June 8, 2025, Concerning Defendants' access to advances from their tax equity investors.

26.     Please produce all Documents and Communications during the period October 1, 2024, through June 8, 2025, Concerning Defendants' ability to draw under their revolving lines of credit.

27.     Please produce all minutes of meetings of Defendants' Board of Directors during the period November 1, 2024 through June 8, 2025.

28.     Please produce all Communications between employees, directors, officers, or managers of Defendants (regardless whether they were the only parties to the communications) during the period January 1, 2025, through May 30, 2025, Concerning potential terminations of employees (other than individual terminations for cause).

29.     Please produce all Documents Concerning the information provided in Defendants' responses to Plaintiffs' Interrogatories.

Dated: March 9, 2026

/s/ *Jack A. Raisner*
Jack A. Raisner (*pro hac vice*)
René S. Roupinian (*pro hac vice*)
**RAISNER ROUPINIAN LLP**
270 Madison Avenue, Suite 1801
New York, New York 10016
Telephone: (212) 221-1747
Facsimile: (212) 221-1747
Email: rsr@raisnerroupinian.com
Email: jar@raisnerroupinian.com

Walter J. Cicack
**HAWASH CICACK & GASTON LLP**
2118 Smith Street
Houston, Texas 77002
Tel: (713) 658-9003
Email: wcicack@hcgllp.com

*Attorneys for Plaintiffs and the putative class*

**CERTIFICATE OF SERVICE**

I hereby certify that on this the 9th day of March 2026, I electronically served these *Requests for Production of Documents* on the following counsel for Defendants:

Jason G. Cohen
jason.cohen@bracewell.com
Brian G. Patterson
brian.patterson@bracewell.com
711 Louisiana St., Suite 2300
Houston, TX 77002
Telephone: (713) 223-2300

14

Facsimile: 800-404-3970

SPECIAL COUNSEL TO THE
CREDITOR TRUSTEE


/s/ *Jack A. Raisner*
Jack A. Raisner