**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**(HOUSTON DIVISION)**

| | |
|---|---|
| In re:<br><br>SUNNOVA ENERGY INTERNATIONAL INC., et al.,[1]<br><br>Debtors,<br><br>———————————————————<br><br>ERIK WEATHERWAX, PATRICK FRANZ, and ADAM REED, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SUNNOVA ENERGY INTERNATIONAL INC, et al.,[2]<br><br>Defendants. | **Chapter 11**<br>**Bankruptcy Case No. 25-90160 (ARP)**<br>**Jointly Administered**<br><br><br><br>**Adv. Pro. No.  25-03423 (ARP)** |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO**
**MOTION TO DISMISS SECOND AMENDED COMPLAINT**

---

[1,2] A complete list of each of the Debtors in these chapter 11 cases (the defendants in this adversary proceeding) may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/Sunnova.  The location of Debtor Sunnova Energy International Inc.'s corporate headquarters and the Debtors' service address in these chapter 11 cases is 20 East Greenway Plaza, Suite 540, Houston, Texas 77046.

1

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT AND SUMMARY OF ARGUMENT ...................................... 1

RELEVANT FACTS ............................................................................................................... 2

    A.   The Claims of the Contract-Subclass .......................................................................... 2

    B.   The SPP and the RA ..................................................................................................... 3

        1.  The Severance Pay Plan ......................................................................................... 3

        2.  The Release Agreement .......................................................................................... 4

LEGAL STANDARD .............................................................................................................. 5

ARGUMENT ........................................................................................................................... 6

    I.     EVEN IF THE SPP IS AN ERISA PLAN, THE RA IS NOT ........................................ 6

        A.  The *Fort Halifax* Distinction Between a "Plan" and a "Benefit" ..................................... 6

        B.  Because the RA Promises a Benefit Beyond the ERISA Plan, it is a Free-Standing
           Contract ....................................................................................................................... 9

    II.    BECAUSE THE RA CONTRACT CLAIMS DO NOT RELY ON THE SPP, THEY
         ARE NOT PREEMPTED ................................................................................................. 14

        A.  There is No "Complete" Preemption ............................................................................ 14

        B.  There is No "Conflict/Defensive" Preemption .............................................................. 15

        C.  Preemption Here Could Not Have Been Congress' Intent ............................................. 20

    III.   UNDER BOTH JUDICIAL ESTOPPEL AND ERISA FUTILITY, DEFENDANTS'
         LITIGATION CONDUCT UNDERMINES THEIR CURRENT MOTION .................. 22

        A.  Defendants are Judicially Estopped from Seeking ERISA Preemption ......................... 23

        C.  ERISA Administrative Exhaustion Would Be Futile ..................................................... 26

CONCLUSION ....................................................................................................................... 27

i

# TABLE OF AUTHORITIES

**Cases**           **Page(s)**

*Aetna Health Inc. v. Davila*,
  542 U.S. 200, 124 S. Ct. 2488 (2004) ........................................................................ 14

*Anderson v. Cytec Indus.*,
  619 F.3d 505 (5th Cir. 2010) ............................................................................... 20, 21

*B & S Welding LLC Work Related Injury Plan v. Oliva-Barron*,
  447 S.W.3d 425 (Tex. App. 2014) ............................................................................ 26

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ......................................... 5

*Broussard v. Exxon Mobil Corp.*, No. 24-30664,
  2025 U.S. App. LEXIS 5523 (5th Cir. Mar. 10, 2025) ............................................... 6

*Cefalu v. B.F. Goodrich Co.*,
  871 F.2d 1290 (5th Cir. 1989) ................................................................. 14, 15, 16, 17

*Colorado v. Tyco Valves & Controls, L.P.*,
  432 S.W.3d 885 (Tex. 2014) ..................................................................................... 12

*Fort Halifax Packing Co. v. Coyne*,
  482 U.S. 1, 107 S. Ct. 2211 (1987) .................................................................. 7, 8, 22

*Gomez v. Ericsson, Inc.*,
  2014 U.S. Dist. LEXIS 7433 (E.D. Tex. Jan. 22, 2014) .................................... 10, 17

*Gomez v. Ericsson, Inc.*,
  828 F.3d 367 (5th Cir. 2016) ...................................................................................... 9

*Hernandez v. Alcatel USA Resources, Inc.*,
  560 F.Supp.2d 528 (E.D. Tex. 2006) ....................................................................... 10

*Hubbard v. Blue Cross & Blue Shield Ass'n*,
  42 F.3d 942 (5th Cir. 1995) ...................................................................................... 16

*In re Katrina Canal Breaches Litig.*,
  495 F.3d 191 (5th Cir. 2007) ...................................................................................... 5

*Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*,
  364 F.3d 274 (5th Cir. 2004) .......................................................................... 23, 24, 25

*Kelson v. Clark*,
  1 F.4th 411 (5th Cir. 2021) ......................................................................................... 5

*Kersh v. UnitedHealthcare Ins. Co.*,
  946 F. Supp. 2d 621 (W.D. Tex. 2013) .......................................................... 14, 15, 18

*Kirkindoll v. NCUA Bd.,* Civ. No. 3:11-CV-1921-D,
  2013 U.S. Dist. LEXIS 165197 (N.D. Tex. Nov. 20, 2013) ....................................................... 7

*LBT IP II, LLC v. Uber Techs., Inc.,* No. 6:21-CV-01210-ADA,
  2022 U.S. Dist. LEXIS 113764 (W.D. Tex. June 28, 2022) ...................................................... 5

*McGowin v. Manpower Int'l, Inc.*,
  363 F.3d 556 (5th Cir. 2004) ...................................................................................... 14

*Mem'l Hermann Health Sys. v. Coastal Drilling Co.*,
  12 F. Supp. 3d 1001 (S.D. Tex. 2014) ........................................................................ 18

*Mem'l Hosp. Sys. v. Northbrook Life Ins. Co.*,
  904 F.2d 236 245 (5th Cir. 1990) ..................................................................... 13, 17, 21

*N. Cypress Med. Ctr. Operating Co. v. CIGNA Healthcare*,
  782 F. Supp. 2d 294 (S.D. Tex. 2011) ...................................................................... 18, 20

*Rozzell v. Sec. Servs.*,
  38 F.3d 819 (5th Cir. 1994) ........................................................................................ 15

*Ruttenberg v. United States Life Ins. Co.*,
  413 F.3d 652 (7th Cir. 2005) ..................................................................................... 27

*Shaw v. Delta Air Lines*,
  463 U.S. 85, 103 S. Ct. 2890 (1983) .......................................................................... 15

*Stiles v. Mem'l Hermann Healthcare Sys.*,
  213 S.W.3d 521 (Tex. App. 2007) .............................................................................. 12

*Thorson v. Aviall Servs.,* Civ. No. 3:15-CV-0571-D,
  2017 U.S. Dist. LEXIS 9640 (N.D. Tex. Jan. 6, 2017) ............................................... passim

*Transitional Hosps. Corp. v. Blue Cross & Blue Shield, Inc.*,
  164 F.3d 952 (5th Cir. 1999) ..................................................................................... 17

**Statutes**

29 U.S.C. § 1132 .......................................................................................................... passim

29 U.S.C. § 1144 .......................................................................................................... 15

29 U.S.C. § 2104 .......................................................................................................... 7, 22

29 U.S.C. § 2107 .......................................................................................................... 22

Me. Rev. Stat. tit. 26, § 62 ........................................................................................... 7

**Other**

Fed. R. Civ. P. 12 ......................................................................................................... 1, 5

Plaintiffs Erik Weatherwax, Patrick Franz and Adam Reed ("Plaintiffs"), by and through their counsel, respectfully submit their response in opposition to the *Motion to Dismiss the Second Amended Complaint* (ECF No. 64) ("Motion") filed by Thomas A. Pitta, the trustee of the Sunnova Creditor Trust on behalf of the Debtor-Defendants ("Defendants").

## PRELIMINARY STATEMENT AND SUMMARY OF ARGUMENT

Defendants promised to pay employees their full WARN amounts in exchange for releases. After securing those releases, Defendants paid only a fraction of what they owed. In response to Plaintiffs' motion for class certification, Defendants sought to enforce those releases as WARN-ending contracts. While the Court accepted Defendants' contractual framework, their effort to end Plaintiffs' case failed – the claims were simply converted to contract claims. Next, Defendants marshalled WARN law as a basis to dismiss the claims. That effort also failed.

Now, ignoring the admonition of the Federal Rules, Defendants "make another motion under [Rule 12] raising a defense or objection that was available to the[m] but omitted from [their] earlier motion." Fed. R. Civ. P. 12(g)(2). This third attempt to dismiss is inexcusable and should be judicially estopped, because it contradicts the same contract and WARN theories Defendants relied on in their first two attempts. Even if the Court entertains this third bite at the apple, it is no more persuasive than the first two. Defendants try to excuse their breach of the RA by recharacterizing the claims as ERISA-covered. That argument is meritless.

Even if Defendants' severance plan were an ERISA plan (which Plaintiffs assume for present purposes), the Contract Sub-Class members *do not seek anything from that plan*. They are seeking WARN damages, which Defendants promised in a separate, free-standing contract: the RA.

1

Underlying Defendants' Motion is the silent premise that the RA and its promise of WARN damages *became* the plan by sheer proximity (*i.e.*, because the RA *also mentions* the plan). Both the case law and a common-sense reading of the two documents say otherwise. The RA offered a benefit found nowhere in the plan: WARN damages. It told employees that, in exchange for a release, they were guaranteed at least their WARN damages—regardless of any entitlement to severance under the plan. The Contract Sub-Class members claim that this promise was broken: Defendants paid out the severance, which fell short of WARN, and stopped there. That is a breach of the RA contract, and the Contract Sub-Class members seek to be made whole up to the amount of their WARN damages. Adjudicating these claims does not require opening the plan. They do not "relate to" the plan under the case law. On these facts, subjecting WARN damages to the discretionary "eligibility determinations" of a plan administrator (with only "arbitrary and capricious" review), would in no way serve the purpose of ERISA preemption as intended by Congress. The claims belong in this Court for adjudication under WARN's liability standards.

## RELEVANT FACTS

### A.  The Claims of the Contract-Subclass

Plaintiffs bring WARN claims on behalf of themselves and a putative class of similarly situated employees terminated without notice by Defendants beginning on or about May 30, 2025. (Sec. Am. Compl., ¶1). Within the class are two sub-classes: the Contract Sub-Class (the subject of Defendants' Motion) and the WARN Sub-Class (uninvolved here).

The **Contract Sub-Class**, which Plaintiff Reed seeks to represent, comprises approximately 185 employees who signed release agreements ("**RA**") with the Defendants. The RA promised to pay any WARN damages owed. (Sec. Am. Compl., ¶5). After signing the RA, Reed was paid a net sum of about $6,000. Defendants calculated this payment as corresponding

2

to 2 weeks of severance under the company's Severance Pay Plan ("**SPP**").  (Sec. Am. Compl., ¶33).  Reed's WARN damages are approximately $37,000.  (Sec. Am. Compl., ¶34).  Under Texas (or alternatively Delaware) contract law, Reed, on behalf of himself and the Contract Sub-Class, asserts that Defendants breached the RA by not paying WARN damages.  (Sec. Am. Compl., ¶74).  Reed seeks to be made whole up to the amount of his WARN damages—that is, he seeks the difference between his WARN damages and the amounts Defendants have paid.  (Sec. Am. Compl., ¶75).

Defendants move to dismiss the claims of the Contract Sub-Class only.

**B.  The SPP and the RA**

Defendants attach to their Motion copies of the SPP and the RA.  Their relevant provisions are outlined below.

1.  The Severance Pay Plan

Defendants purportedly executed a multi-page document in January 2023, entitled "Severance Pay Plan" (which Defendants refer to as the "Severance Plan" in their Motion).  (Adv. ECF No. 64-1 (the "**SPP**")).

It generally provides "Severance Pay" to employees upon their termination, comprising a certain number of weeks of pay based on the employee's tenure at the time of their termination.  (SPP, §3.1).

That Severance Pay could be reduced if the employee were to receive other kinds of payments at termination:  "[r]egardless of the amount of [the employee's] Severance Pay under the Plan, such benefit will be reduced by" either (a) "the amount of other … payments (if any) payable by the Company to you under an employment contract or other arrangement[,]" or (b) any payments required to be paid … under any federal or state law, including …WARN."  (SPP,

3

§3.3(a)-(b)).

    2.  <u>The Release Agreement</u>

The release agreement (which both Plaintiffs and Defendants refer to as the "RA") is a multi-page document: a four-page "Waiver and Release" and, attached to it, a seven-page OWBPA Disclosure.  (Adv. ECF No. 64-2 (the "**RA**")).  (In citing to this document, Plaintiff will use the "Page _ of 11" numbering at the bottom of the document).  The copy of the RA attached to Defendants' Motion is pre-filled with Plaintiff Weatherwax's name in the signature line, with an anticipated signing date in 2025, when the layoffs here took place.  (RA, Page 4 of 11).

The RA gives itself a defined-term name—the "***Release***"—and distinguishes itself from the SPP, which it refers to as "the ***Plan***."  (RA, Page 1 of 11) (emphasis in original).  The RA promises the following benefit:

> [B]y executing this agreement, Employee agrees that it [sic] **shall receive**, in consideration for **the Release**, **the higher of** (a) the applicable Severance provided for in **the Plan <u>or</u>** (b) the applicable amount that may be owed to such Employee under the Worker Adjustment and Retraining Notification Act of 1988 ("**WARN**").

> To the extent any such **WARN** obligations are **higher than** the Severance that may be owed to Employee under **the Plan** or vice versa, the amount paid to such Employee in consideration for the Release shall be reduced on a dollar-for-dollar basis so that such Employee only receives the **higher of** clause (a) <u>**or**</u> (b) in the preceding sentence.

(RA, Page 1 of 11) (bold/underline emphases and space in between paragraphs added).

Thus, the RA guarantees that the employee will receive at least their WARN damages (*i.e.*, if WARN would be higher than severance, the employees receives WARN, only.  If severance is higher than WARN, the employee receives severance only).[3]

---

[3] It is *only* the RA that guarantees WARN damages.  As noted above, the SPP does not promise to pay WARN—it simply notes what would happen to severance pay *if* the employee received WARN damages.

Inherent in the RA's language, and its "higher of" formula, is the fact that there are <u>two</u> distinct sources of potential payment: "[t]he Plan" (i.e., **the SPP**), which provides the severance pay input of clause "(a)"; and WARN, which provides the damages input of clause "(b)," and which is being guaranteed for the first time in the **RA**.

Elsewhere in the RA, the repeated use of the word "or" further underscores that the "Release" and "the Plan" are independent, alternative dominions, each offering their own benefits. For instance:

> Notwithstanding the foregoing or any other provision in **this Release <u>or</u> the Plan** to the contrary, the Company and Employee further agree that nothing in **this Release <u>or</u> the Plan** []limits…

(RA, Page 2 of 11) (bold/underline emphases added). And again, when describing the employee's option to revoke the agreement, the RA acknowledges their respective benefits:

> If Employee revokes the Release, the Company will not be obligated **to pay** or provide Employee with the **benefits** (including the Severance) described **in this Release <u>or</u> in the Plan**, and this Release shall be deemed null and void.

(RA, Page 4 of 11) (bold/underline emphases added).

## LEGAL STANDARD

On a Rule 12(b)(6) motion for failure to state a claim, "[t]he [C]ourt accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). The motion is denied where the alleged facts "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "[D]etailed factual allegations are not required at the pleadings stage." *Kelson v. Clark*, 1 F.4th 411, 418 (5th Cir. 2021) (quotations omitted). Rather, "plaintiffs only need to plead 'factual content that allows the court to *draw the reasonable inference* that the defendant is liable for the misconduct alleged.' *LBT IP*

5

*II, LLC v. Uber Techs., Inc.*, No. 6:21-CV-01210-ADA, 2022 U.S. Dist. LEXIS 113764, at *6

(W.D. Tex. June 28, 2022) (emphasis in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678,

129 S. Ct. 1937, 1949 (2009)).

While the existence of an ERISA plan is a question of fact, where the relevant facts are

undisputed "[the court has] treated the question as one of law[.]" *Thorson v. Aviall Servs.*, Civil

Action No. 3:15-CV-0571-D, 2017 U.S. Dist. LEXIS 9640, at *14 (N.D. Tex. Jan. 6, 2017)

(citations and quotations omitted), quoting *House v. Am. United Life Ins. Co.*, 499 F.3d 443, 448

(5th Cir. 2007).  "Whether ERISA preempts a state-law breach-of-contract claim is a question of

law[.]" *Broussard v. Exxon Mobil Corp.*, No. 24-30664, 2025 U.S. App. LEXIS 5523, at *3 (5th

Cir. Mar. 10, 2025).

<u>**ARGUMENT**</u>

**I.      EVEN IF THE SPP IS AN ERISA PLAN, THE RA IS NOT**

For purposes of the Motion, Plaintiffs assume that the SPP is an ERISA-covered plan (for

reasons described below).  Defendants silently presume, however, that the SPP and the RA must

be treated as a single organism.  That argument skips steps in the analysis and is ultimately

wrong.

**A.  The *Fort Halifax* Distinction Between a "Plan" and a "Benefit"**

"To decide whether [a] state-law breach of contract claim is preempted, the court must

first determine whether the [agreement in question] is an ERISA employee welfare benefit plan."

*Thorson v. Aviall Servs.*, Civil Action No. 3:15-CV-0571-D, 2017 U.S. Dist. LEXIS 9640, at *6

(N.D. Tex. Jan. 6, 2017).  Though courts have long "encountered difficulties" in making this

determination, its north star is the Supreme Court's "seminal decision laying out the

requirements for the existence of ERISA plans, *Fort Halifax Packing Company, Inc. v. Coyne*."

6

*Kirkindoll v. NCUA Bd.*, Civil Action No. 3:11-CV-1921-D, 2013 U.S. Dist. LEXIS 165197, at *15 (N.D. Tex. Nov. 20, 2013).

*Fort Halifax* concerned a Maine statute "requiring employers to provide a one-time severance payment to employees in the event of a plant closing," the amount of which was based on the employee's tenure with the company. *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 3, 107 S. Ct. 2211, 2213 (1987).[4]  The employer in *Fort Halifax* challenged the state law, arguing that this severance program amounted to an ERISA plan, and was thus preempted by ERISA. *Id.*, 482 U.S. at 7 ("Appellant's basic argument is that any state law pertaining to a type of employee benefit listed in ERISA necessarily regulates an employee benefit plan, and therefore must be pre-empted."). *Id.*  The Court rejected that contention "in light of the plain language of ERISA's pre-emption provision, the underlying purpose of that provision, and the overall objectives of ERISA itself." *Id.* at 7.

As the Court explained, ERISA preempts laws (and claims) that "relate to any *employee benefit plan*" governed by ERISA.  482 U.S. at 8 (emphasis in original) (quoting 29 U. S. C. § 1144(a)).  And while prior precedent had interpreted "related to" broadly, it did not, the Court clarified, "support[ the] position that the word 'plan' should in effect be read out of the statute." *Id.*  In other words, Congress in ERISA "pre-empted state laws relating to *plans*, rather than simply to *benefits*." *Id.* at 11 (emphasis in original).

What makes for a *plan* (as opposed to a *benefit*) is "an ongoing administrative program" or "set of administrative practices." *Id.* at *11-12.  As the Court explained, this necessary quality

---

[4] *See* Me. Rev. Stat. tit. 26, § 625-B ("Any employer who closes or engages in a mass layoff at a covered establishment is liable to eligible employees of the covered establishment for severance pay at the rate of one week's pay for each year[.]").  The law is sometimes considered a predecessor to the federal WARN, but there are significant differences.  The primary obligation under federal WARN is, of course, advance notice of the layoffs. The damages for a violation are "back pay." 29 U.S.C. § 2104(a)(1)(A).  Unlike the Maine statute (and typical severance), the amount of back pay is measured by the period of violation, regardless of the employees' tenure (with minor exceptions).

7

of a plan flows from ERISA's purposes.  First, "[o]nly 'plans' involve administrative activity potentially subject to [the] employer abuse" ERISA sought to curb.  *Id.* at 16 (citing legislative history concerning "self-dealing, imprudent investing, and misappropriation of plan funds[.]").  Second, "Congress intended pre-emption to afford employers the advantages of a uniform set of administrative procedures" in their plans without "a patchwork scheme" of state-level regulation.  "This concern only arises, however, with respect to benefits whose provision by nature requires an ongoing administrative program."  *Id*. at 11.Given

the administrative hallmark of an ERISA *plan*, the Court rejected the notion that Maine's plant-closing severance statute was such a plan:

> The Maine statute neither establishes, nor requires an employer to maintain, an employee benefit plan. The requirement of a one-time, lump-sum payment triggered by a single event requires no administrative scheme whatsoever to meet the employer's obligation. The employer assumes no responsibility to pay benefits on a regular basis, and thus faces no periodic demands on its assets that create a need for financial coordination and control. Rather, the employer's obligation is predicated on the occurrence of a single contingency that may never materialize. []
>
> To the extent that the obligation to do so arises, **satisfaction of that duty involves only making a single set of payments to employees at the time the plant closes. To do little more than write a check hardly constitutes the operation of a benefit plan.**

*Id.* at 12. (emphasis added).

"Since *Fort Halifax* was decided, courts have recognized that, to be an ERISA plan, a program must require that an employer do more than make a one-time lump-sum payment on the occurrence of a single contingency."  The courts "engage[] in a process of comparing and contrasting the program in question with the factors on which other courts have relied." *Thorson v. Aviall Servs*., Civil Action No. 3:15-CV-0571-D, 2017 U.S. Dist. LEXIS 9640, at *14-16 (N.D. Tex. Jan. 6, 2017) (citations and quotations omitted).

**B. Because the RA Promises a Benefit Beyond the ERISA Plan, it is a Free-Standing Contract**

Defendants argue that *the SPP* is an ERISA plan, and for the purposes of the Motion, Plaintiffs do not contest that. But Plaintiffs do not claim breach *of the SPP*. They do not seek benefits which they claim were wrongfully denied them under the plan. They claim breach *of the RA*. Again, as former Chief Judge Fitzwater explained, "[t]o decide whether [a] state-law breach of contract claim is preempted, the court must *first* determine whether the [agreement in question] is an ERISA employee welfare benefit plan." *Thorson*, 2017 U.S. Dist. LEXIS 9640, at *6 (emphasis added). The agreement in question here is the RA. By conflating the SPP and RA (the errant premise of Defendants' Motion overall), Defendants wholly ignore the starting point of the analysis: whether *the RA* is an ERISA plan. It is not.

The *SPP* has certain elements which have been found indicators of an ERISA plan: (1) it applies to a large number of employees, making it more than a "'single event' plan[,]" *Gomez v. Ericsson, Inc.*, 828 F.3d 367, 372 (5th Cir. 2016); (2) employees are not eligible for "Severance Pay" if they have been terminated for cause, the determination of which involves some "discretion," *Gomez,* 828 F.3d at 372; and (3) it provides COBRA coverage which terminates upon the occurrence of certain events enumerated in the SPP, which could require "continuing monitoring obligations" by the company. *Gomez*, 828 F.3d at 373. These ongoing and discretionary elements of the SPP are contractually framed by the plan itself, and are thus properly the purview of a Plan Administrator tasked with "interpret[ing] its provisions." (SPP, § 4.1).

"*Plaintiff[s], however, [are] not seeking relief under the terms of that ERISA plan at all*." They are "*proceeding solely on the basis of a separate, free-standing [] agreement*." *Thorson*, 2017 U.S. Dist. LEXIS 9640, at *31 (emphasis added) (severance agreement signed at

9

termination was distinct from company's ERISA plan and gave rise to breach of contract claim).

As Judge Fitzwater clarified in *Thorson*, contracts are no less contracts just because they bear

some connection to an ERISA plan.  At the outset of a claimed ERISA preemption analysis, each

document—(1) the plan, and (2) a signed agreement, even if facially-related to the plan—must

be assessed on its own, because that frames the rest of the analysis  Crucially, where the signed

agreement promises benefits *beyond* those available under a plan, that agreement is a standalone

contract for the purposes of the ERISA analysis.

The plan-and-release bundle in *Thorson* was nearly identical to the SPP-and-RA bundle

here.[5]  Like the RA here, the signed agreement in *Thorson* was one of the "templates attached to

the" company's ERISA plan.  *Id.* at \*10.  The agreement "incorporated the definitions from [the

plan]" and "stated that it was an agreement 'for the benefits payable to [plaintiff] from the

[plan].'"  *Id.* at \*2.  Those facial connections between the two documents, however, did not

inherently weave them into a single, ERISA-covered organism, for numerous reasons.  First, the

court noted, the agreement did not actually incorporate the plan (*e.g.*, by attaching the plan or

invoking the plan's process for handling claims, as some release agreement do[6]).  Rather, the

agreement only "incorporate[d]" some of the plan's "*definitions*."  *Id*. at \*13 (emphasis in

original).  Indeed, some of the benefits promised in the agreement could be calculated "without

---

[5] They even had similar names: the plan was called "Severance Pay Plan for Exempt Employees" (the SPP here is called a "Severance Pay Plan") and the signed agreement was called "Severance Agreement and Release" (the RA here is called and "Waiver and Release").  *Id.* at \*2.

[6] *See id*. at 13-14.  The *Thorson* court distinguished the agreement in *Hernandez v. Alcatel USA Resources, Inc.*, 560 F.Supp.2d 528 (E.D. Tex. 2006), where the contract attached a summary of the plan and explained that all questions should be resolved by the Plan Administrator).  *Thorson* also distinguished *Gomez v. Ericsson, Inc.*, 2014 U.S. Dist. LEXIS 7433, (E.D. Tex. Jan. 22, 2014), *aff'd*, 828 F.3d 367 (5th Cir. 2016), though it is not clear that *Gomez* was deciding the same question.  In *Gomez*, the contract "incorporate[d] by reference the terms of the [ERISA plans], providing that severance payment will be made according to these plan terms."  *Thorson*, 2017 U.S. Dist. LEXIS 9640 at \*13.  Although the *Gomez* district court ultimately decided preemption, it is not clear that *Gomez* was deciding the threshold question whether the contract *itself* was an ERISA plan (the question *Thorson* was deciding). The *Gomez* plaintiff there was *seeking plan benefits*, so the distinction between the plan and the contract was rendered irrelevant under "related to" preemption, as discussed further below.

reference to the [] Plan, other than for certain defined terms." *Id.* at *13. Most relevantly, however, the agreement promised *additional benefits* (specifically, the payment of COBRA premiums) that were *not* provided for in the plan. It was *those additional* promises that the plaintiff was suing over. *Id.* at *14. Thus, for the purposes of identifying "an ERISA plan," the agreement "exist[ed] separate and apart from the [] Plan" and needed to be assessed on its own. *Id.*, citing *Evans v. Infirmary Health Servs., Inc.*, 634 F.Supp.2d 1276, 1288-89 (S.D. Ala. 2009) (claimed breach of severance *agreement* was not preempted by ERISA, even though company's severance *policy* was ERISA plan, because plaintiff sought to enforce rights under the agreement which "do not in any way involve clarification or enforcement of her rights under the terms of the Policy.") (bold font omitted).

Viewing the agreement—alone—through the *Fort Halifax* lens, it was clearly "not an ERISA employee benefit plan, but[], instead, an employment contract arrangement governed by state law," *Thorson*, 2017 U.S. Dist. LEXIS 9640 at *22, for a number of reasons. First, the court observed that it (the signed agreement) was not an administrative scheme applicable to hundreds of employees—it was an agreement between the company and "a single employee ([the plaintiff]), and payment [was] triggered by a single event ([the plaintiff's] termination)." *Id.* Most importantly, even the new COBRA coverage the plaintiff was suing over, which could theoretically involve some ongoing administration, "require[d] no additional, unique administrative scheme other than *what was already in place* for processing health care claims" by the company's other employees. *Id.* at *25 (emphasis added). Thus, while the agreement did promise certain new *benefits* (COBRA premiums for the plaintiff), it did not, standing alone, create a new *benefits plan*. The agreement was a contract, not an ERISA plan.

As clarified in *Thorson*, agreements which provide new benefits beyond a company's

ERISA plan are contracts, despite facial connections to the plan. *See also Stiles v. Mem'l Hermann Healthcare Sys.*, 213 S.W.3d 521, 530 (Tex. App. 2007) (even though "the Plan [was] referenced throughout the release," the release made additional "unqualified promise" for medical bill payments, a promise which was not limited by the "terms of the Plan," so the release itself was a free-standing contract not preempted by ERISA) (emphases removed); *Colorado v. Tyco Valves & Controls, L.P.*, 432 S.W.3d 885, 892 (Tex. 2014) (where retention incentive agreement promised both <u>severance</u> under company's ERISA plan and additional lump-sum <u>retention bonus</u>, a claim seeking to recover the bonus would not be preempted by ERISA because "[t]he bonus provision does not refer to or rely on the ERISA Plan in any way, and is akin to the non-preempted statute in *Fort Halifax* mandating a one-time, lump-sum severance payment to employees for remaining employed through a plant closure").

The RA here promises a benefit beyond the SPP, namely, WARN damages. It rightly describes WARN damages as an *alternative* to the "Severance provided for in the Plan" because, while the SPP obliquely references WARN, it does not promise to pay it.[7]  That promise is made for the first time in the RA, which says that the employee "shall receive" WARN damages (at least), "in consideration for the Release."  (RA, Page 1 of 11).

Defendants' own language in the RA repeatedly acknowledges that the newly introduced benefit of WARN damages is *not* coming from the SPP (i.e., "the Plan"):

- It promises the "higher of…Severance provided for in **the Plan <u>or</u>**…the amount…owed…under…**WARN**."  (RA at Page 1 of 11) (emphasis added)).

- It describes what happens if "**WARN** obligations are **<u>higher than</u>** the

---

[7] As noted *supra*, the SPP states only that Severance Pay will be "reduced by…any payments required to be paid … under any … law, including…WARN."  (SPP, §3.3(b) (emphasis added)).  In other words, it describes what would happen <u>if</u> the employee were to receive WARN damages.  That is not tantamount to a promise that WARN would be paid.  In the SPP, the potential WARN-related reduction is grouped with another type of extra-Plan payment that, *if the employee received it*, could reduce Severance Pay: payments under any other "employment contract or other arrangement" with the employee. (SPP, §3.3(a)).

Severance…owed…under **the Plan** or vice versa[.]"  (*Id.* (emphasis added)).

If WARN damages were promised in "the Plan," these sentences would be nonsensical.[8]

Indeed, the RA, which refers to itself as "this Release," (RA, Page 1 of 11), goes on to

distinguish itself from the "Plan" in other respects:

- It states: "Notwithstanding the foregoing or any other provision in **this Release <u>or the Plan</u>** to the contrary, the Company and Employee further agree that nothing in **this Release <u>or the Plan</u>** []limits…[.]"  (RA, Page 2 of 11) (bold/underline emphases added).

- If the employee revokes "the Release, the Company will not be obligated **to pay** or provide Employee with the **benefits** (including the Severance) described **in this Release <u>or in the Plan</u>**, and this Release shall be deemed null and void.  (RA, Page 4 of 11) (bold/underline emphases added).

The RA is not "the Plan."  It is "th[e] Release."  While the RA does give an employee

access to the benefits in "the Plan," it *also* promises him a new benefit, which he will receive if it

is higher than "the Plan."  That RA-introduced benefit is WARN damages.  Under *Fort Halifax*,

a contract promising one-time, plant-closing damages is not an ERISA-covered plan.[9]  To the

contrary, it is a paradigmatic *non*-plan.  The RA is not an ERISA plan, but simply, a contract.

To be clear, the fact that the RA is not itself an ERISA plan does not end the inquiry for

purposes of Defendants' Motion.  The SPP is still clearly in the picture, and Defendants argue for

preemption, so the Court must next determine whether the RA contract claims nevertheless fall

within ERISA's preemptive scope.  But navigating that issue, which continues to "plague lower

courts[,]" *Mem'l Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236 245 (5th Cir. 1990),

---

[8] To be clear, the RA defines "Severance" as the entirety of "the severance benefits…described in…[]the Plan[]." (RA, Page 1 of 11).  If WARN damages were offered as a Plan benefit, they could never be "higher than…the Severance provided for in the Plan."  The RA is quite clearly listing two alternative benefits coming from two different sources.

[9] If the Supreme Court found Maine's plant-closing severance to <u>not</u> be preempted, WARN damages would not be preempted *a fortiori*.  Maine's severance is at least similar to the weeks-per-year severance offered by many employers and explicitly addressed in ERISA.  WARN damages, on the other hand, are not even truly severance. They are back pay, more akin to Title VII damages for employment discrimination.  It would be difficult to argue that back pay under Title VII should be considered an "ERISA plan."

13

requires the proper starting point, despite being ignored by Defendants' Motion.[10]  There are two documents before the Court: an ERISA plan (the SPP) and a contract (the RA).

## II.   BECAUSE THE RA CONTRACT CLAIMS DO NOT RELY ON THE SPP, THEY ARE NOT PREEMPTED

There are two forms of ERISA preemption: "complete" and "conflict/defensive."  Neither is present here.

### A.  There is No "Complete" Preemption

ERISA provides a claimant with a cause of action "to recover benefits due to him under the terms of his [ERISA] plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).  "Complete" preemption exists where a claim seeks the "same relief" provided by ERISA—that is, where the claimant "could have brought [his] claim under ERISA['s]" cause of action.  *McGowin v. Manpower Int'l, Inc.*, 363 F.3d 556, 559 (5th Cir. 2004).   If "complete" preemption is found, "ERISA offers the sole framework for relief" and the claim is adjudicated as an ERISA claim.  *Kersh v. UnitedHealthcare Ins. Co.*, 946 F. Supp. 2d 621, 630 (W.D. Tex. 2013).[11]

Two criteria must be met to find complete preemption: (1) "[the] individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B)," and (2) "there is no other independent legal duty that is implicated by a defendant's actions."  *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210, 124 S. Ct. 2488, 2496 (2004).  The claims here do not meet either of the criteria.

---

[10] The closest Defendants get to addressing this issue is a glancing mention elsewhere in the Motion, where they assert, without any explanation, that the RA is "incorporated into and governed by" the SPP.  (Motion at 12).  As is clear from this discussion above, conclusory links like this do not aid the Court's analysis.  *See Cefalu v. B.F. Goodrich Co.*, 871 F.2d 1290, 1294 (5th Cir. 1989) (ERISA's preemption of state law claims "depends on the conduct to which such law is applied, not on … form[s] or label[s.]").

[11] Notably, the claim is "not automatically subject to dismissal[,]" as Defendants' Motion seems to request.  It is simply adjudicated under ERISA's framework.  *Id.*

First, the Contract Sub-Class could not have brought their claims under § 502(a)(1)(B). What they seek is WARN damages (or more specifically, the difference between their WARN damages and what they have already been paid). Had the Contract Sub-Class members sought these damages via an ERISA claim under the SPP, Defendants would be the first to point out that the SPP does not promise them such damages.

Second, and a natural flipside to the first criteria, there is *only* an "independent legal duty" giving rise to these WARN damages—namely, the WARN Act, which Defendants promised to adhere to in the RA.

Defendants' obligation to pay WARN damages arises from—and only from—WARN and the RA. There is no complete preemption.

### B. There is No "Conflict/Defensive" Preemption

The second form of preemption is known as "conflict" or "defensive" preemption. It flows from ERISA's declaration that the statute "supersede[s] any and all state laws insofar as they … relate to any [ERISA] employee benefit plan." 29 U.S.C. § 1144(a). As such, "conflict" preemption occurs where a state law claim "relates to" an ERISA plan. *Kersh*, 946 F. Supp. 2d at 631.[12]

ERISA's "related to" preemption may be broad but "[it] is not limitless." *Rozzell v. Sec. Servs.*, 38 F.3d 819, 821 (5th Cir. 1994). Claims "may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Shaw v. Delta Air Lines*, 463 U.S. 85, 100 n.21, 103 S. Ct. 2890, 2901 (1983).

Like complete preemption, "defensive" preemption requires two criteria be met: "(1) the

---

[12] While the statute speaks of preempting state "laws," that is read to include "state law causes of action." *Cefalu v. B.F. Goodrich Co.*, 871 F.2d 1290, 1292 n.5 (5th Cir. 1989).

state law claim addresses an area of exclusive federal concern[13], such as the right to receive benefits *under the terms of an ERISA plan*; and (2) the claim directly affects the relationship between the traditional ERISA entities -- the employer, the plan and its fiduciaries, and the participants and beneficiaries." *Hubbard v. Blue Cross & Blue Shield Ass'n*, 42 F.3d 942, 945 (5th Cir. 1995) (emphasis added).  Assuming that the SPP were an ERISA plan, the second criterion would be met.  But the first criterion is not.

Defendants do not cite a preemption authority where a claim like the one here—for breach of a separate contract's promise to pay *non*-plan benefits—was found to be "related to" an ERISA plan.  Indeed, they don't offer case law showing how the "related to" prong is applied at all.  Instead, Defendants rely entirely on a series of generalized, distorted characterizations of the claims here, including assertions that:

-   The Contract Sub-Class members "seek additional benefits allegedly due under the [SPP]"; and

-   The claims are for a "recalculation of severance benefits due under the [SPP] based on what is essentially an asserted misapplication of [SPP] terms."  (Motion at 11).

Neither of those assertions is true.  Plaintiffs seek nothing from the SPP.

The Fifth Circuit illustrated how the "related to" prong is applied in *Cefalu v. B.F. Goodrich Co.*, 871 F.2d 1290, 1294 (5th Cir. 1989).  There, the plaintiff's employer (Goodrich) was selling his business unit to another company (TCI).  871 F.2d at 1291.  The plaintiff was given the choice of going to work for the acquiring company or opening his own franchise under the original employer's name.  According to the plaintiff, he was induced to open the franchise because "representatives of Goodrich orally assured him that his retirement benefits as a

---

[13] WARN is a federal law, but that is not the "federal concern" referred to in this prong of the ERISA preemption analysis: the question is whether the claims relates to "pension plan regulation[.]" *Cefalu*, 871 F.2d at 1293, *quoting Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 523, 101 S. Ct. 1895, 1906 (1981).

franchisee would be identical to those of employees who had accepted jobs with TCI." *Id.* at

1292. Yet, after opening the franchise, "Goodrich advised him that his retirement benefits would

not be the same as the employees who chose to work for TCI." *Id.* The plaintiff claimed breach

of that (oral) contract. In finding the claim preempted, the court emphasized that it "related to"

an ERISA for a very concrete, practical reason:

> [I]f [the plaintiff] is successful in this suit his damages would consist of the pension
> benefits he would have received had he been employed by TCI. *To compute these
> damages, the Court must refer to the pension plan under which appellant was
> covered when he worked for Goodrich.* Thus, the precise damages and benefits
> which appellant seeks are created by the Goodrich employee benefit plan. To use
> any other source as a measure of damages would force the Court to speculate on
> the amount of damages.

*Id.* at 1294 (emphasis added). A claim "relates to" an ERISA plan if it *relies* in some way on the

plan, that is, if it "is dependent on, and derived from the rights of the [ERISA] plan beneficiaries

to recover benefits under the terms of the plan[.]" *Transitional Hosps. Corp. v. Blue Cross &

Blue Shield, Inc.*, 164 F.3d 952, 955 (5th Cir. 1999). The claim in *Cefalu* relied on an ERISA

plan—the plan of the acquiring company. He was claiming entitlement to something provided

only in that ERISA plan. Calculating his damages would, therefore, require opening up that

plan.

This is the throughline of the Fifth Circuit's decisions. As the court explained in *Mem'l

Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236 (5th Cir. 1990), Fifth Circuit precedent has

found preemption for two types of claims: those "alleging improper processing of a claim for

plan benefits," and those "that have the effect of orally modifying the express terms of an ERISA

plan and *increasing plan benefits* for participants or beneficiaries who claim to have been

misled." *Id.* at 245. *See, e.g.*, *Gomez v. Ericsson, Inc.*, 2014 U.S. Dist. LEXIS 7433, 2014 WL

243698, at *2 (E.D. Tex. Jan. 22, 2014), aff'd, 828 F.3d 367 (5th Cir. 2016) (where plaintiff was

17

barred from plan benefits because of an alleged breach of his release agreement, his claim *for plan benefits* was preempted); *Kersh v. UnitedHealthcare Ins. Co.,* 946 F. Supp. 2d 621, 634 (W.D. Tex. 2013) (where plaintiff claimed that the plan's life insurance coverage was lower than that quoted by a plan representative, his breach of oral contract claim was preempted because evidence made clear that plaintiff understood those statements as describing "what coverage was available under the [employer's] Plan," thus his contract claim would have the effect of increasing plan benefits).

By contrast, where claims are based on a *separate* agreement and do not rely on the plan, ERISA does not disturb those claims.  *See, e.g.*, *Mem'l Hermann Health Sys. v. Coastal Drilling Co.*, 12 F. Supp. 3d 1001, 1011 (S.D. Tex. 2014) ("MHHS seeks to enforce a provision of the Network Access Agreement against Coastal Drilling, not enforce the ERISA Plan."); *N. Cypress Med. Ctr. Operating Co. v. CIGNA Healthcare*, 782 F. Supp. 2d 294, 313 (S.D. Tex. 2011) ("The 'Discount Agreements' in this case are contracts that CIGNA allegedly entered into []. [A] fact finder would need only to look to the terms of the contract, and not to the ERISA plans[.]").

The claims of the Contract Sub-Class members do not seek anything from the SPP.  They do not seek to modify it, or rely on it in any way.  They seek only their WARN damages, as promised to them under the RA.

Defendants rely on more generic, unsupported assertions to argue otherwise.  They say resolving the claims "requires interpretation of Severance Plan terms, including eligibility determinations and benefit calculations."  (Motion at 12).  But they do not say why.

Defendants fail to point to any step in the analysis that would require the Court to interpret the SPP.   That is because there is none.   The RA promises employees the "higher of" WARN or the SPP.  Defendants have paid them the SPP amount and the Sub-Class members say

18

that WARN is higher.  They ask to be made whole up to the amount of their WARN damages.

Resolving the claims will require answering two questions:

    (a)  How much are they entitled to under WARN?
    (b)  How much have they already been paid?

Damages will be (a) minus (b).  If (b) somehow turns out to be greater, damages will be

nothing.[14]  Neither input in this formula requires ever opening the SPP.

Defendants try another generic statement, claiming that the "obligation to pay the 'higher

of' amount exists only because of the [SPP] and its incorporated RA" and *"[a]bsent the Plan,*

*there would be no obligation and no claim at all*."  (Motion at 12) (emphasis).  That is

demonstrably untrue.  Below is how the RA would read if the reference to the SPP (bracketed

words below) were read out of the text making the SPP altogether absent:

> [B]y executing this agreement, Employee agrees that it shall receive, in
> consideration for the Release, the higher of (a) [*the applicable Severance provided
> for in the Plan*] or (b) the applicable amount that may be owed to such Employee
> under the Worker Adjustment and Retraining Notification Act of 1988 ("WARN").

(RA, Page 1 of 11).

Removing the SPP does not affect the Contract Sub-Class members' claims.  Regardless

of what clause "(a)" says—or even if it is blank—the RA guarantees under clause "(b)" that the

employees will *at least* be made whole up to the amount of their WARN damages.  If the

employees claim that they have not yet received the equivalent of their WARN damages, that is a

breach of the RA.  Determining the amount of WARN damages is the only issue in this case.

At bottom, Defendants do not really dispute this.  They concede that this case only "turns

---

[14] At the risk of belaboring the point, Plaintiffs are only seeking their WARN damages.  Defendants have already made their calculation of the SPP severance amounts, and Plaintiffs do not ask to re-open that calculation.  Lest Defendants try to portray this as "creative" pleading intended to avoid ERISA issues, the long history of these claims proves otherwise.  The claims were originally pleaded *as WARN claims*, which only allow recovery of WARN damages.  It was Defendants who demanded that they be re-framed in the context of the RA.  Plaintiffs seek only what they have sought since the beginning of this litigation: to be made whole up to their WARN damages, and nothing more.

on…WARN[,]" rather than the Plan (Motion at 12).  But they need to make it sound ERISA-like for their Motion, so they drape the WARN question in plan-sounding language, as if WARN rights were coming from the SPP.  They call it a WARN "eligibility determination," which they describe as the plan administrator's discretionary determination "whether the employee was entitled to WARN-based benefits[.]"  (*Id.*)  Those are empty phrases.  The SPP does not provide for "*WARN-based benefits*."  Nothing in the SPP will aid this supposed "*eligibility determination*."  It is Congress, not an "Administrator's discretionary determinations" (*Id.*), that dictates damages under the WARN Act.  And it is the RA—not the SPP—which guaranteed to the employees that the company would follow Congress' WARN mandate.  The Contract Sub-Class simply seeks to enforce that guarantee.[15]

### C.  Preemption Here Could Not Have Been Congress' Intent

Defendants urge preemption for a simple reason: pretending that the RA/WARN claims are actually claims for ERISA plan benefits would likely water down the Court's review of Defendants' actions here.  *See Anderson v. Cytec Indus*., 619 F.3d 505, 512 (5th Cir. 2010) (Denials of plan benefits are reviewed under "the functional equivalent of arbitrary and capricious review[.]").[16]  As such, the practical question here is *who should be interpreting*

---

[15] It warrants noting that even if Plaintiffs *were* asking the Court to re-start the "higher of" determination from scratch, including re-calculation of the severance amounts, the claims would *still* not be preempted.  That is because under the SPP, the only "discretion" that the plan administrator has in calculating severance pay is an off-switch: the plan administrator may disqualify an employee from severance altogether if the employee was terminated for "cause" (as defined in the SPP).  Once an employee is deemed eligible, the amount of pay is mechanical (2 weeks of severance per year of service).

Given that the only discretion in the SPP is an off-switch, the RA must be interpreted as having dispensed with it.  That is, it must be interpreted as *assuming* that the employee has already been deemed eligible.  It would be nonsensical for Congress to allow employers to offer employees the "higher of" A or B, where the employer holds discretion to render B worthless, but nevertheless, because of B's inclusion in the formula, ERISA would preempt a claim for breach of the contract. The SPP "severance" described in the RA must be talking about employees already deemed eligible for severance, under the mechanical weeks-per-year formula.

Under this interpretation of the RA, the "higher of" calculation is a rote calculation of a one-time payment: the kind that is not preempted per *Fort Halifax.*

[16] This would be the result under complete preemption: the claims would be treated as ERISA claims, run through Defendants' administrative "claim process"—if such thing even continues to exist in the bankruptcy—and the Court

*WARN: the Court or Defendants' plan administrator*?[17]  That question is an important one,

because ERISA preemption is guided fundamentally by Congressional intent:

> The ultimate touchstone in a preemption analysis is Congress's purpose in enacting the federal statute. [] Congress enacted ERISA to promote the interests of employees and their beneficiaries in employee benefit plans,  . . . and to protect contractually defined benefits.

*Mem'l Hosp. Sys.*, 904 F.2d at 245 (citations and quotations omitted).  Indeed, it was

Congressional intent that ultimately decided the question in *Memorial Hospital*, which was

whether a medical provider's state law claim against an insurance company, for misrepresenting

a patient's coverage, was preempted.  The defendant insurance company—the plan administrator

in that case—argued for preemption, but the Fifth Circuit found it would not align with

Congressional intent:

> Defendants in this case have not convinced us that either the commercial scenario described above, or its state law vindication, raises any issue concerning the matters that Congress intended to be regulated exclusively by ERISA. Moreover, they have not adequately explained how insulating plan fiduciaries from the consequences of their commercial dealings with third-party providers would further any of ERISA's goals.

*Id.* at 247.  The question here, then, is whether Congress intended WARN damages "to be

regulated exclusively by ERISA."  *Id.*  The very suggestion defies credulity.  Again, ERISA

preemption is intended to promote "uniform[ity]" in a "plan fiduciary['s] responsibilities" when

providing "contractually defined benefits."  *Id.* at 245.  But the WARN damages here are not

"contractually defined benefits" – they are federally mandated ones with federally defined

liability.  Indeed, they are lump-sum, plant-closing back pay—even less preemptable than the

---

would review the plan administrator's decision under an arbitrary and capricious standard.  Under "conflict/defensive" preemption, the claims would simply be dismissed.

[17] For example, Defendants show where they are headed in their subsequently-filed *Motion to Stay Discovery Pending Ruling on Partial Motion to Dismiss* (Adv. ECF 65).  Rather than allowing the Court to assess the WARN claims based on the facts of the case, they argue that the factual record must be severely truncated.  They claim that the Court may only consider "what was considered by the plan administrator."  (*Id.* at 6).

Maine law's severance which the Supreme Court long ago held would *not* be preempted. *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 12 (1987). Defendants' argument is that Congress must have intended to preempt WARN claims—to turn federal WARN liability into a discretionary "eligibility determination" by a plan administrator—simply because a contract promising WARN damages *also* mentions an ERISA plan. Proximity equals preemption, according to Defendants.

There is no reason to think that Congress intended WARN's already-uniform enforcement scheme be displaced and relegated to the discretionary decisions of plan administrators, simply because a contract promising WARN pay also mentions an ERISA plan. ERISA was already on the books when WARN was passed, and Congress nevertheless spoke very clearly to the way WARN should be administered. "Eligibility determinations" (so to speak) are made first, by Congress, in the words of the statute; second, by the federal Department of Labor, which was tasked with "prescrib[ing] such regulations as may be necessary to carry out th[e] Act," 29 U.S.C. § 2107(a); and third, by the courts, before whom employees may "seek[] to enforce [WARN] liability." *Id.* § 2104(a)(5). It is Congress' remedial framework in WARN— not the discretion of a plan administrator—which holds "the exclusive remedies for any violation of th[e statute]." 29 U.S.C. § 2104(b).

## III.   UNDER BOTH JUDICIAL ESTOPPEL AND ERISA FUTILITY, DEFENDANTS' LITIGATION CONDUCT UNDERMINES THEIR CURRENT MOTION

Over months of litigation, Defendants have made multiple attempts to dismiss the WARN claims, all the while holding this ERISA card in their pocket as a last resort—an unnecessary prolonging of this litigation. This disregard for the parties' and judicial resources is especially dubious in a bankruptcy, where the passage of time has an inherent prejudicial effect on creditors' claims.

The courts guard against delay tactics like this.  In the broader context of federal court litigation, the doctrine of judicial estoppel prevents litigants from playing fast and loose with their arguments.  In the ERISA context specifically, the doctrine of futility prevents defendants from forcing claimants to go through a useless administrative review process before they may have their day in court.  Both doctrines apply here.

**A.  Defendants are Judicially Estopped from Seeking ERISA Preemption**

Judicial estoppel "precludes litigants from 'playing fast and loose' with the courts, and prohibit[s] parties from deliberately changing positions according to the exigencies of the moment."  *Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 294 (5th Cir. 2004), quoting *United States v. McCaskey*, 9 F.3d 368, 378 (5th Cir. 1993).  Application of the doctrine has two components: "(1) the position of the party to be estopped must be clearly inconsistent with its prior position; and (2) the court must have accepted that prior position."  *Karaha Bodas*, 364 F.3d at 294.  Both are met here.

For months, and in two substantive motions, Defendants have argued that the claims of Reed and his putative sub-class are governed by Texas contract law and the WARN Act.  They first took this position at class certification: they sought to exclude these employees from the class by arguing for the "enforceability" of the RAs, which the employees had "executed…in exchange for severance compensation."  (Adv. ECF No. 29 at 6).

The Court asked for clarification of Defendants' position on this question, particularly, "whether employees who signed the [] RA have an enforceable obligation under the RA" and "whether the RAs are being assumed by the Debtors." (Adv. ECF No. 37).  Defendants were emphatic: "Yes. The…RAs…are enforceable contracts supported by valid consideration, definite payment terms, and mutual obligations."  (Adv. ECF No. 39 at 2).  Defendants invoked "Texas

23

law" to support their interpretation of the RA.  (*Id.* at 3).  In no uncertain terms, they explained

how a claim for unpaid WARN should be adjudicated:

> If, contrary to the facts of this proceeding, the Debtors were to pay an employee
> less than the greater of the amount to which he or she would have been entitled
> under the Severance Pay Plan or the WARN Act, that employee would possess a
> contract claim for breach of the RA.

(*Id.*)  The Court accepted this argument.  It applied Defendants' interpretation of the RA under

Texas contract law and denied class certification:

> According to Defendants, in the event an employee is not paid the higher of what
> they would have been entitled to under either the SPP or the WARN Act, that
> employee could possess a contract claim based on breach of the RA. The Court
> agrees with Defendants' interpretation.

(Adv. ECF No. 40).  The Court, of course, did not decide the *merits* of the contract claims,

because they had not been pleaded as such and because the WARN merits had not been litigated.

But the framing of the legal question—what kind of claims would these be?—were successfully

asserted by Defendants.

Defendants doubled down on this theory in their previous Motion to Dismiss.  They

argued for dismissal of all the putative class members' WARN claims—under *WARN* and

contract law:

> Because Plaintiffs do not plausibly allege a WARN-eligible event at a single site of
> employment and do not allege facts that could invoke Subpart Six, the WARN Sub-
> Class claim fails as a matter of law. *The Contract Sub-Class claim fails for the same
> reason*. It rests entirely on the premise that members of that subclass were entitled
> to WARN payments under the Release Agreement. Without a plausible allegation
> of WARN eligibility, *Plaintiffs cannot state a breach-of-contract claim*.
>
> Although the two subclasses advance different legal theories, the same pleading
> defect is dispositive for both. The WARN Sub-Class must allege that a plant closing
> or mass layoff occurred at their single site of employment. The Contract Sub-Class
> must plausibly allege the same thing because the Release Agreement provides
> WARN-equivalent payments only to employees who were, in fact, WARN-eligible.
> Thus, *WARN eligibility is a necessary predicate element of their contract theory*.
> Because the Amended Complaint does not allege that any Plaintiff—or any member

24

of either subclass—worked at a single, identifiable site that experienced the minimum number of employment losses required by the WARN Act, neither subclass can state a claim. The absence of any pleaded single site defeats both the WARN *and contract theories* as a matter of law.

(Adv. ECF No. 50 at 19-20).

Defendants thought WARN was an advantageous means to dismiss the Contract Sub-Class members' contract claims. They asked the Court to decide a dispositive motion under WARN precedent. The Court accepted Defendants' position and decided the WARN issue, just not in Defendants' favor. (Adv. ECF No. 57).

Defendants now argue that the "claims are governed by ERISA[,]" not WARN and contract law. (Motion at 7). They claim that the sub-class members "cannot obtain [WARN's] relief" because of "ERISA's exclusive remedial scheme." (Motion at 13). Indeed, they claim that the Court cannot independently adjudicate the claims at all, because the claims "depend[] entirely on the Plan Administrator's interpretation of SPP terms" and "require[] … the Administrator's discretionary determination." (Motion at 12). They blame *the sub-class members* for "repackag[ing] the … alleged entitlement to 60 days of pay as a contractual claim" and argue that "ERISA's preemption provisions bar that result." (Motion at 14).

If anyone has done this repackaging, it is Defendants. They averred to the Court that the RA-based claims are contractual. In the interests of judicial efficiency and the integrity of the courts, Defendants' whack-a-mole approach to this litigation should not be condoned. *See Karaha Bodas*, 364 F.3d at 294 (affirming district court's application of judicial estoppel, finding that party was precluded from arguing for Indonesian law where party "repeatedly represented to the Tribunal and to the district court that Swiss procedural law controlled the arbitration[,] [b]oth the Tribunal and the district court relied on these representations in their decisionmaking[, and] Pertamina's argument that Indonesian procedural law governed the arbitration is clearly

25

inconsistent with its prior position that Swiss procedural law controlled.").

### C. ERISA Administrative Exhaustion Would Be Futile

Under a theory of complete preemption, Defendants ask that the Contract Sub-Class members be required to "exhaust available administrative remedies" before they can have their day in court. (Motion at 13). This would inject about five months of delay on top of the time Defendants have already squandered by sitting on their ERISA arguments. ERISA does not condone administrative processes whose only value is to burn time. *See B & S Welding LLC Work Related Injury Plan v. Oliva-Barron*, 447 S.W.3d 425, 429 (Tex. App. 2014) (affirming lower court's decision excusing plaintiff from administrative exhaustion where they would have been "futile"). By dragging out these proceedings with strategically-sequenced arguments, Defendants have imbued any further delays with futility. In a bankruptcy like this one, the passage of time is inherently prejudicial to creditors. By the time the Plaintiffs here would be allowed back in court, the assets supporting a recovery may be gone. Requiring administrative exhaustion would be an exercise in futility.

Defendants do not identify what administrative remedies are "available," but perhaps they are referring to the SPP's claims and appeal process, which would be:

- Filing a claim "with the Executive Vice President, Chief Human Resources Officer of the Company (or such other person designated by the Plan Administrator) ("Claims Administrator");

- Waiting up to "ninety (90) days" for a "written notice of [the Claim Administrator's] decision with respect to such claim";

- If the claim is denied, filing a "written application for review"; and

- Waiting up to "sixty (60) days" for a decision from the Plan Administrator.

(SPP, §§ 5.1 and 5.2). In about five months, say Defendants, perhaps the Contract Sub-Class members might be allowed back into this Court.

The record contains no evidence that a Plan Administrator or Claim Administrator still exist in this bankruptcy.  Even if they did, Defendants have spent the past eight months "oppos[ing] [the Sub-Contract Class members'] claim at every step."  *Ruttenberg v. United States Life Ins. Co.*, 413 F.3d 652, 663 (7th Cir. 2005) (holding administrative exhaustion would be futile).  They have expended an unusual amount of resources—both the estate/trust's, the Plaintiffs' and the Court's—in doing so.  "[T]here is no evidence in the record demonstrating that [Defendants'] denial [of the Contract Sub-Class members' claims] would be anything but 'certain' if the company had reviewed [their] claim once again."  *Id.*

Defendants' obstinate opposition to the claims here, combined with their tactical delays in having them adjudicated, demonstrate that the *additional* delay of running the claims through an administrative review process would be futile.

## **CONCLUSION**

For the foregoing reasons, the Motion should be denied.

Dated: April 20, 2026

/s/ *Jack A. Raisner*
Jack A. Raisner (*pro hac vice*)
René S. Roupinian (*pro hac vice*)
**RAISNER ROUPINIAN LLP**
270 Madison Avenue, Suite 1801
New York, New York 10016
Telephone: (212) 221-1747
Facsimile: (212) 221-1747
Email: rsr@raisnerroupinian.com
Email: jar@raisnerroupinian.com

Walter J. Cicack (04250535)
**HAWASH CICACK & GASTON LLP**
2118 Smith Street
Houston, Texas 77002
Tel: (713) 658-9003
Email: wcicack@hcgllp.com

*Attorneys for Plaintiffs and the putative class*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this the 20th day of April 2026, I electronically filed this Motion with the Clerk of Court using the CM/ECF system which will send notification of such filing to all those receiving electronic service this matter.

/s/ *Jack A. Raisner*
Jack A. Raisner

28