**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
(HOUSTON DIVISION)**

| | |
|---|---|
| In re:<br><br>SUNNOVA ENERGY INTERNATIONAL INC., et al.,[1]<br><br>　　　　　　　　　　Debtors,<br><br>_____<br><br><br>ERIK WEATHERWAX, PATRICK FRANZ, and ADAM REED, on behalf of themselves and all others similarly situated,<br><br>　　　　　　　　　　Plaintiffs,<br><br>　　　　v.<br><br>SUNNOVA ENERGY INTERNATIONAL INC, et al.,[2]<br><br>　　　　　　　　　　Defendants. | **Chapter 11**<br>**Bankruptcy Case No. 25-90160 (ARP)**<br>**Jointly Administered**<br><br><br><br><br><br>**Adv. Pro. No.  25-03423 (ARP)** |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
MOTION TO STAY DISCOVERY**

Plaintiffs Erik Weatherwax, Patrick Franz and Adam Reed ("Plaintiffs"), by and through

their counsel, respectfully submit their response in opposition to the *Motion to Stay Discovery*

*Pending Ruling on Partial Motion to Dismiss* (ECF No. 65) ("Motion") filed by Thomas A. Pitta,

the trustee of the Sunnova Creditor Trust on behalf of the Debtor-Defendants ("Defendants").

---

[1,2] A complete list of each of the Debtors in these chapter 11 cases (the defendants in this adversary proceeding) may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/Sunnova.  The location of Debtor Sunnova Energy International Inc.'s corporate headquarters and the Debtors' service address in these chapter 11 cases is 20 East Greenway Plaza, Suite 540, Houston, Texas 77046.

**PRELIMINARY STATEMENT AND SUMMARY OF ARGUMENT**

Having made a third bid to dismiss some of the employees' claims (this time the Contract Sub-Class members), Defendants urge the Court to halt all discovery in this case pending the outcome of their latest motion. Their purported rationale is to spare unnecessary costs, which rings hollow in light of their strategy thus far: maximizing resource-burn by breadcrumbing alternative defenses across successive motions. Regardless, staying discovery would not be a cost-cutting measure. While Plaintiffs' discovery is applicable to the entire class, it would be equally necessary for just the WARN Sub-Class (whose claims are undisputedly going forward), if the Contract Sub-Class were to be dismissed. Staying discovery would only cause further unnecessary delay.

In the Fifth Circuit, a party resisting discovery has the burden to demonstrate, specifically, any claimed overbreadth. Defendants do not engage that question. They simply ask the Court to freeze the case because there is a motion pending. Defendants suggest (though they never quite say it) that some of the discovery pertains only to the Contract Sub-Class members whose claims are the subject of the motion to dismiss. But Defendants offer no details. They do not identify any requests that "may prove irrelevant." (Motion at 5-6).

Under all circumstances, the WARN Sub-Class members will need to (a) prove that they and a sufficient number of other employees had their "single site" at Houston; and (b) probe the facts surrounding Defendants' affirmative defenses. Discovery on both issues focuses on the company and its upper management: how they directed the work below them (for the single site question) and how they handled their WARN notice obligations in light of the company's economic health (for the affirmative defenses). Virtually none of Plaintiffs' discovery is employee-specific, and it is relevant regardless of Defendants' partial motion to dismiss. Lastly,

2

the dismissal motion is unlikely to be decided in Defendants' favor (another factor in the stay analysis).

Consistent with Defendants' approach to this litigation generally, the only guaranteed result of their requested relief would be further unjustified delay.

## THE DISCOVERY REQUESTS

This adversary proceeding seeks to recover WARN damages for a putative class comprising two sub-classes: the WARN Sub-Class, whose claims are undisputedly proceeding (as WARN claims); and the Contract Sub-Class, whose claims are the subject of Defendants' recent partial motion to dismiss (claiming they are ERISA claims).

After Defendants' previous motion to dismiss was decided, Plaintiffs promptly served Interrogatories (Adv. ECF No. 65-1) ("ROGs") and Requests for Production of Documents (Adv. ECF No. 65-2) ("RPDs").  The discovery requests target two primary issues affecting Defendants' WARN liability: the "single site" question and Defendants' affirmative defenses.

The single site question turns on Plaintiffs' allegation that they and other remote employees "reported to and/or received assignments from the Houston Facility."  (Opinion, Adv. ECF No. 57 at 25).  The discovery targets that question by looking at the relationship between upper management in Houston and the work performed by the employees.  To prioritize the most valuable evidence, the requests seek information either "Company-wide or within Departments," the latter being a useful unit of measurement which yields common bodies of evidence applicable to groups of employees.  Typical requests seek:

- The company's Departments and their leadership (ROGs 1-2);
- People with knowledge of how assignments were made and how performance was monitored (ROG 3);
- Organizational charts (RPD 2);
- Reporting or management structure (RPD 3);
- Documents showing how work was assigned to employees (RPD 5);

3

- Metrics related to performance or productivity applied to employees (RPD 8);
- Communications from C-Suite employees to their direct/indirect reports (RPD 16-17); and
- Policies regarding remote work and equipment provided to the remote employees (RPDs 19-21).

The second topic of discovery is Defendants' affirmative defenses (unforeseeable business circumstances and faltering company).  These requests focus on the events which purportedly caused the layoffs, the company's efforts to secure financing beforehand, and the handling of layoff communications:

- The events which Defendants contend precluded 60 days' notice of the layoffs (ROG 5, RPD 24);
- The events described in the company's termination letters to employees, which claimed a sudden loss of access to capital (ROG 6, RPDs 25-26);
- Board minutes (RPD 27);
- Possible sources of additional capital in the months before the layoffs (ROG 7);
- Individuals involved in the decision to conduct layoffs (ROG 8); and
- Individuals involved in preparing layoff communications (ROG 9).

There is only one discovery request which seeks information on a per-employee basis. RPD 1 seeks basic employee information, such as their start/end dates, pay, site of employment, supervisor's name, and similar information.  Often, such data is contained in a Human Resources Information System and can be produced in a spreadsheet.

<b><u>ARGUMENT</u></b>

**I.     THE PARTIAL MOTION TO DISMISS DOES NOT RENDER PLAINTIFFS' DISCOVERY OVERBROAD**

Defendants must show good cause to justify the exceptional relief they seek, but their generic arguments fall far short of that burden.

"No federal rule, statute, or binding case law applies [] to automatically stay discovery pending a ruling on ... a [Federal Rule of Civil Procedure] 12(b)(6) motion to dismiss[.]" *Mahalingam v. Wells Fargo Bank*, N.A., 349 F.R.D. 127, 141 (N.D. Tex. 2023) (quotations omitted).  "In fact, such a stay is the exception rather than the rule." *Nerium SkinCare, Inc. v.*

4

*Olson*, No. 3:16-cv-1217-B, 2017 U.S. Dist. LEXIS 7986, *21, at *21 (N.D. Tex. Jan. 20, 2017) (quotations omitted). "[H]ad the Federal Rules contemplated" such a stay, they "would contain a provision to that effect." *Id.*

As with any effort to resist propounded discovery, a request to stay *all* discovery requires a showing of "good cause." Fed. R. Civ. P. 26(c). *See United States ex rel. Gonzalez v. Fresenius Med. Care N. Am.*, 571 F. Supp. 2d 766, 768 (W.D. Tex. 2008) (noting that "the issuance of a stay is by no means automatic" and denying parties' requests to stay discovery pending motion to dismiss). Factors informing the "good cause" inquiry include: (1) the breadth of discovery sought; (2) the burden of responding to such discovery; and (3) the strength of the dispositive motion filed by the party seeking a stay." *Von Drake v. NBC*, No. 3-04-CV-0652-R, 2004 U.S. Dist. LEXIS 25090, at *3 (N.D. Tex. May 20, 2004) (quotations omitted), citing, *inter alia*, *Anti-Monopoly, Inc. v. Hasbro, Inc.*, 1996 U.S. Dist. LEXIS 2684, 1996 WL 101277 at *3 (S.D.N.Y. Mar. 7, 1996).

Where there is a pending motion to dismiss an *entire* case, the likely benefit of discovery relative to its cost is arguably at its lowest, because the motion "might preclude the need for the discovery altogether[.]" *Von Drake v. NBC*, No. 3-04-CV-0652-R, 2004 U.S. Dist. LEXIS 25090, at *2 (N.D. Tex. May 20, 2004). Tellingly, nearly all of Defendants' authority speaks to that scenario. *See id.* (motion to dismiss complaint); *Corwin v. Marney, Orton Inv.*, 843 F.2d 194, 200 (5th Cir. 1988) (discovery stay was appropriate when it was possible that "the case [would] not reach trial because of the expiration of a limitations period"); *Scroggins v. Air Cargo, Inc.,* 534 F.2d 1124, 1133 (5th Cir. 1976) (discovery stay was appropriate where "the disposition of th[e] summary judgment motion terminated the lawsuit"); *Smith v. Potter*, 400 F. App'x 806, 809 (5th Cir. 2010) (motion to dismiss resulting in final judgment, primarily on

5

jurisdictional grounds); *Ncc Bus. Servs. v. Lemberg & Assocs., LLC*, No. 3:13-cv-795-J-99MMH-MCR, 2013 U.S. Dist. LEXIS 138334, at *4 (M.D. Fla. Sep. 26, 2013) (noting the potential for a stay to permit the court "potentially resolve a matter without the need for discovery"); *Stollings v. Tex. Tech Univ.*, No. 5:20-CV-250-H, 2021 U.S. Dist. LEXIS 178709, at *5 (N.D. Tex. Apr. 13, 2021) (combination of motions to dismiss, including for sovereign immunity, covered all claims).[3]

Here, however, there are claims that are undisputedly going forward: the claims of the WARN Sub-Class members. Partial motions to dismiss are less likely to warrant a stay. *See Cohn v. Taco Bell Corp.*, 147 F.R.D. 154, 162 (N.D. Ill. 1993) ("[S]taying discovery is particularly inappropriate in this case because even if defendant were successful, defendant's motion would not be dispositive of the entire case."); *Hovermale v. Sch. Bd.*, 128 F.R.D. 287, 289 (M.D. Fla. 1989) ("[M]otions to stay discovery are not favored and are rarely appropriate where resolution of the dispositive motion may not dispose of the entire case.").

On a partial motion to dismiss, the factors informing a stay request must be viewed in a comparative light: what is the breadth of the discovery and its costs *relative* to what they would be if the motion to dismiss were granted? *See Khan v. New York City*, 757 F. Supp. 3d 327, 335 (E.D.N.Y. 2024) (on request to stay discovery pending partial motion to dismiss, "the Court considers whether discovery would be significantly different if the motion to dismiss is resolved in Defendants' favor").

---

[3] The only exception is *Alkane Midstream, LLC v. Mesa Nat. Gas Sols.*, LLC, No. MO:25-CV-00214-DC-RCG, 2026 U.S. Dist. LEXIS 42567, at *3 (W.D. Tex. Feb. 19, 2026), where the motion at issue was a partial motion to dismiss. Although the opinion provides limited detail, it makes clear that the defendant identified how the discovery requests exceeded the claims that were unquestionably proceeding. As discussed *infra*, Defendants fail to make even that threshold showing.

To be sure, it is Defendants' burden—not Plaintiffs'—to answer this question.  In the Fifth Circuit, a party seeking the Court's intervention in discovery must justify that request with specificity: "[T]he party resisting discovery must *show specifically how* . . . each [request] is not relevant or how each question is overly broad, burdensome or oppressive."  *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990) (emphasis added) (citations and quotations omitted).  *See also United States v. 5.934 Acres of Land*, 635 F. Supp. 3d 553, 556 (S.D. Tex. 2022) (quoting *McLeod*'s articulation of the burden); *Merrill v. Waffle House, Inc.*, 227 F.R.D. 475, 477 (N.D. Tex. 2005) (rejecting defendant's claim that the party requesting discovery has initial burden to prove relevance because, under "the Fifth Circuit's approach in *McLeod* … [defendants' suggested] approach is not controlling in this circuit"); *Atomanczyk v. Tex. Dep't of Criminal Justice*, No. H-17-0719, 2018 U.S. Dist. LEXIS 11264, at *7 (S.D. Tex. Jan. 24, 2018) ("The burden is on the party resisting discovery to show cause that a protective order is necessary by making a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements.") (citations and quotations omitted), quoting *In re Terra Int'l*, 134 F.3d 302, 306 (5th Cir. 1998).

Defendants do not attempt to meet their burden.  They simply assert that the propounded discovery is "company-wide." (Motion at 7).  That does not, however, answer the question why it is supposedly overbroad: if discovery will be "company-wide" regardless the outcome of Defendants' partial motion to dismiss, there is no overbreadth.  Defendants do not "make a specific, detailed showing of how [the] request[s] [are] burdensome." *SEC v. Brady*, 238 F.R.D. 429, 437 (N.D. Tex. 2006).

All of Plaintiffs' discovery is relevant even just for the claims of the WARN Sub-Class members.  Discovery on WARN's affirmative defenses is, inherently, "company-wide."  WARN

defenses look at a company's economic reality at the time notice was required and asks whether the failure to give notice is excusable. They are "narrow, fact-bound defenses that ask[,]" *inter alia*, "whether the circumstances to which the employer points actually caused the layoffs." *Stewart v. Giuliano (In re Start Man Furniture, LLC)*, 647 B.R. 116, 137 (D. Del. 2022). They are grounded in the *company*'s circumstances and decisions, not individual employees. *See* 20 C.F.R. § 639.9(b)(2) (the test for the unforeseeable business circumstances "focuses on an employer's business judgment[.]"); *Gunderson v. Alta Devices, Inc.*, No. 5:19-cv-08017-BLF, 2021 U.S. Dist. LEXIS 95441, at *12 (N.D. Cal. May 19, 2021) (noting that "the 'faltering company' and 'unforeseeable business circumstances' … are not specific to the putative representatives … or the proposed Class members"). Thus, while Defendants object to discovery of things like "[b]oard minutes" and "capital-markets activity" (Motion at 5), that information goes directly to Defendants' affirmative defenses, discovery of which will proceed down the same path whether it is for one sub-class or both. *See Khan*, 757 F. Supp. 3d at 335 (E.D.N.Y. 2024) (denying stay where "resolution of the partial motion to dismiss will not meaningfully narrow the scope of discovery"); *CT Espresso LLC v. Lavazza Premium Coffees Corp.*, No. 22-CV-377 (VSB), 2022 U.S. Dist. LEXIS 93339, at *4 (S.D.N.Y. May 24, 2022) ("[R]esolution of the partial MTD will not prevent Defendants from being subject to discovery into the circumstances around their alleged reports to Amazon[.]"); *Medina v. City of N.Y.*, No. 19-CV-9412 (AJN), 2020 U.S. Dist. LEXIS 100456, at *6 (S.D.N.Y. June 8, 2020) ("Even if Defendants' motion were completely successful … several claims relating to the core of Plaintiff's Section 1983 claims will require discovery.").

The same is true of the single site discovery, for two reasons. First, even if the WARN Sub-Class members were the only plaintiffs, they could not make out a WARN claim by proving

only that *they* reported to Houston.  "In order to prove their prima facie case, [they] must show that a plant closing occurred[, which] entails demonstrating that (1) there are 50 employees, … (2) at a single site of employment, (3) who suffered an employment loss."  *Johnson v. TeleSpectrum Worldwide, Inc.*, 61 F. Supp. 2d 116, 121 (D. Del. 1999).  They would, therefore, need to show who else reported to Houston.  Especially here, where the company only had one site[4], the WARN Sub-Class members are entitled to discovery on all potential candidates for the Houston "site," to establish that a "plant closing" or "mass layoff" occurred.

Second, even if the WARN Sub-Class members only needed to prove that *they* reported to Houston (*e.g.*, if Defendants were to concede that a WARN-covered layoff occurred there[5]), it is not clear that a line can be drawn between proving *their* flow of assignments/reporting and that of the Contract Sub-Class members.  The assignments/reporting analysis starts at upper management and looks downward at the flow of assignments, and oversight, to/from employees reporting up to them.  *See, e.g.*, *Wiltz v. M/G Transp. Servs.*, 128 F.3d 957, 962 (6th Cir. 1997) (finding company headquarters was WARN site for employees on towboats where "fuel and lubrication oil for the towboats were ordered and purchased by the Paducah office and delivered … at various locations set by the Paducah office. The chief engineer and assistant engineer reported to the M/G Transport port engineer in Paducah. All captains, pilots, mates, cooks, and deckhands reported to the M/G Transport port captain in the Paducah office.").  The discovery will, therefore, be vertical, looking at the reporting chain from Houston management down to the employees.

---

[4] If Defendants had another worksite at which a completely separate group worked, discovery pertaining to that group might not be relevant to Plaintiffs' claims.  But that is not the case here.

[5] Defendants' most recent statement on this question indicates they will contest this. (Defs.' Motion to Dismiss First Amended Complaint, Adv. ECF No. 50 at (arguing that "Plaintiffs do not plausibly allege a WARN eligible event at any single site of employment.").

Theoretically, the "single site" discovery could be split between different groups (such as the two sub-classes) under certain sets of facts.  For example, if the WARN Sub-Class members were an isolated unit of the company apart from the Contract Sub-Class members, a line could be drawn between the two respective "verticals" for discovery.  The process of identifying and drawing that line, and filtering the documents accordingly, might outweigh the purported cost-savings of such partitioning.  Still, it is theoretically possible.

Theoretical possibilities, however, do not justify staying a case.  Defendants do not claim that such a line exists or point to any discovery that can confidently be described as relating only to the Contract Sub-Class.[6]  They do not try, because they claim that this is Plaintiffs' job.  *See* Motion at 7 ("Plaintiffs' discovery requests do not distinguish between the two sub-classes").  The premise of Defendants' Motion is that, by claiming a theoretical overbreadth, Defendants may leave the rest of the work to Plaintiffs and the Court.  They are mistaken.  *See SEC v. Brady*, 238 F.R.D. at 437 ("Broad-based, non-specific objections are almost impossible to assess on their merits, and fall woefully short of the burden that must be borne by a party making an objection to an interrogatory or document request.") (citations omitted).

Plaintiffs' discovery is relevant to the claims that are undisputedly proceeding.  At best, Defendants' have demonstrated that the discovery will *overlap* with the claims at issue in Defendants' partial motion to dismiss.  That is not a reason to stay discovery.

---

[6] By contrast, the defendant in *Alkane Midstream* was seemingly able to at least identify certain requests which were beyond the line.  2026 U.S. Dist. LEXIS 42567, at *4 (discovery "includes requests directed, at least in part, to matters relevant to those challenged claims.").

10

## II.    DEFENDANTS' UNNCESSARY DELAY OF THIS LITIGATION, COMBINED WITH THE WEAKNESS OF THEIR RECENT MOTION TO DISMISS, FURTHER CAUTIONS AGAINST A STAY

"Plaintiffs have a legitimate interest in the expeditious resolution of their case." *Fresenius Med. Care N. Am.*, 571 F. Supp. 2d at 763 (W.D. Tex. 2008).  A stay here would impose the inherent cost of delay on both Plaintiffs and the Court.  *See In re Diocese of Buffalo*, 665 B.R. 198, 201-02 (Bankr. W.D.N.Y. 2024) (denying extension of stay in adversary proceeding) ("The Bankruptcy Code anticipates that in every Chapter 11 case, the day will come when the debtor will make some sort of distribution on account of allowed claims. Presently, each of the seventeen movants has a claim that is unliquidated and disputed. Until the claims are resolved, no distribution is possible. … [F]urther delay in making that determination is unduly prejudicial to claimants."); *Cohn*, 147 F.R.D. at 162 (a stay pending partial motion to dismiss would "delay or prolong discovery, thereby causing management problems which would impede the court's responsibility to expedite discovery[,] and [would] cause unnecessary litigation expenses and problems.").

Defendants have compounded the cost of such a delay by unnecessarily prolonging the litigation—and forestalling any discovery—up to this point.  As outlined in Plaintiffs' opposition to the partial motion to dismiss, Defendants have drawn out these proceedings by testing their dismissal defenses one at a time (and when convenient, even disavowing them in favor of new, opposing positions).  (Opposition, Adv. ECF No. 69 at 23-26 (outlining Defendants' attempts to dismiss the claims over the course of the proceedings)).  Defendants' delay-heavy approach to the litigation disfavors staying discovery on their latest attempt to dismiss the claims.

Finally, when a stay request is based on a pending motion, courts consider "the strength of the … motion[.]" *Von Drake*, 2004 U.S. Dist. LEXIS 25090, at *3 (N.D. Tex. May 20, 2004) (quotations omitted).  The Contract Sub-Class members claim a breach of Defendants' Release

11

Agreement, which promised to pay them WARN damages.  The foundations of their contract claim have long been long known to the parties and the Court.  (*See* Order on Motion for Class Certification, Adv. ECF No. 40 at 9 ("According to Defendants, in the event an employee is not paid the higher of what they would have been entitled to under either the SPP or the WARN Act, that employee could possess a contract claim based on breach of the RA. The Court agrees with Defendants' interpretation.")).  In their partial motion to dismiss, Defendants now claim that "what the plaintiff[s are] truly complaining about" is a "denial of benefits under an ERISA-regulated plan."  (Adv. ECF No. 64 at 12).  Defendants attempt to reframe the claims for a third bite at the dismissal apple is weak.  *See Cohn*, 147 F.R.D. at, 162 (N.D. Ill. 1993) ("[W]e simply do not find any justification in delaying discovery because of defendant's motion to dismiss since, among other things, the likelihood of the motion's total success is somewhat speculative[.]"); *Clark Capital Mgmt. Grp. v. Avior Wealth Mgmt., LLC*, No. 3:23-cv-1467-HES-JBT, 2024 U.S. Dist. LEXIS 91104, at \*2 (M.D. Fla. May 21, 2024) ("The Court has taken 'a preliminary peek' at the merits of the [partial] Motion to Dismiss and cannot say that it is clearly meritorious and truly case dispositive").

## CONCLUSION

For the foregoing reasons, the Motion should be denied.

Dated: April 23, 2026

/s/ *Jack A. Raisner*
Jack A. Raisner (*pro hac vice*)
René S. Roupinian (*pro hac vice*)
**RAISNER ROUPINIAN LLP**
270 Madison Avenue, Suite 1801
New York, New York 10016
Telephone: (212) 221-1747
Facsimile: (212) 221-1747
Email: rsr@raisnerroupinian.com
Email: jar@raisnerroupinian.com

12

Walter J. Cicack (04250535)
**HAWASH CICACK & GASTON LLP**
2118 Smith Street
Houston, Texas 77002
Tel: (713) 658-9003
Email: wcicack@hcgllp.com

*Attorneys for Plaintiffs and the putative class*

## CERTIFICATE OF SERVICE

I hereby certify that on this the 23rd day of April 2026, I electronically filed this Motion with the Clerk of Court using the CM/ECF system which will send notification of such filing to all those receiving electronic service this matter.

/s/ *Jack A. Raisner*
Jack A. Raisner

13