United States Bankruptcy Court
Southern District of Texas

**ENTERED**

July 29, 2026

Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO: 25-90160** |
| **SUNNOVA ENERGY** | § | |
| **INTERNATIONAL INC.,** *et al.*, | § | **CHAPTER 11** |
| | § | |
| Debtors. | § | |
| | § | |
| **ERIK WEATHERWAX,** *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | **ADVERSARY NO. 25-3423** |
| | § | |
| **SUNNOVA ENERGY** | § | |
| **INTERNATIONAL INC.,** *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION DENYING PARTIAL MOTION
TO DISMISS SECOND AMENDED CLASS ACTION
COMPLAINT (RELATES TO ECF NO. 64)**

Before the Court is Sunnova Energy, International Inc.'s and its debtor affiliates' ("Sunnova") Partial Motion to Dismiss the Second Amended Class Action Complaint (the "Motion to Dismiss"). Based on the reasons discussed below, the Court denies the Motion to Dismiss.

## BACKGROUND

The factual background of this case was laid out in the Memorandum Opinion Granting Motion to Dismiss with Leave to Amend (the "First Memorandum Opinion"), and is incorporated by reference herein.[1]

---

[1] ECF No. 57. All capitalized terms not otherwise defined in this Memorandum Opinion Denying Partial Motion to Dismiss Second Amended Class

Following entry of the First Memorandum Opinion, on March 9, 2026, the Plaintiffs filed their Second Amended Complaint.[2]  There are two subclasses involved in this adversary proceeding: the Contract Sub-Class (relevant to the instant Motion to Dismiss), and the WARN Sub-Class (uninvolved here).  The Contract Sub-Class members filed state-law breach of contract claims based on the premise that Sunnova breached the terms of the RA by failing to pay them the promised "higher of (a) the applicable severance provided for in the [SPP] or (b) the applicable amount that may be owed to [them] under [the WARN Act]."[3]  More specifically, the Contract Sub-Class members allege Sunnova improperly classified them as WARN ineligible, foreclosing their potential "higher" recovery under WARN, and relegating them to a lower recovery under the SPP.[4]

On March 30, 2026, Sunnova filed its Motion to Dismiss, seeking dismissal of the Contract Sub-Class members' state-law breach of contract claims under the RA.[5]  In the Motion to Dismiss, Sunnova argues (i) the SPP was a qualifying employee welfare benefit plan governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA") and (ii) the Contract Sub-Class members' breach of contract claims are preempted by ERISA under both complete and conflict preemption.[6]  On April 2, 2026, Sunnova filed its Motion to Stay Discovery Pending Ruling on Partial Motion to Dismiss.[7]

On April 20, 2026, the Plaintiffs filed their Response in Opposition to Motion to Dismiss Second Amended Complaint (the "Response").[8]  In their Response, the Plaintiffs argue that regardless of

---

Action Complaint are given the meaning ascribed to them in the First Memorandum Opinion.

[2] ECF No. 60.

[3] ECF No. 60 at 12 ¶¶ 68–81; ECF No. 64-2.

[4] ECF No. 60 at 12 ¶¶ 68–81.

[5] ECF No. 64.

[6] ECF No. 64.

[7] ECF No. 65.

[8] ECF No. 69.

whether the SPP is an ERISA plan, the RA is not—it is a free standing, independent contract, which promises a benefit beyond the SPP.[9] According to the Plaintiffs, whether the *SPP* is an ERISA plan is irrelevant because the Contract Sub-Class members claim breach of the RA, not the SPP.[10] Moreover, the Plaintiffs argue that because the RA breach of contract claims does not rely on the SPP, they are not preempted; not through conflict preemption, and not through complete preemption.[11] The Plaintiffs also argue Sunnova should be judicially estopped from moving to dismiss on ERISA preemption grounds because two previous dispositive motions have heretofore been filed and decided, and neither one contained ERISA preemption arguments.[12] The first decision was at the class certification stage, and was based on a supermajority of the original putative class members having signed the RA, thereby relinquishing their WARN claims.[13] The second decision was on a motion to dismiss all Plaintiffs putative class action claims based on the argument that remote workers are not WARN eligible.[14] Finally, the Plaintiffs argue Sunnova's ERISA preemption argument for dismissal should be denied because ERISA administration exhaustion would be futile.[15]

On April 27, 2026, Sunnova filed a Reply.[16] In its Reply, Sunnova argues the RA is not a free-standing contract because it "relates to" the SPP—what it characterizes as an ERISA plan[17]—and that the two documents are integrated with one another.[18] Therefore, according to Sunnova, ERISA preempts the Contract Sub-Class members' claims despite the fact they only allege breach of the RA.

---

[9] ECF No. 69 at 9.
[10] ECF No. 69 at 9–10.
[11] ECF No. 69 at 14–22.
[12] ECF No. 69 at 22–26.
[13] ECF No. 40.
[14] ECF No. 57.
[15] ECF No. 69 at 26–27.
[16] ECF No. 71.
[17] For purposes of this Motion to Dismiss, the Court shall assume, without deciding, that the SPP is an ERISA plan.
[18] ECF No. 71 at 3–8.

Sunnova reiterates its position the breach of contract claims are subject to both complete and conflict preemption under ERISA.  Sunnova also argues judicial estoppel is inapplicable to its Motion to Dismiss because (i) no party previously argued whether state law or ERISA governs the putative breach of contract claims and (ii) this Court never "accepted" any positions on that question.[19]   Finally, Sunnova argues the Plaintiffs' futility argument is not ripe for review because that argument presumes ERISA is applicable (which this Court has not yet determined), and their Second Amended Complaint never pled allegations on the topic.[20]

On May 26, 2026, the Court held a Hearing where it heard argument on the Motion to Dismiss and took the matter, along with the Motion to Stay Discovery, under advisement.[21]

### JURISDICTION & LEGAL STANDARD

28 U.S.C. § 1334(a) provides the District Courts with jurisdiction over this proceeding.  28 U.S.C. § 157(b)(1) states that "Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title." This proceeding has been referred to this Court under General Order 2012-6 (May 24, 2012).  This Court has jurisdiction in this proceeding as it is a core proceeding which the Court can consider under 28 U.S.C. §§ 157(b)(2)(A), (B), and (O).  The Court has constitutional authority to enter final orders and judgments. *Stern v. Marshall*, 564 U.S. 462, 486–87 (2011).  And venue is proper under 28 U.S.C. §§ 1408 and 1409.

### LEGAL STANDARD

To avoid dismissal under Rule 12(b)(6), the plaintiff must plead sufficient factual matter to state a claim for relief that is plausible on

---

[19] ECF No. 71 at 18–22.
[20] ECF No. 71 at 22–23.
[21] ECF No. 74.

its face when accepting that factual matter as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678, (citing *Twombly*, 550 U.S. at 556).

The Court reviews motions under Rule 12(b)(6) accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff. *Cortez v. Rubio*, 176 F.4th 373, 376 (5th Cir. 2026) (quoting *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004)). "[D]etailed factual allegations are not required at the pleading stage." *Kelson v. Clark*, 1 F.4th 411, 418 (5th Cir. 2021). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," however, "do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). On a Rule 12(b)(6) motion, the Court may consider documents referenced in the complaint and central to the plaintiff's claims. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

While the existence of an ERISA plan is a question of fact, where the relevant facts are undisputed "[the court has] treated the question as one of law[.]" *House v. Am. United Life Ins. Co.*, 499 F.3d 443, 448 (5th Cir. 2007). Moreover, "whether ERISA preempts a state-law breach-of-contract claim is a question of law[.]" *Broussard v. Exxon Mobil Corp.*, No. 24-30664, 2025 WL 754536, at *3 (5th Cir. Mar. 10, 2025).

## DISCUSSION

### I.   SUNNOVA'S MOTION TO DISMISS IS NOT SUBJECT TO JUDICIAL ESTOPPEL.

Judicial estoppel is an equitable doctrine which courts may invoke "to protect the integrity of the judicial process" by "prohibiting parties from deliberately changing positions according to the exigencies

of the moment." *Keathley v. Buddy Ayers Constr., Inc.*, 146 S.Ct. 1532, 1538–39 (2026) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750–51 (2001)) (internal quotation marks omitted).   Courts must apply judicial estoppel "flexibly to achieve substantial justice."   *New Hampshire*, 532 U.S. at 750; *Reed v. City of Arlington*, 650 F.3d 571, 576 (5th Cir. 2011).

No "inflexible prerequisites or . . . exhaustive formula" exists for determining when to apply the doctrine. *New Hampshire*, 532 U.S. at 750–51.   Different factors and considerations "may inform" a court's decision to apply the doctrine.   *Id.*   The Fifth Circuit requires three elements for judicial estoppel to apply: "(i) [t]he party against whom it is sought has asserted a legal position that is plainly inconsistent with a prior position; (ii) a court accepted the prior position; and (iii) the party did not act inadvertently."[22] *Flugence v. Axis Surplus Ins. Co. (In re Flugence)*, 738 F.3d 126, 129 (5th Cir. 2013).

### A.   Arguing ERISA Preemption is Not "Plainly Inconsistent" with a Prior Position Sunnova Took in this Litigation.

Turning to the first element, the Plaintiffs point to various language in Sunnova's papers filed at the class certification and first motion to dismiss stage, where Sunnova tacitly accepted the premise that the Contract Sub-Class members potentially possess state-law breach of contract claims, as demonstrations that it took a position plainly inconsistent with its current argument that ERISA would preempt those same claims.[23]

---

[22] The Plaintiffs cite *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara* for the judicial estoppel standard, which only included the first two elements.   364 F.3d 274, 294 (5th Cir. 2004).   While there seems to be a slight historical inconsistency as to application of the third element, inadvertence, this Court understands the modern rule in the Fifth Circuit is that the doctrine requires all three elements.   *See e.g. Royal Am. Constr., Inc. v. Roofing Designs by JR, L.L.C.*, No. 25-20048, 2026 WL 94972, at *2 (5th Cir. Jan. 13, 2026) (quoting *Reed*, 650 F.3d at 574).

[23] *See e.g.*, ECF No. 39 at 2 ("Yes.   The . . . RAs . . . are enforceable contracts supported by valid consideration, definite payment terms, and mutual obligations.");

Sunnova's statements in the Parties' Joint Response,[24] that employees not properly paid the promised "higher of" amounts under the terms of the RA based on alleged faulty WARN eligibility determinations, was its response to the Plaintiffs' original framing that the RA was an unenforceable contract.[25] But the Plaintiffs' eventually-filed state-law breach of contract claims were not yet before the Court at stage when the Plaintiffs and Sunnova filed the Joint Response. Therefore, neither Sunnova nor this Court had reason to address whether ERISA preemption applied at the time the class certification motion was denied.

Sunnova's argument in the first motion to dismiss was against WARN eligibility for all remote works in the putative class of claimants.[26] Sunnova only accepted the Contract Sub-Class members' purported breach of contract theories for purposes of arguing against their WARN eligibility, as the claims of *both* putative subclasses was premised on such.[27] Put simply, taking the position that all putative class members lack claims due to WARN ineligibility is not plainly inconsistent with the position of ultimately accepting potential WARN eligibility—based on the ruling in this Court's First Memorandum Opinion—but later arguing state-law breach of contract claims are preempted by ERISA.

*Karaha Bodas* suggests that plain inconsistency for purposes of judicial estoppel requires arguing theories which are logically or legally incompatible with one another. *See* 364 F.3d at 294. There, Pertamina made prior representations to a tribunal and district court that Swiss procedural law controlled an arbitration, but later argued Indonesian procedure controlled after the arbitration turned out unfavorable to it.

---

ECF No. 39 at 3 ("If, contrary to the facts of this proceeding, the Debtors were to pay an employee less than the greater of the amount to which he or she would have been entitled under the Severance Pay Plan or the WARN Act, that employee would possess a contract claim for breach of the RA."); *see also* ECF No. 50 at 19–20.

[24] ECF No. 39.
[25] ECF No. 39; ECF No. 12; ECF No. 34.
[26] ECF No. 50.
[27] ECF No. 50.

*Id.* The facts here are not the same. Sunnova's prior positions, which have tacitly accepted the premise of breach of contract claims for purposes of arguing against WARN eligibility, are not logically or legally inconsistent with arguing breach of contract claims are preempted under ERISA. Both theories are mutually distinct, separate grounds for arguing in favor of dismissal. *See Fleming v. Bayou Steel BD Holdings II L.L.C.*, 83 F.4th 278 (5th Cir. 2023) (noting that, while connected, the WARN Act and ERISA are ultimately separate issues). Breach of contract claims may exist, and also may be preempted by federal law. Arguing for preemption while arguing against the predicate of the breach of contract theory is not necessarily an internal or external inconsistency.

Bankruptcy courts may find positions to be inconsistent if a debtor files a lawsuit based on claims they failed to previously disclose, "view[ing] the [debtor's] failure to disclose as an implicit representation that the claim does not exist." When there is no duty to disclose, a party's failure to do so does not necessarily represent the absence of the claim, however, and therefore no inconsistent position would have been taken through the omission. *In re Flugence*, 738 F.3d at 129.

The Plaintiffs reference language in FED. R. CIV. P. 12(g)(2) which provides "a party that makes a motion under [Rule 12] must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." The mandatory disclosures under the Bankruptcy Code which require a chapter 13 debtor to disclose estate causes of action on their schedules is not similar to the rules regarding limitations on the filing of further motions to dismiss found under Rule 12(g)(2). Moreover, Plaintiffs' suggestion that all grounds for dismissal or objections be raised in a single motion to dismiss run contrary to the language of Rule 12 itself, which contemplates the possibility of moving to dismiss based on lack of relief grounds at various times throughout the litigation. *See* FED. R. CIV. P. 12(g)(2), 12(h)(2).

Element one of judicial estoppel is not met.

8 / 22

### B.    This  Court  Did  Not  Accept  Prior  Positions Inconsistent with ERISA Preemption.

"Judicial acceptance requires that the court [adopt] the position previously urged by a party, whether as a preliminary matter or as part of a final disposition." *Karaha Bodas*, 364 F.3d at 294.  Judicial acceptance requires that a court "'necessarily accep[t], and rel[y] on' the party's prior position in making a determination[.]" *Hall v. GE Plastic Pac. PTD Ltd.*, 327 F.3d 391, 399 (5th Cir. 2003).  "Absent judicial acceptance . . . application of judicial estoppel . . . is unwarranted because no risk of inconsistent results exists." *Allen v. C & H Distribs., L.L.C.*, 813 F.3d 566, 574–75 (5th Cir. 2015).

This Court did not accept Sunnova's position as to choice-of-law when denying class certification and determining remote worker WARN eligibility.[28]  Nor do any of the Court's prior rulings in this litigation contradict the possibility of ERISA preemption.  The Court has been careful in this litigation to be very measured about the possibility of different types of claims, as the procedure of this lawsuit is complicated (*e.g.,* breach of contract claims premised on WARN eligibility).   The  Court's  own  language  demonstrates  judicial acceptance does not exist.[29]  The Plaintiffs point out that the breach of contract theory may have spawned from Sunnova's own representation in the Joint Response, but the purpose of that statement was to address RA enforceability for purposes of arguing the "RA WARN employees'" released their potential WARN claims.[30]  The position was also tacitly accepted by Sunnova at the motion to dismiss stage for purposes of arguing against WARN eligibility of remote employees.  Again, Sunnova did not previously take a position inconsistent with its current one.  Nor did the Court previously accept any such position that is inconsistent with ruling on ERISA preemption today.

---

[28] ECF No. 40; ECF No. 57.
[29] *See e.g.* ECF No. 40 (finding Plaintiffs "might" have a "potential" breach of contract claim under the RA).
[30] ECF No. 40.

Element two of judicial estoppel is not met.

### C. Existence of Inadvertence or Mistake is Unclear from the Record.

Recently, in *Keathley v. Buddy Ayers Construction, Inc.*, the United States Supreme Court clarified that the proper standard for determining the presence of inadvertence or mistake is to assess the "totality of the circumstances," rather than the standard previously utilized by the Fifth Circuit. 146 S.Ct. at 1540; *Compare Browning Mfg. v. Mims (In re Coastal Plains, Inc.)*, 179 F.3d 197, 210 (5th Cir. 1999) (assessing inadvertence or mistake based on whether debtor knew of underlying facts of claim, and whether there was potential motive to conceal claim).

The Supreme Court refrained from enumerating which factors might suggest inadvertence of mistake. Similarly, this Court will evaluate the record on this element without articulating what definitely constitutes inadvertence or mistake. Neither the Bankruptcy Code nor the Federal Rules expressly required Sunnova to disclose ERISA preemption as grounds for dismissal. Moreover, this litigation has proceeded through multiple phases, with different issues at the forefront of each stage. Based on the relevant issues germane to the class certification and remote worker WARN eligibility phases, ERISA preemption was understandably not at the fore of either Party's posture in this proceeding. There has been no evidence introduced demonstrating Sunnova acted in bad faith or sought to prolong this litigation by failing to raise ERISA preemption until its second motion to dismiss. Ultimately, however, the Court declines to conclude whether element three is satisfied, and awaits further guidance on how to interpret this point from the Fifth Circuit.

Because elements one and two of judicial estoppel are not satisfied, the Court concludes Sunnova's ERISA preemption argument is not subject to judicial estoppel.

II.   **THE CONTRACT SUB-CLASS MEMBERS' STATE-LAW BREACH OF CONTRACT CLAIMS ARE NOT SUBJECT TO ERISA PREEMPTION.**

Both Parties have presented competing arguments as to whether the Contract Sub-Class members' state-law breach of contract claims under the RA are subject to ERISA preemption.  For the foregoing reasons, the Court concludes the RA is not an ERISA employee benefit plan, and that the state-law breach of contract claims are not subject to complete or conflict preemption.  Thus, the Court shall deny Sunnova's Motion to Dismiss.

To the extent the Plaintiffs argue ERISA exhaustion would be futile, this argument was not ripe for review, but is effectively mooted because the RA is not an ERISA plan and the state-law breach of contract claims are not preempted.  Accordingly, the Court shall withhold judgment on this issue.

A.   **THE RA IS NOT AN ERISA EMPLOYEE BENEFIT PLAN.**

ERISA's preemption provision provides: "the provisions of this subchapter . . . shall supersede any and all State laws insofar as they may now or hereafter relate to any *employee benefit plan* described in § 1003(a) of this title and not exempt under § 1003(b) of this title."  29 U.S.C. § 1144(a).  "To decide whether the state-law breach of contract claim is preempted, the court must first determine whether [the relevant agreement] is an ERISA employee welfare benefit plan." *Thorson v. Aviall Servs., Inc.*, Civil Action No. 3:15-CV-0571-D, 2017 WL 361895, at *2 (N.D. Tex. Jan. 24, 2017).

In determining whether an employee benefit arrangement is an ERISA plan within the meaning of 29 U.S.C. § 1144(a), the Fifth Circuit considers the three factors laid out in *Meredith v. Times Insurance*: (i) whether the plan exists; (ii) whether the plan falls within the safe-harbor provision established by the Department of Labor; and (iii) whether the employer established or maintained the plan with an intent to benefit employees.  *Peace v. Am. Gen. Life Ins. Co.*, 462 F.3d 437, 439 (5th Cir. 2006) (citing *Meredith v. Time Ins.*, 980 F.2d 352, 355 (5th Cir. 1993)).  "If any part of the inquiry is answered in the negative,

the submission is not an ERISA plan." *Id.* Moreover, courts may stop after the first inquiry if they determine a plan does not exist. *Id.*

Turning to factor one of the *Meredith* test, whether a plan exists, the Fifth Circuit has stated "[a]n employee benefit encapsulated in an ERISA plan differs from a stand-alone employee benefit." *Id.* at 440. The United States Supreme Court has distinguished between mere stand-alone benefits and full-fledged plans for purposes of evaluating whether ERISA preemption applies. *Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1, at 7–8 (1987). In *Fort Halifax*, the Court, after interpreting the purpose of ERISA, concluded that only when there is an "ongoing administrative program to meet the employer's obligation" does a plan exist under ERISA." *Id.* at 11. If no such administrative scheme exists, then there is nothing to regulate, and therefore preemption becomes "nonsensical." *Peace*, 462 F.3d at 440.

Here, the RA does not create nor follow an ongoing administrative program within the meaning of *Fort Halifax* and Fifth Circuit precedent. The RA promises a one-time payment of the "higher of" applicable severance under the SPP or applicable WARN damages, which *Fort Halifax* made clear "requires no administrative scheme whatsoever to meet [Sunnova's] obligation." 482 U.S. at 12; *see also Wells v. General Motors Corp.*, 881 F.2d 166, 176 (5th Cir. 1989).

An on ongoing administrative scheme can be found by virtue of a number of features that *require discretion*, such as eligibility determinations, calculations of payment, provision of additional services beyond the severance payment, and procedures for handling claims and appeals. *Gomez v. Ericsson, Inc.*, 828 F.3d 367, 372 (5th Cir. 2016). None of those discretionary aspects are present under the RA. Following the payment of the "higher of" amount, there is no obligation left to be fulfilled by Sunnova because the payment has been made, and there are no further ongoing benefits (*e.g.*, insurance) or administrative requirements (*e.g.*, handling claims and appeals) that need to be carried out. *Contra id.* (holding ongoing administrative scheme exists when administrator has continuing obligations to monitor and calculate

12 / 22

future setoff payments in the event employee returns to work during severance period).  Sunnova argues the SPP requires discretion of eligibility determinations, benefit calculations, offset analyses, and formal claims procedures.  But those aspects of *the SPP* are irrelevant to the determination of whether of a "plan exists" *in the RA* for purposes of preemption.  Breach of the RA is premised on WARN eligibility, but WARN eligibility is a statutory mandate.  Determining which workers are eligible is therefore not left to the discretion of a plan administrator.  Nor are benefits under the RA discretionary.  The RA mandates employees who signed it shall receive their appropriate "higher of" amount.  That amount was either WARN damages, or severance under the SPP.  There is no discretion between the two potential amounts— just math.

No plan exists under the RA for purposes of factor one of the *Meredith* test.  Accordingly, the Court concludes the RA is not an ERISA employee benefit plan for purposes of 29 U.S.C. § 1144(a).

### B.      The State-Law Breach of Contract Claims are Not Subject to Complete Preemption.

As articulated in *Aetna Health Inc. v. Davila*, a state-law cause of action will be subject to complete preemption under ERISA if (i) an individual "could have brought his claim under ERISA § 502(a)(1)(B)," and (ii) "there is no other independent legal duty [] implicated by a defendant's actions."  542 U.S. 200, 209 (2004).

### *(1)     The Contract Sub-Class Members Could Not Have Brought Their Breach of Contract Claims Under ERISA § 502(a)(1)(B).*

Turning to prong one of the *Davila* test, section 502(a)(1)(B) authorizes civil actions by a claimant "to recover benefits due to him under the terms of his [ERISA] plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B).  Section 502(a)(1)(B) "is relatively straightforward.  If a participant or beneficiary believes that benefits promised to him *under the terms of the [ERISA] plan* are not

provided, he can bring suit seeking provision of those benefits." *Davila*, 542 U.S. at 210 (emphasis added). To satisfy *Davila* prong one, a claim must assert rights which the claimant is entitled "*only because of* the terms of an ERISA-regulated employee benefit plan." *Id.*

In this instance, the RA was attached to the SPP at the time it was adopted by Sunnova, the RA repeatedly references the SPP, and the RA contains similar definitions as the SPP.[31] But the consideration provided for under the RA is substantively different than that provided under the SPP: namely, WARN damages. The Plaintiffs correctly note that the RA describes WARN damages as the alternative recovery to "Severance provided for in the [SPP]" because the SPP itself does not promise to pay WARN damages—the RA does. Based on a plain reading of the text, the Court concludes that, specifically with respect to the provision of WARN damages, both contracts are separate and free standing by their language, and that WARN damages are only promised by virtue of the RA and not the SPP.

Under *Davila* prong one, the Contract Sub-Class members are not entitled to WARN damages "only because of" the SPP. By signing the RA, they released their rights to bring claims under the WARN Act. They subsequently filed breach of contract claims under the RA after their promised "higher of" amounts under the RA were allegedly not paid. The "essence" of their claims is not based on recovery under the SPP, as Sunnova suggests. *Advanced Physicians, S.C. v. Nat'l. Football League*, 859 F. App'x 695, 696 (5th Cir. 2021). The action complained of by the Contract Sub-Class is breach of the RA premised on a faulty WARN eligibility determination, which is not a claim for "denial[] of coverage promised under the terms of [an] ERISA-regulated employee benefit plan[.]" *Davila*, 542 U.S. at 211. The Contract Sub-Class members are not currently seeking to recover benefits due under the SPP, enforce their rights under the SPP, or clarify their rights to future benefits under the terms of the SPP. *Id.* at 210. Neither WARN

---

[31] ECF No. 64-1; ECF No. 64-2.

14 / 22

damages, nor the breach of contract claims derive from the SPP—they both derive from and are assertable only because of the RA.

Moreover, courts have previously held claims to be outside the scope of § 502(a)(1)(B) where claimants brought lawsuits for additional benefits not provided for under the ERISA plan, notwithstanding a linkage or facial connection between the plan and the separate agreement. *See Thorson*, 2017 WL at *11 (concluding that because healthcare coverage benefit arose under separate agreement and subsequent contract, rather than ERISA-governed severance plan, that claim for healthcare coverage which related to agreement and subsequent contract could not have been brought under ERISA § 502(a)(1)(B)); *Stiles v. Mem'l. Hermann Healthcare Sys.*, 213 S.W.3d 521, 530 (Tex. App. 2007) (concluding release agreement reflected distinct, independent promise to pay medical bills in consideration for release of claims against hospital, which was "divorced from its connection to [ERISA] employee benefit plan," despite plan having been referenced throughout the release); *see also Colorado v. Tyco Valves & Controls, L.P.*, 432 S.W.3d 885, 892 (Tex. 2014) (concluding retention incentive agreement not preempted by ERISA because "bonus provision [did] not refer to or rely on [] ERISA Plan in any way."). Accordingly, *Davila* prong one is not satisfied.

### (2) Sunnova's Potential Obligations Under the RA Constitute an Independent Legal Duty Implicated by its Own Actions.

Turning to prong two of the *Davila* test, "[i]f there is some other independent legal duty beyond that imposed by an ERISA plan, a claim based on that duty is not completely preempted under § 502(a)(1)(B)." *Thorson*, 2017 WL at *12 (citing *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 949 (9th Cir. 2009)). "A legal duty is '*not* independent' if it 'derives entirely from the particular rights and obligations established by [the ERISA] benefit plan[.]" *Mem'l. Hermann Hosp. Sys. V. Great-W. Life & Annuity Ins. Co.*, No. CIV.A. H-05-1234, 2005 WL 1562417, at *5 (S.D. Tex. June 30, 2005) (citing

*Davila*, 542 U.S. at 213) (emphasis and internal quotation marks added).

This prong is dealt with in short order. The Contract Sub-Class members allege Sunnova breached its contractual duty owed to them under state law by failing to provide them with the requisite "higher of" amounts they were promised in exchange for releasing their rights to bring claims under the WARN Act. This contractual duty arises from the RA, not the SPP. Stated another way, the relevant obligation to pay WARN damages under the RA does *not* arise entirely from the SPP. *Davila*, 542 U.S. at 213. Sunnova's contractual obligations under the RA constitute "some other independent legal duty beyond that imposed by [the SPP]." *Thorson*, 2017 WL at *12. Therefore, *Davila* prong two is not satisfied, and the Contract Sub-Class members' claims for breach of the RA are not subject to complete preemption.

### C.      The State-Law Breach of Contract Claims are Not Subject to Conflict Preemption.

### *(1)      The RA Does Not Relate To and ERISA Plan.*

As provided above, ERISA's preemption provision applies to claims that "relate to" an employee benefit plan. 29 U.S.C. § 1144(a). The terminology "relate to" under § 1144(a) connotes a broad scope, and the United States Supreme Court has interpreted the statute to mean that "a law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a *connection with or reference* to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97 (1983) (emphasis added). The RA's facial connections to the SPP (being connected as an attachment and containing cross-references), does not transform a claim based on breach of the RA into a claim which "relates to" the SPP. The breach of contract claims do not implicate the SPP—they solely implicate the RA, and the alleged faulty WARN determinations. In the Court's view, the "relate to" test under *Shaw* for ERISA conflict preemption is not satisfied.

16 / 22

Sunnova argues that under *Thorson v. Aviall Services, Inc.* and *Hernandez v. Alcatel USA Resources, Inc.*, the RA should be considered integrated into the SPP because (i) the RA was incorporated into the SPP; (ii) the RA recovery calculation depends on severance calculations under the SPP; and (iii) the RA does not provide benefits independent of the SPP.  2017 WL 361895; 560 F.Supp.2d 528 (E.D. Tex. 2006).

The Court declines to mechanically apply the factors considers by the *Thorson* court, and moreover is not convinced *Thorson* points towards integration of the RA into the SPP for purposes of considering the RA related to an ERISA plan.  As the Plaintiffs note, Sunnova allegedly paid Contract Sub-Class members the severance amounts due under the SPP already.[32]  The Contract Sub-Class members simply allege they were not made whole up to the value of their *WARN* damages.  The relevant "calculation" for purposes of determining the necessary consideration promised under the RA is therefore properly viewed as calculating the appropriate WARN damages the Contract Sub-Class members may be entitled to, and subtracting that amount from what severance they have *already been paid* by virtue of signing the RA.

Had Sunnova not paid severance to any employees, that may point towards integration because determining the proper "high of" amounts for the Contract Sub-Class members would necessarily require severance calculations.  Practically speaking, that is no longer the case because Sunnova allegedly paid severance to all former employees who signed the RA.  The only damages the Contract Sub-Class members are seeking on account of their state-law breach of contract claims under the RA is the delta that may exist between their already received severance payouts, and their theoretically "higher"

---

[32] ECF No. 69 at 18–19; ECF No. 64 at 4 ("Of [the approximately 861 employees who experienced the reduction in force], approximately 650 were paid amounts corresponding to 60 days' wages and benefits. [] Approximately 185 employees, the putative Contract Sub-Class, signed the RA but were determined by Defendants to be WARN-ineligible **and therefore received only severance amounts under the Plan**[.]").

WARN damages.  These benefits the Contract Sub-Class members are suing for (under the theory of breach of contract), do not require referencing the SPP.  For all practical purposes, the documents are disintegrated for purposes of the Contract Sub-Class members' claims.

Sunnova argues the RA contains purported "administrative routing" provisions which integrate it into the SPP.[33]  These provisions purportedly vest the company's Benefits Committee with authority "to interpret and make determinations and decisions with respect to the Plan" and to administer disputes over benefit entitlement.[34]  The RA also preserves "claims for outstanding Severance owed under the terms of the Plan."[35]  These provisions pertain specifically to applicable severance entitlements, not WARN damages entitlements which were only to be received in exchange for signing the RA.  Viewed from this perspective, *Hernandez* is not a strong comparison to the RA here and does not necessitate a finding that the RA and SPP are integrated, or that the RA is related to an ERISA plan.  560 F.Supp.2d at 532.

> **(2)    *The State-Law Breach of Contract Claims are Not Subject to ERISA Conflict Preemption Under the Fifth Circuit Standard.***

The Fifth Circuit has articulated a more definite test, whereby state-law causes of action are subject to conflict preemption under 29 U.S.C. § 1144(a) if "(i) the state-law claims address areas of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan, and (ii) the claims directly affect the relationship between the traditional ERISA entities, the employer, the plan and its fiduciaries, and the participants and beneficiaries."  *Weaver v. Employers Underwriters, Inc.*, 13 F.3d 172, 176 (5th Cir. 1994).

---

[33] ECF No. 71 at 8.
[34] ECF No. 64-1, § 4.1.
[35] ECF No. 64-2.

(a)     *The Contract Sub-Class Members' State-Law Breach of Contract Claims Under the RA Do Not Address an Area of Exclusive Federal Concern.*

Turning to prong one, courts in the Fifth Circuit have held that if a claimant seeks to enforce provisions of a separate contract, then a state-law claim is not preempted because the "claim does not address or rely on the ERISA plan." *Mem'l. Hermann Health Sys. v. Coastal Drilling Co., LLC Emp. Ben. Tr.*, 12 F.Supp.3d 1001, 1012 (S.D. Tex. 2014); *Cent. States, Southeast & Southwest Areas Health & Welfare Fund v. Health Special Risk, Inc.*, Civil Action No. 3:11-CV-2910-D, 2013 WL 2656159, at *3 (N.D. Tex. June 13, 2013) ("The goal of [the] suits . . . would not be to recover plan benefits or to complain about plan administration but to obtain non-ERISA contractual benefits; determining the amount of benefits to be paid by the ERISA plan (as opposed to the contract) would not be the object of the suit."). Conversely, if the state-law breach of contract claim is premised on a violation of the ERISA plan itself, that claim is preempted. *See Coastal Drilling Co., LLC Emp. Ben. Tr.*, 12 F.Supp.3d at 1011 (citing *Gonzalez v. AutoZone, Inc.*, 776 F.Supp.2d 405, 411 (S.D. Tex. 2011)); *Mem'l. Hermann Hosp. Sys. v. UnitedHealthcare Ins. Co.*, Civil Action No. H-11-3545, 2012 WL 92563, at *3 (S.D. Tex. Jan. 11, 2012) (holding breach of contract claim preempted because determining whether contract was breached required consulting "administrative record to determine whether [] claims were excluded under [] relevant ERISA plan terms.").

This Court has already determined the RA itself is not an ERISA plan. It has also concluded the RA is a contract separate from the SPP, and the sued-upon provisions of the RA (promising the Contract Sub-Class members their applicable WARN damages) are provisions independent of the terms of the SPP. The Contract Sub-Class members are not seeking to recover "plan" benefits, but to obtain non-ERISA contractual benefits (*i.e.*, potential WARN damages promised under the RA). *Cent. States, Southeast & Southwest Areas Health & Welfare Fund*, 2013 WL at *3. Nor do the Contract Sub-Class members' claims require the Court to refer to the SPP to compute damages. *See also*

*Lone Star OB/GYN Assocs. v. Aetna Health Inc.*, 579 F.3d 525, 530 (5th Cir. 2009) (despite ERISA plan and separate contract cross-referencing one another, the determination of the rate payment under the contract did not require any kind of benefit determination under the ERISA plan). The RA provides the only necessary calculation at this juncture: applicable WARN damages minus severance already paid. If the value of applicable WARN damages is less than the applicable severance (already paid), then no additional damages would be owed. Opening the SPP is not required.

Nor are the Contract Sub-Class members complaining about plan administration,[36] but rather alleging the RA's contractual terms were breached by virtue of an improper and faulty WARN eligibility determination. WARN determinations are statutory, not discretionary, so a complaint about a faulty WARN determination is not a complaint about plan "administration." *Id.*; *Compare Mem'l. Hermann Hosp. Sys.*, 2012 at \*3. "Consultation of [an ERISA] plans' terms is thus not necessary." *Access Mediquip L.L.C. v. UnitedHealthcare Ins. Co.*, 662 F.3d 376, 385 (5th Cir. 2011).

Sunnova does not adequately address the Plaintiffs' argument that WARN eligibility determinations were not meant to be within the plan administrator's discretion. Rather, Sunnova paints over this point through its continuous mischaracterization that the Contract Sub-Class members released their WARN claims by signing the RA. That may be true—but it is not the relevant issue. If the plan administrator improperly determined the Contract Sub-Class members WARN ineligible, that may have breached the RA (a non-ERISA plan which is independent of the SPP). Conflating the RA and SPP does not demonstrate WARN eligibility is a discretionary—as opposed to statutory—determination.

---

[36] "Plan administration" connotes ERISA plan administration, but the RA is not an ERISA plan.

Prong one of the conflict preemption test under § 1144(a) is not satisfied.

> *(b)*     *The Contract Sub-Class Members' State-Law Breach of Contract Claims Under the RA Do Not Directly Affect the Relationship Between Traditional ERISA Entities.*

Turning to prong two, the Fifth Circuit has clarified that the critical inquiry "is not whether the parties to a claim are traditional ERISA entities, but whether the claims affect an aspect of a *relationship* that is comprehensively regulated by ERISA." *Bank of La. v. Aetna U.S. Healthcare Inc.*, 468 F.3d 237, 243 (5th Cir. 2006). That is not the case for claims based on a breach of the RA.

A recovery based on a breach of the RA "in no way expands the rights of [former Sunnova employees] to receive benefits under the terms of [the SPP]"—or any other ERISA plan, for that matter. *Access Mediquip L.L.C.*, 662 F.3d at 385–86 (citing *Bank of La.*, 468 F.3d at 246). Moreover, the plan administrator under the SPP was not acting in a fiduciary capacity when making the determination that the Contract Sub-Class members' were not WARN eligible, because that determination was not his discretionary responsibility; not under the SPP, and not under the RA. *Bank of La.*, 468 F.3d at 244 n.11 ("A party acts in a fiduciary capacity when he: (i) exercises discretionary control over plan assets; (ii) he renders investment advice for a fee to the plan; *or (iii) he has discretionary responsibility* with regard to plan administration.") (internal emphasis added).

Prong two of the conflict preemption test under § 1144(a) is not satisfied. Accordingly, the Contract Sub-Class members' state-law breach of contract claims under the RA are not subject to ERISA conflict preemption.

## CONCLUSION[37]

Based on the foregoing reasons, the Motion to Dismiss is **HEREBY DENIED.**

Because the Motion to Dismiss is denied, Sunnova's pending Motion to Stay Discovery Pending Ruling on Partial Motion to Dismiss is effectively moot and **HEREBY DENIED.**

Counsel for the Plaintiffs should submit a proposed order consistent with the terms of this Memorandum Opinion within (14) days, addressing both the Motion to Dismiss and Motion to Stay Discovery.

SIGNED 07/29/2026

_____
Alfredo R Pérez
United States Bankruptcy Judge

---

[37] This Memorandum Opinion constitutes the findings of fact and conclusions of law required by Rule 7052 of the Federal Rules of Bankruptcy Procedure.